Docusign Envelope ID: 116E63ED-6641-4536-BE70-727B8D5C08C1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Judgment Creditor,<br><br>v.<br><br>JOY HARRIS,<br><br>Judgment Debtor,<br><br>and<br><br>NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM,<br><br>Respondent. | No. 24-CR-0207 (LAK)<br><br>**PUBLIC FILING** |

## ANSWER OF THE RESPONDENT

1.      Maya Khodos, an attorney admitted to practice law before the courts of the State of New York, affirms, subject to penalties of perjury pursuant to 28 U.S.C. § 1746, as follows:

2.      I am the General Counsel of Respondent, the New York City Employees' Retirement System ("NYCERS"), I have read the following answer in the above referenced matter, and know the contents thereof to be true to my knowledge except as to any matter therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. The grounds to my belief as to all matters not therein stated upon knowledge are information obtained from the books and records of NYCERS and/or statements made to me by officers, agents, or employees of NYCERS, and the City of New York, and from statements, affidavits, or affirmations of other persons.

**Answer of Respondent – Page 1**

3. I acknowledge receipt of the United States' request that Respondent waive service of the NYCPLR 5222 Restraining Notice and a NYCPLR 5224 Information Subpoena under Rules 4-4.1 of the Federal Rules of Civil Procedure in this proceeding. Without waiving defenses or objections to the garnishment or to the jurisdiction or venue of the court, except for objections based on a defect in the service of the process, I agree to accept service by certified mail to The New York City Employees' Retirement System (NYCERS), Attention: Legal, at 335 Adams Street, Suite 2300, Brooklyn, New York 11201-3724.

4. NYCERS is a qualified governmental retirement plan under Internal Revenue Code 401(a) and Internal Revenue Code 414(d).

5. Pursuant to NYC Administrative Code § 13-638.2(k-2), it is an actuarially funded plan. Its assets consist of accumulated employer contributions, investment earnings, and employee contributions. Funding of the plan, through annual employer contributions, is calculated using mortality tables based on all NYCERS plan participants' expected lifetimes, and is based on the total liability of all plan participants (i.e., the "total actuarial present value of all benefits payable") compared to the cumulative assets of plan (*i.e., inter alia,* "total funds on hand"). NYC Administrative Code § 13-638.2(k-2)(1). NYCERS assets are held in component parts of one comingled trust, and are used for the "exclusive benefit" of participants and their beneficiaries pursuant to Internal Revenue Code § 401(a).

6. Judgement Debtor is a 57/5 Retirement plan Tier 4 member of NYCERS. The Tier 4 plan provisions are codified at NYC Administrative Code § 13-101 *et seq.* and Article 15 of the RSSL.

7. On May 19, 2025, NYCERS was served with an Amended Restraining Notice and Information Subpoena in the above-captioned case. As explained below, at the time

**Answer of Respondent – Page 2**

NYCERS was served, it was not in possession or control of any property of the Judgement Debtor.

8. Based upon the Judgement Debtor's current title and date of membership with NYCERS, the Judgement Debtor may become eligible for a retirement benefit pursuant to the 57/5 Retirement plan for Tier 4 members of NYCERS. Currently the Judgement Debtor has not reached the requisite age and years of service requirement, so they are not entitled to a benefit

9. At such time as the Judgement Debtor meets the criteria for retirement under the plan, the retirement benefit payable to the Judgement Debtor will generally be calculated based upon the years of service and final average salary of the Judgement Debtor along with any reduction related to a post-survivorship option the Judgement Debtor may elect at the time of retirement.

10. The aforementioned benefits are guaranteed for the Judgement Debtor's life. There are no prior garnishment or court ordered withholdings on file with NYCERS.

11. The Judgement Debtor has an outstanding loan balance of approximately $10,292.84, which is currently in default and incurring interest at a rate of 6%. Going forward, NYCERS shall bar issuance of any further loans from the Judgement Debtor's member contributions.

12. In the event the Judgement Debtor becomes eligible for receipt of a benefit and an outstanding loan balance remains at retirement than the Judgment Debtor's benefit will be actuarially reduced.

13.     In the event the Judgement Debtor becomes eligible for receipt of a benefit NYCERS will restrain 25% of the Judgement Debtor's benefit until such time it is served with an order of garnishment obtained pursuant to 18 USC § 3613.

14.     NYCERS has mailed a copy of this Answer of the Respondent by first-class mail to:

> a) the Clerk of the Court, United States Courthouse, 500 Pearl Street, New York, NY 10007 Attn: Arraignment Unit, Rm 520; AND

> b) the Judgement Debtor, Joy Harris, at the last known address on file with NYCERS, 1355 East 92nd Street, Apt 3, Brooklyn, New York 11236; AND

> c) USAO-SDNY-FLP, 86 Chambers Street, 3rd Floor, New York, 10007.

Dated:     10/6/2025
            Brooklyn, New York

DocuSigned by:

*Maya Khodos*
FI04F8D286E004F9...

Maya Khodos, ESQ
General Counsel
New York City Employees' Retirement System
335 Adams Street, STE. 2300
Brooklyn, New York 11201
(347) 643-3780

**Answer of Respondent – Page 4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Judgment Creditor,

v.

JOY HARRIS,

Judgment Debtor.

24-CR-0207 (LAK)

**AMENDED
RESTRAINING NOTICE AND
INFORMATION SUBPOENA**

SSN: ***-**-5011
DOB: 1975

TO:    New York City Employees' Retirement System
       Legal Department
       30-30 47th Avenue, 10th Fl.
       Long Island City, NY 11101

WHEREAS, in the above-captioned cause of action, the court entered judgment on February 26, 2025, in favor of the United States and against JOY HARRIS, in the amount of $54,350.00. As of May 13, 2025, the unpaid balance is $54,321.60; and

WHEREAS, it appears that you owe a debt to the judgment debtor, JOY HARRIS, or are in custody or possession of property in which she has an interest, including but not limited to pension and/or retirement funds;

NOW, THEREFORE WE COMMAND YOU, pursuant to 18 U.S.C. § 3613(a) and Sections 5222(b) and 5224 of the New York Civil Practice Law and Rules,[1] that you answer in writing under oath, each question on the attached form and return the answer within 7 days after your receipt of this Restraining Notice and Subpoena;

TAKE NOTICE THAT, pursuant to Section 5222(b), a copy of which is attached hereto, you are hereby forbidden to make or suffer any sale, assignment, transfer or interference with property in which JOY HARRIS has an interest except upon an order of the court, until the expiration of one year after this notice is served upon him or her or the judgment is satisfied, whichever occurs first.

TAKE FURTHER NOTICE THAT this notice also concerns all property in which the judgment debtor has an interest which subsequently comes into your possession or custody and all debts which subsequently become owing from you to the judgment debtor.

TAKE FURTHER NOTICE THAT disobedience of this Restraining Notice and/or false swearing or failure to comply with this Subpoena is punishable by contempt of court.

---

[1] The United States may enforce criminal judgments against all of a defendant's property and rights to property in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law subject to the exclusive exemptions set forth in this notice. *See* 18 U.S.C. § 3613. The procedures established under 31 C.F.R. Part 212 and NYCPLR Section 5222-a for identifying and protecting benefits deposited into accounts at financial institutions do not apply to this restraining notice.

I certify that this Restraining Notice and Subpoena complies with Rules 5222 and 5224 of the New York Civil Practice Law and Section 601 of the General Business Law and that I have a reasonable belief that respondent has information about the debtor that will assist the creditor in collecting the judgment. Further, I certify that I the judgment debtor has been given notice of the exemptions within 12 months before service of this Restraining Notice and Subpoena on the respondent and/or that I will provide such notice to the judgment debtor within four days after service on the respondent in compliance with Rule 5222(d).

Dated: New York, New York
      May 13, 2025

JAY CLAYTON
United States Attorney

By:     *Melissa A Childs*

MELISSA A. CHILDS
Assistant United States Attorney
Tele. No: (212) 637-2711

# 57/5 Retirement Plan
# For Tier 4 Members



**NYC EMPLOYEES' RETIREMENT SYSTEM**

Tier 4

May 2025

This brochure outlines the benefits of the 57/5 Retirement Plan for Tier 4 members.

## Participation

Any person who becomes employed in an Eligible Position **after** June 28, 1995 and becomes a Tier 4 member must participate in the 57/5 Plan.

An Eligible Position is any position in City service except for the following:

1. Any Transit Authority member eligible to participate in the Transit 25/55 Plan
2. Any position in the uniformed forces of the Department of Correction and the Department of Sanitation
3. The positions of Bridge and Tunnel Officer, Bridge and Tunnel Sergeant, Bridge and Tunnel Lieutenant, Assistant Bridge and Tunnel Maintainer, Bridge and Tunnel Maintainer, Senior Bridge and Tunnel Maintainer, and Laborer with the Triborough Bridge and Tunnel Authority
4. Any position in the Division of Housing and Community Renewal
5. Any position in the unified court system
6. Any teaching position with the City University of New York
7. Any Investigator employed in a District Attorney's office

While not specifically excluded from the definition of Eligible Position, Tier 4 members who become employed in certain special occupational titles (e.g., Emergency Medical Technicians, Deputy Sheriffs, etc.) may be compelled to participate in special retirement plans (e.g., EMT 25-Year Plan, Deputy Sheriff 25-Year Plan, etc.) available to such titles. However, if a participant in one of these special retirement plans ceases to be employed in a special occupational title, they may be placed in the 57/5 Plan if they are employed in an Eligible Position.

Employees with a Tier 4 membership in existence prior to June 28, 1995 who:

- were not employed in an Eligible Position on June 28, 1995, and
- become employed in an Eligible Position after June 28, 1995

will have 90 days from the date of the letter advising them of the option to elect the 57/5 Plan, which is sent shortly after their appointment to an Eligible Position or, in the case of a transfer of membership, shortly after the transfer arrives at NYCERS. Any election to participate in the 57/5 Plan shall be irrevocable.

## Contributions

Participants in the 57/5 Plan are required to make contributions as described below. These contributions earn interest at a rate of 5%, compounded annually, and are Federal tax-deferred, meaning that participants do not pay Federal taxes on the contributions, only New York State and local taxes. Note, however, that contributions made while on Union Leave are **not** Federal tax-deferred.

**Basic Member Contributions (BMCs):**
Tier 4 members are required to contribute 3% of their gross wages until the earlier of attaining 10 years of Credited Service or upon reaching their tenth anniversary of membership, but no earlier than October 1, 2000. These contributions are referred to as Basic Member Contributions (BMCs) and they are held in the Member Contribution Accumulation Fund (MCAF).

**Additional Member Contributions (AMCs):**
Participants in the 57/5 Plan are also required to contribute Additional Member Contributions (AMCs) for **all** Credited Service until they attain

 **340 Jay Street, Bklyn, NY** Mezzanine level

 **Forms, Brochures, Fact Sheets at** www.nycers.org

 Upload Documents at www.mynycers.org

 **(347) 643-3000** M - F, 8am to 5pm

 **30-30 47th Avenue, 10th Fl.** Long Island City, NY 11101



30 years of Credited Service according to the following schedule:

- 1.85% of gross wages for all Credited Service rendered on or after December 2, 2001
- 2.85% of gross wages for all Credited Service rendered on or after January 1, 1998 and prior to December 2, 2001
- 4.35% of gross wages for all Credited Service rendered prior to January 1, 1998

The only exception to this rule applies to 57/5 Plan participants who were participants of the Transit 25/55 Plan prior to participating in the 57/5 Plan. Such participants are not required to pay AMCs for any service rendered while they were a participant in the Transit 25/55 Plan.

In addition to the BMCs and AMCs described above, participants employed in "Physically Taxing Positions*" must contribute an additional 1.98% of gross wages on all Physically Taxing Service. The only exception to this is exclusive to 57/5 Plan participants who are in one of the carpenter titles listed below.

| Carpenter | Rigger |
| --- | --- |
| Supervisor Carpenter | Dockbuilder |
| Ship Carpenter | Supervisor Dockbuilder |
| Supervisor Ship Carpenter | General Supervisor Dockbuilder |

Pursuant to Chapter 708 of the Laws of 2023, such participants are not required to contribute 1.98% Physically Taxing AMCs if they cannot possibly accumulate 25 years of Physically Taxing Service by age 57. Such participants may cease contributing 1.98% of their gross wages on December 8, 2023 or on the date they can no longer possibly accumulate 25 years of Physically Taxing Service by age 57, whichever is later.

AMCs are maintained in the Retirement Reserve Fund (RRF), which is an account maintained separately from the MCAF account. Fifty percent of the AMCs are considered employee contributions; the other fifty percent of the AMCs are considered employer contributions. This distinction becomes significant particularly in refunds and loans (See the Refunds and Loans sections of this brochure).

*A Physically Taxing Position is a position in City service included in the official List of Physically Taxing Positions established and maintained by the NYC Office of Labor Relations. 57/5 Plan participants employed in such positions are required to contribute more for the right to retire as early as age 50 provided they have 25 years of Physically Taxing Service. See Physically Taxing Positions Fact Sheet #712 for more information and the Official List of Physically Taxing Positions.

## Deficits

Failure to pay any of the required contributions will result in a deficit in the MCAF (for BMCs) and/or RRF (for AMCs). If the deficit is identified prior to retirement, NYCERS will notify the participant so they can resolve the deficit.

If there is an unresolved deficit at retirement in either the MCAF or RRF, NYCERS will notify the participant of the choice to either pay the deficit in full or apply an actuarial reduction (a lifetime reduction to their pension based on their deficit amount) to resolve the deficit. Unpaid deficits may also impact disability and death benefits.

## Loans

In addition to the ability to borrow up to 75% of the BMCs held in the MCAF account, 57/5 Plan participants may borrow up to 75% of the employee portion (50%) of AMCs in the RRF. Any loans taken are subject to the same terms and conditions applicable to Tier 4 members. Please consult the Loans Brochure #911 for additional information.

## Buy-Back

57/5 Plan participants may purchase previous public service rendered anywhere in New York

 340 Jay Street, Bklyn, NY Mezzanine level

 Forms, Brochures, Fact Sheets at www.nycers.org

 Upload Documents at www.mynycers.org

 (347) 643-3000 M - F, 8am to 5pm

 30-30 47th Avenue, 10th Fl. Long Island City, NY 11101

City or New York State. The cost is 3% of the wages earned during the period they are buying back, plus 5% interest compounded annually from the date of their previous service until the date of payment.

57/5 Plan participants will also be charged AMCs, plus interest, for prior service rendered.

## Military Buy-Back

Federal and state laws allow members to purchase service credit for time spent in U.S. Military service – the Uniformed Services Employment and Reemployment Rights Act (USERRA) and Article 20 of the New York State Retirement and Social Security Law (RSSL), respectively. Under Article 20, the cost is 3% *times* the number of years of military service being purchased *times* the salary they earned during the 12 months prior to the date of their application. Under USERRA, the cost is the equivalent of the contributions required if they had never left for military service. No interest is charged on military buy-back.

## Refunds

57/5 Plan participants who have rendered less than 10 years of Credited Service and who leave City service may apply for a refund of BMCs and the **employee portion** (50%) of AMCs, plus accrued interest at a rate of 5% compounded annually, effectively terminating their membership. Participants with between five and 10 years of Credited Service must also waive their right to a Vested Retirement Benefit. Refunds will be reduced by the present value of any loan. Refunds of BMCs are not possible for participants with 10 or more years of Credited Service.

**Other than a refund issued to a participant with less than 10 years of Credited Service, refunds of the employee portion (50%) of AMCs are permissible in the event of:**

1. The death of the participant
2. The service retirement of the participant

at age 62 or later, provided that such participant was in active service for a total of at least six months out of each of the two 12-month periods immediately preceding their retirement for service

3. The disability retirement of the participant
4. The transfer of a participant to another public employee retirement system in New York State, other than the Board of Education Retirement System

For participants in Physically Taxing Positions, including participants who ceased paying 1.98% Physically Taxing AMCs under Chapter 708 of the Laws of 2023 (see the AMCs section), the **employee portion** (50%) of the 1.98% AMCs will be refunded if they have credit for 25 or more years of Physically Taxing Service and they are at least age 55 when they retire for service, provided that they were in active service for a total of at least six months out of each of the two 12-month periods immediately preceding their retirement for service. A refund of the **employee portion** (50%) of the 1.98% AMCs is also permissible if such participants are at least age 62 when they retire for service, provided that they were in active service for a total of at least six months out of each of the two 12-month periods immediately preceding their retirement for service.

## Vested Retirement Benefit

Vesting is about a member's right to receive future benefits from NYCERS even if they leave City service. A member is vested when they have met the minimum service requirements of their plan.

Participants in the 57/5 Plan who have five or more years of Credited Service, at least two years of which are Membership Service, are entitled to receive a Vested Retirement Benefit at age 57.

Participants employed in Physically Taxing Positions are eligible to receive a Vested

340 Jay Street, Bklyn, NY   Forms, Brochures,   Upload Documents at   (347) 643-3000   30-30 47th Avenue, 10th Fl.
Mezzanine level   Fact Sheets at   www.mynycers.org   M - F, 8am to 5pm   Long Island City, NY 11101
www.nycers.org

Retirement Benefit at age 50 if they have 25 or more years of Physically Taxing Service at the time they separate from City service.

The Vested Retirement Benefit is computed in the same manner as the Service Retirement Benefit specified below.

## Service Retirement

Participants in the 57/5 Plan who have five or more years of Credited Service, at least two years of which are Membership Service, are eligible to receive a Service Retirement Benefit at age 57.

Participants employed in Physically Taxing Positions are eligible to receive a Service Retirement Benefit as early as age 50 if they have at least 25 years of Physically Taxing Service.

The Service Retirement Benefit payable under the 57/5 Plan is calculated as follows:

- **For a Participant with less than 20 years of Credited Service:**
  1 ⅔% *times* Final Average Salary* (FAS) *times* years of Credited Service

- **For a Participant with between 20 and 30 years of Credited Service:**
  2% *times* FAS *times* years of Credited Service

- **For a Participant with more than 30 years of Credited Service:**
  2% *times* FAS *times* 30 years of Credited Service, **plus**
  1.5% *times* FAS *times* years of Credited Service in excess of 30.

*Final Average Salary is defined as the greater of:

- the average of wages earned during any three consecutive calendar years, **or**
- the average of wages earned during the 36 months immediately preceding the member's retirement date.

**NOTE**: Wages earned in any year used in the FAS computation cannot exceed more than

10% of the average of the previous two years. See Brochure #929 for a detailed explanation.

## Disability Retirement

Tier 4 members are eligible for an Ordinary Disability Retirement Benefit at any age if they have 10 or more years of Credited Service and NYCERS' Medical Board determines that they are physically or mentally incapacitated to perform their job duties and were so incapacitated at the time that they ceased performance of their duties.

If they have less than 10 years of Credited Service, they are eligible to receive a Disability Retirement Benefit if NYCERS' Medical Board determines that they are physically or mentally incapacitated to perform their job duties AND their disability is the result of an accidental injury sustained in the performance of their duties, and not caused by their own willful negligence.

The Disability Retirement Benefit is equal to the greater of:

- ⅓ of the member's FAS; **or**
- 1 ⅔% *times* FAS *times* years of Credited Service

  **or**

- If they are eligible for a service retirement, their Service Retirement Benefit.

## Survivor Benefits

In the event of a participant's death prior to retirement, their NYCERS membership entitles their beneficiaries to a death benefit. There are two primary types of death benefits – Ordinary Death Benefits and Accidental Death Benefits.

An Ordinary Death Benefit (ODB) is a lump-sum benefit payable to the participant's beneficiary/ beneficiaries if they die while in active service, before retirement, whether or not death occurs as the result of an accident sustained on the job.

 340 Jay Street, Bklyn, NY Mezzanine level      Forms, Brochures, Fact Sheets at www.nycers.org      Upload Documents at www.mynycers.org      (347) 643-3000 M - F, 8am to 5pm      30-30 47th Avenue, 10th Fl. Long Island City, NY 11101

An ODB will be paid only if:

a) The participant was being paid on payroll at the time of their death;

   **or**

b) They were off payroll or they were on an authorized leave without pay at the time of their death; **and**

   1. They were on payroll, in service, and paid within the last 12 months before death; **and**

   2. They were not gainfully employed since last on the payroll; **and**

   3. They had credit for one or more years of continuous service since they last entered the service of their employer.

   **or**

c) Effective October 1, 2000, the participant was on an authorized leave of absence without pay for medical reasons which has continuously been in effect since the participant was last paid on the payroll, provided the participant was in service and last paid on the payroll within the four-year period prior to the participant's death.

The ODB payable is a multiplication of the participant's yearly salary as indicated below:

- If they have at least one, but less than two years of service, a lump-sum benefit equal to one year's current salary

- If they have at least two, but less than three years of service, a lump-sum benefit equal to two times current salary

- If they have at least three years of service, a lump-sum benefit equal to three times current salary.

The benefit is reduced for each year a participant remains in active service beyond age 60.

Their beneficiary/beneficiaries will also receive a refund of their BMCs plus earned interest, and a refund of the employee share (50%) of their AMCs, plus earned interest.

If the participant has at least 10 years of Credited Service, is awaiting payability of a Vested Retirement Benefit, and dies prior to age 57 (or age 50 if they were employed in a Physically Taxing Position with 25 or more years of Physically Taxing Service), their beneficiaries will receive a lump-sum death benefit based on 50% of the ODB that would have been payable if the participant had died on their last day in active service, plus the refund of their BMCs and the employee share (50%) of their AMCs plus interest.

If the participant did not render 10 or more years of Credited Service, only the return of their BMCs and the employee share (50%) of their AMCs, plus interest, will be payable to the participant's Estate.

An Accidental Death Benefit (ADB) is payable to Eligible Beneficiaries, who are defined in law, if NYCERS' Medical Board determines that the member's death was the result of an accident sustained in the performance of their duty, not caused by their own negligence, or while in military service.

The annual benefit equals 50% of the wages the participant earned during their last year of service, or their annual wage rate if they had less than one year of service. Their BMCs are not refunded to their beneficiaries, but the employee share (50%) of their AMCs will be refunded plus interest.

340 Jay Street, Bklyn, NY
Mezzanine level

Forms, Brochures,
Fact Sheets at
www.nycers.org

Upload Documents at
www.mynycers.org

(347) 643-3000
M - F, 8am to 5pm

30-30 47th Avenue, 10th Fl.
Long Island City, NY 11101



# Summary Plan Description (SPD)

## Tier 4 - 62/5

Version June 2025

New York City Employees' Retirement System
www.nycers.org



# TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................5

    About NYCERS................................................................................................................6
    Board of Trustees ............................................................................................................6
    Contact Information .........................................................................................................7

**MEMBERSHIP AND ELIGIBILITY**....................................................................................10

    Mandatory Membership vs. Voluntary Membership .......................................................10
    Social Security Participation...........................................................................................11
    Deferred Compensation Plan .........................................................................................11

**CONTRIBUTIONS** .............................................................................................................13

    Member Contribution Accumulation Fund ......................................................................13
    Pension Enhancement Law.............................................................................................13
    Deficits...........................................................................................................................14
    Maximum Compensation Limitations under IRC Section 401(a)(17) ...............................14

**CREDITED SERVICE** ........................................................................................................16

    Membership Service........................................................................................................16
    Transferred Service........................................................................................................17
    Purchased Service (Buy-Back) ......................................................................................17
    Membership Reinstatement ............................................................................................20
    Military Service ...............................................................................................................21
    Union Leave Service ......................................................................................................25
    Dual Employment...........................................................................................................25

**LOANS** .............................................................................................................................27

    Eligibility ........................................................................................................................27
    Borrowing ......................................................................................................................27
    Applying And Getting The Money....................................................................................27
    Repayment.....................................................................................................................28
    Fees ..............................................................................................................................30
    Consequences of Non-Payment .....................................................................................30
    Leaving City Service ......................................................................................................31
    Taxes for New and Consolidated Loans..........................................................................31
    Taking a Loan at Retirement ..........................................................................................33
    Outstanding Loan Balance at Retirement .......................................................................33

**LEAVING CITY SERVICE**.................................................................................................35

    Refunds.........................................................................................................................35
    Vesting..........................................................................................................................35
    Transfers .......................................................................................................................37
    Terminating Membership ................................................................................................39
    Required Minimum Distribution (RMD)............................................................................39

**SERVICE RETIREMENT** ...................................................................................................42

    The Service Retirement Process.....................................................................................42

Retirement Options ........................................................................................................... 45
Calculating the Retirement Benefit ................................................................................. 47
Special Age Reduction Provisions (TBTA Only) ............................................................ 51
Cost-of-Living Adjustment (COLA) ................................................................................. 52
Domestic Relations Orders and Child Support Claims ................................................... 52
Post-Retirement Earnings Limitations for Service Retirees ........................................... 53
Returning to Public Service after Retirement ................................................................. 54

**DISABILITY RETIREMENT ...................................................................................................58**

Eligibility ......................................................................................................................... 58
The Medical Board ......................................................................................................... 59
The Disability Retirement Process ................................................................................. 59
Calculating the Disability Retirement Benefit ................................................................. 64
Special Disability Provisions ........................................................................................... 65
Post-Retirement Earnings Limitations for Disability Retirees ......................................... 69

**SURVIVOR BENEFITS ............................................................................................................72**

Designating Beneficiaries ............................................................................................... 72
Ordinary Death Benefit ................................................................................................... 73
Death Benefits for Vested Members ............................................................................... 76
Accidental Death Benefit ................................................................................................ 76
Filing for Ordinary or Accidental Death Benefits ............................................................ 77
Special Accidental Death Benefits (EMT/EMS, TBTA, Deputy Sheriff and Uniformed Sanitation).. 78
Presumptive Accidental Death Benefits under the Heart Law (EMT and Uniformed Sanitation) .... 79
World Trade Center Death Benefits ................................................................................. 79
Death Benefits for Military Personnel ............................................................................. 80

**TIER 4 MEMBERS WITH TIER 3 RIGHTS ...............................................................................83**

Eligibility ......................................................................................................................... 83
Service Retirement ......................................................................................................... 83
Disability Retirement ...................................................................................................... 85

**TAXATION ...............................................................................................................................90**

Loans .............................................................................................................................. 90
Refunds ........................................................................................................................... 90
Pensions .......................................................................................................................... 91
Death Benefits ................................................................................................................ 91
Required Minimum Distribution (RMD) ........................................................................... 92

**GLOSSARY OF TERMS ..........................................................................................................95**

# INTRODUCTION



# INTRODUCTION

The New York City Employees' Retirement System (NYCERS) is pleased to present the Tier 4 - 62/5 Summary Plan Description (SPD).

The SPD is a complete guide to the 62/5 Retirement Plan and its provisions. The information contained in this SPD is taken from applicable laws and/or rules that govern membership in this retirement plan, including, but not limited to, Article 15 of the New York State Retirement and Social Security Law (RSSL), the Administrative Code of the City of New York, the Rules of NYCERS Board of Trustees, and certain other applicable laws.

Since laws and/or rules affecting a member's retirement plan or the administration of benefits can be changed in any given year, information may need to be amended from time to time. This SPD contains the most current information regarding the benefits and responsibilities of membership in the Tier 4 62/5 Plan. In the event of a conflict between the contents of this SPD and any applicable laws and/or rules, the applicable laws and/or rules will govern.

In addition to the 62/5 Plan, Tier 4 includes a number of other special retirement plans, many of which are specific to certain *Special Occupational Titles*. For a guide to all Tier 4 plans not covered in this SPD, please refer to their specific brochures available online at nycers.org:

- ▶ 55/25 Retirement Plan (55/25) Brochure #944

- ▶ 57/5 Retirement Plan (57/5) Brochure #945

- ▶ 911 Communication Operators 25-Year Retirement Plan (PCT-25) Brochure #941

- ▶ Automotive Member 25-Year/Age 50 Retirement Plan (AUT 25/50) Brochure #932

- ▶ Deputy Sheriff 25-Year Retirement Plan (DSH-25) Brochure #933

- ▶ Dispatcher 25-Year Retirement Plan (DIS-25) Brochure #937

- ▶ Emergency Medical Technician 25-Year Retirement Plan (EMT-25) Brochure #936

- ▶ Fire Protection Inspector 25-Year Retirement Plan (FPI-25) Brochure #950

- ▶ Sanitation 20-Year Retirement Plan (SA-20) Brochure #935

- ▶ Special Peace Officer 25-Year Retirement Plan (SPO-25) Brochure #934

- ▶ Transit 25-Year/Age 55 Retirement Plan (T25/55) Brochure #910

- ▶ Triborough Bridge and Tunnel Authority 20-Year Retirement Plan (TBTA-20) Brochure #938

In NYCERS' *Defined Benefit Retirement Plan* structure, laws guide the administration of pension benefits. In addition, some laws authorize the Board of Trustees to establish rules. As such, the origins of many of the benefits explained in this SPD can be traced back to a section of law or NYCERS rule. This SPD contains:

▶ **Legislative References (LR) –** The Chapter which created a new law or amended an existing law either establishing or modifying a particular benefit explained in this SPD.

▶ **Statutory References (SR) –** The section of the RSSL, the NYC Administrative Code or other applicable law (e.g., New York State General Municipal Law) containing the relevant pension benefit.

Throughout this SPD, each paragraph explaining a benefit will reference the corresponding LR or SR. Members and/or staff who wish to consult chapters or sections of law may do so by visiting http://public.leginfo.state.ny.us, a website containing legislation dating back to 1995 and the laws of New York.

Words in black that are italicized throughout this SPD have special meaning, and are further explained in the **Glossary of Terms** section on page 95.

## ABOUT NYCERS

The New York City Employees' Retirement System (NYCERS) was founded by the New York State Legislature in 1920 with 13,331 members. Today, NYCERS has grown into the largest municipal public employee retirement system in the United States with more than 348,000 active members and retirees, including civilian employees such as clerical workers, accountants and social workers, and uniformed employees such as New York City Correction Officers and Sanitation Workers.

NYCERS is a *Defined Benefit Retirement Plan*. A *Defined Benefit Retirement Plan* for public sector employees in New York State offers benefits which are defined in law. Generally, retirement allowances payable from such plans are based on a member's years of service, age and compensation base. Other types of benefits such as loans, disability benefits and *Death Benefits* are also offered and specified in law. All benefits payable are funded by employee and employer contributions and from earnings on the invested assets of the system.

NYCERS is a cost-sharing, multiple-employer public employee retirement system. In addition to the City of New York (various agencies, boards and commissions), members are employed by other *Participating Employers* such as the NYC Transit Authority and NYC Health + Hospitals (for a complete listing, see *Participating Employers* on page 100).

NYCERS performs many functions for active members and retirees alike. Among other things, each year NYCERS issues and processes thousands of loans, refunds and *Buy-Back* applications. For retirees, NYCERS verifies retirement allowances, calculates *Cost-of-Living Adjustments (COLA)*, and much more.

NYCERS is dedicated to a client-centered approach to quality service delivery. Whether it's upgrading Information Technology infrastructure, facilitating access to information, developing customer service upgrades, or instituting advanced security measures, NYCERS is committed to sustaining quality service delivery for all members, retirees and beneficiaries.

## BOARD OF TRUSTEES

The Board of Trustees is the governing body of NYCERS. Its responsibilities include investing the assets of the retirement system, establishing the administrative budget of the system, and promulgating rules and regulations necessary to carry out provisions of law.

The NYCERS Board of Trustees, as prescribed by law, consists of 11 members: the Mayor's Representative, the City Comptroller, the Public Advocate, the heads of the three unions with the largest number of participating employees, and the five Borough Presidents.

- ▶ Mayor's Representative and Chairperson

- ▶ Comptroller of the City of New York

- ▶ Public Advocate

- ▶ Borough President of Manhattan

- ▶ Borough President of Brooklyn

- ▶ Borough President of The Bronx

- ▶ Borough President of Queens

- ▶ Borough President of Staten Island

- ▶ Executive Director of District Council 37, AFSCME

- ▶ President of Transport Workers Union, Local 100

- ▶ President of International Brotherhood of Teamsters, Local 237

The Comptroller of the City of New York is Custodian of the funds of the system by law and, by delegation of the Board of Trustees, has the power to invest those funds.

The Executive Director, appointed by the Board of Trustees, is the chief administrative officer of NYCERS who oversees the day-to-day operations of the system.

## CONTACT INFORMATION

NYCERS members and retirees may contact the retirement system through the following various channels:

### MyNYCERS
The easiest way for members and retirees to reach NYCERS is to register for MyNYCERS at mynycers. org and submit a Service Request. They may file forms online, manage their NYCERS account, and access self-service tools, including a retirement benefit calculator and knowledge articles covering topics such as disability and service retirement, loans, buyback, and more. Registration instructions are provided at nycers.org. For members who registered before April 2020, a one-time re-registration is required.

### Terry
Members and retirees may chat online with Terry, NYCERS' Digital Agent, at nycers.org or via the MyNYCERS portal.

### Call Center
NYCERS' Call Center is open Monday through Friday, 8 a.m. – 5 p.m., except holidays.

(347) 643-3000 *(if calling within NYC)*

(877) 669-2377 *(if calling from outside the NYC area )*

(347) 643-3501 *(if using a teletypewriter (TTY))*

## Walk-in Center

NYCERS' Walk-in Center is located on the Mezzanine level at 340 Jay Street in downtown Brooklyn, and is open Monday through Friday, 8 a.m. – 5 p.m., except holidays.

# MEMBERSHIP AND ELIGIBILITY



# MEMBERSHIP AND ELIGIBILITY

Tier 4 members are members who joined NYCERS between July 27, 1976 and March 31, 2012, except for:

- ▶ Members of the Uniformed Force of the NYC Department of Correction, and

- ▶ Investigators employed in a District Attorney's Office

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §600

The Tier 4 - 62/5 Retirement Plan, commonly referred to as the *Basic Tier 4 Plan*, allows *Participants* to retire with an unreduced pension at age 62 with at least five years of *Credited Service*. *Participants* with five years of *Credited Service* may retire with a reduced pension earlier than age 62 but no earlier than age 55 (see the **Tier Equity** section on page 47).

Membership in this plan is for employees of the City of New York or any other *Participating Employer* in NYCERS who joined NYCERS after July 26, 1976 but prior to June 29, 1995 and did not elect to participate in the 55/25 Early Retirement Program created by Chapter 96 of the Laws of 1995. Tier 4 employees of the Triborough Bridge and Tunnel Authority (MTA Bridges and Tunnels) in the titles of Bridge and Tunnel Maintainer, Assistant Bridge and Tunnel Maintainer, Senior Bridge and Tunnel Maintainer and Laborer are members of the 62/5 Plan if they join NYCERS at any time after July 26, 1976.

Tier 4 members who are mandated into the 57/5 Retirement Plan based on a *Membership Date* after June 28, 1995 (established by Chapter 96 of the Laws of 1995) may also be eligible for membership in the 62/5 Plan. This could occur if such members transferred a prior membership from another retirement system in New York State, where such *Membership Date* was prior to June 29, 1995. Once the transferred membership is processed, such members will have the opportunity to elect to remain as *Participants* of the 57/5 Plan or continue as 62/5 Plan *Participants*.

Employees in certain *Special Occupational Titles* may be *Participants* of a special plan available to their specific title and, therefore, may not be *Participants* in the 62/5 Plan. However, such employees may retain the right to retire under the 62/5 Plan under certain scenarios. Such employees are encouraged to contact NYCERS to learn more about retiring under the special plan or the 62/5 Plan.

## MANDATORY MEMBERSHIP VS. VOLUNTARY MEMBERSHIP

Membership in NYCERS is mandatory for all employees who are appointed from a civil service list and have completed six months in a permanent title in the competitive or labor class. Permanent employees may voluntarily join NYCERS during the first six months of employment. If they do not voluntarily join, membership will automatically be established after six months have lapsed.

Non-permanent employees are free to join NYCERS; they will not be forced in after six months. As long as such employees are on the payroll of their employer and file Application for Membership Form #103 with NYCERS, membership can be established. Form #103 can also be submitted online at nycers.org/join.

**LR:** Chapter 414 of the Laws of 1983;

New York City Employees' Retirement System                                              www.nycers.org

Chapter 929 of the Laws of 1937, as amended by Chapter 426 of the Laws of 1941
**SR:** RSSL §600 subdivision b;
NYC Administrative Code §13-104, subdivision 1

## SOCIAL SECURITY PARTICIPATION

Membership in NYCERS requires participation in the Social Security Program. Once an employee joins NYCERS, either through voluntary or mandatory membership, the employee must pay the 6.2% Federal Insurance Contributions Act (FICA) tax (reduced to 4.2% for 2011 and 2012) on covered *Wages*. This tax, otherwise known as Social Security tax, is applied up to a maximum wage limit. The maximum wage limit subject to FICA, per calendar year, can be found on socialsecurity.gov.

In addition, all employees since 1986 are required to pay 1.45% of earnings for the Medicare Program. Unlike the FICA tax, there is no maximum wage limit upon which Medicare deductions are based.

## DEFERRED COMPENSATION PLAN

Another Citywide retirement plan is the Deferred Compensation Plan (DCP), which is administered by the NYC Office of Labor Relations. The DCP is a *Defined Contribution Plan* and its benefits are based on the cumulative value of employee contributions including the return on investments earned on such contributions. Members of the DCP select how to invest their contributions, and benefits are paid out according to assets available in the individual member's account.

Employees may concurrently join NYCERS and DCP. Those who are not mandated into NYCERS membership may join the DCP and not NYCERS. DCP members who contribute 7.5% or more of their *Wages* to the DCP are not required to pay the 6.2% FICA tax. However, Social Security disability, survivor and retirement benefits are determined according to the amount and duration of a member's FICA contributions.

DCP members who subsequently join NYCERS are required to pay FICA tax even if they contribute at least 7.5% of *Wages* to the DCP.

If a member does not join NYCERS or the DCP, they will be required to pay all required FICA contributions after one month of employment.

# CONTRIBUTIONS



# CONTRIBUTIONS

The retirement benefits payable from NYCERS are derived from three primary sources:

- ▶ The contributions made by the member

- ▶ The contributions made by the employer

- ▶ The return on the investments of the assets of the retirement system

Members are required to make *Basic Member Contributions (BMCs)* equal to 3% of gross *Wages*, including overtime. The *BMCs* deducted from a member's paycheck are Federal tax-deferred, meaning the member does not pay Federal taxes on the contributions, only New York State and local taxes. Contributions made by members while on Union Leave are not Federal tax-deferred.

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §613 subdivision a(1);
    RSSL §613 subdivision d

NYCERS' pension benefits are taxable on the Federal level but are not taxable on the state and local level if the member resides in New York City or New York State as a retiree. If a member moves to another state, their pension may be subject to taxation by that particular state and possibly the locality of the state in which they reside.

## MEMBER CONTRIBUTION ACCUMULATION FUND

The member's *Basic Member Contributions* are deposited into an account called the *Member Contribution Accumulation Fund (MCAF)*. The monies deposited into the *MCAF* earn interest. Since January 1, 1977, the interest rate has been fixed by law at a rate of 5% per annum, compounded annually.

**LR:** Chapter 890 of the Laws of 1976;
    Chapter 414 of the Laws of 1983
**SR:** RSSL §517 subdivision b;
    RSSL §613 subdivision c

The accrual of interest on member contributions is of value in certain ways, but members should not view interest accrued in the *MCAF* as they would view interest accrued in a savings account. In a *Defined Benefit Retirement Plan*, a formula defined in law is used to calculate the member's pension. Interest has more of a direct impact in areas such as loans and refunds; the amount a member can borrow is based on 75% of their *MCAF*, which is constantly growing because of interest, and refunds include interest earned.

## PENSION ENHANCEMENT LAW

The Pension Enhancement Law enacted in October 2000, provides for the cessation of *Basic Member Contributions (BMCs)* for members who have:

1. Accumulated 10 years of *Credited Service*; OR

2. Reached their tenth anniversary of membership in NYCERS or in another public employee retirement system in New York State, if membership in such system is transferred to NYCERS.

The cessation of BMCs is effective upon whichever occurs first – 10 years of Credited Service or the tenth anniversary of membership. Members who had more than 10 years of Credited Service at the time the law was enacted in October 2000 are not entitled to a refund of the contributions made for the years of service in excess of 10 years. The Pension Enhancement Law did not provide for a refund of such contributions; therefore, the earliest date *BMCs* may cease is October 1, 2000.

**LR:** Chapter 126 of the Laws of 2000, as amended by Chapter 110 of the Laws of 2000
**SR:** RSSL §911 subdivision b

## DEFICITS

Members are expected to make a specific amount of contributions based on their tier and plan and their total years of service. The cumulative total of contributions that should be in the member's *MCAF* is known as the Required Amount. Anything short of the Required Amount constitutes a *Deficit*.

Members are required to resolve a *Deficit* in their *MCAF*. An unresolved *Deficit* may lead to a reduction in their pension benefit or a delay in the processing of their retirement benefit. The latter can occur if the *Deficit* exceeds 75% of the amount in the member's *MCAF*. This percentage is important because a *Deficit* equal to less than 75% of the amount in the *MCAF* can be treated as an outstanding loan at retirement, and a corresponding reduction of the member's retirement benefit can result. However, if the *Deficit* exceeds 75%, the member will not be able to collect their Retirement Benefit until their *Deficit* is lowered.

A *Deficit* can occur for many reasons. NYCERS makes every effort to ensure that a *Deficit* does not occur. For example, upon cessation of a member's *Basic Member Contributions*, their *MCAF* is reviewed to determine if it is fully funded.

Identifying funding discrepancies sooner rather than later can provide a smoother transition to retirement. Members can also play a role in identifying discrepancies. Members should always be aware of contributions deducted from their paychecks, particularly members who may transfer to another agency. On occasion, NYCERS is not notified in a timely manner of an agency-to-agency transfer. As a result, payroll deductions may be interrupted, which causes a *Deficit*. If a member is transferring to another agency, the member should make sure that agency notifies NYCERS to ensure the continuation of payroll deductions.

## MAXIMUM COMPENSATION LIMITATIONS UNDER IRC SECTION 401(A) (17)

In order to ensure members are not charged contributions for any earnings in excess of the Maximum Compensation Limitations under IRC 401(a)(17), limitations are applied to any required member contributions for each respective calendar year.

For more information, refer to the **Maximum Compensation Limitations under IRC Section 401(A) (17)** section on page 50.

# CREDITED SERVICE



# CREDITED SERVICE

In NYCERS' *Defined Benefit Retirement Plan* structure, retirement benefits are calculated using three primary factors:

1. The member's age

2. The member's compensation base (*Final Average Salary (FAS)*)

3. The member's *Credited Service*

The more *Credited Service* accumulated, the higher the retirement benefit. There are various ways for members to accumulate *Credited Service*. The following is a listing of the different types of *Credited Service*, followed by an explanation of each.

**Types of Credited Service**
- ▶ *Membership Service*

- ▶ *Transferred Service*

- ▶ *Purchased Service (Buy-Back)*

- ▶ *Membership Reinstatement*

- ▶ *Military Service*

- ▶ *Union Leave Service*

## MEMBERSHIP SERVICE
*Membership Service* is defined as paid *Full-Time* or *Part-Time Service* rendered after joining NYCERS. *Membership Service* also includes *Transferred Service* and *Military Service*, which are discussed in more detail in the **Transferred Service** section on page 17 and in the **Military Service** section on page 21, respectively. *Membership Service* can be used for eligibility purposes for certain benefits and for calculating benefits.

### Full-Time vs. Part-Time Service
*City Service* rendered by an employee who is regularly scheduled to work 1,827 hours in a calendar year is considered *Full-Time Service*. The maximum number of hours that will be credited is 35 hours in any weekly pay period and 70 hours in any bi-weekly pay period. Partial service rendered in a calendar year by a full-time employee will be prorated based on 1,827 hours.

*Part-Time Service* is service in which an employee is regularly scheduled to work less than 1,827 hours in a calendar year. Regardless of how *Part-Time Service* is obtained, NYCERS will prorate credit on the basis of one year of *Full-Time Service* – 1,827 hours worked in a calendar year.

**LR:** Chapter 749 of the Laws of 1992
**SR:** NYC Administrative Code §13-638.4;
    RSSL §609 subdivision a

## TRANSFERRED SERVICE

*Transferred Service* is service credited while a member of another public employee retirement system in New York City or New York State which has not been terminated and which is transferred to NYCERS. Besides NYCERS, there are seven retirement systems in New York City and New York State. They include:

▶ New York City Teachers' Retirement System

▶ New York City Police Pension Fund

▶ New York City Fire Department Pension Fund

▶ New York City Board of Education Retirement System

▶ New York State & Local Employees' Retirement System

▶ New York State & Local Police & Fire Retirement System

▶ New York State Teachers' Retirement System

**LR:** Chapter 687 of the Laws of 1955
**SR:** RSSL §43

## PURCHASED SERVICE (BUY-BACK)

*Purchased Service*, also known as *Buy-Back*, generally refers to previous *Full-Time* or *Part-Time Service* rendered in the employ of a public entity anywhere in New York State that has been fully paid for and credited.

Generally, in order to purchase *Previous Service*, members must have been on the payroll of a public entity (not a private entity) in a position which would have allowed membership in a public employee retirement system in New York City or New York State. *Previous Service* will be credited to members once they have rendered at least two years of *Membership Service*.

One benefit of purchasing *Previous Service* is the inclusion of such service as part of a member's *Credited Service*, which may ultimately enhance their retirement benefit. Another benefit is that purchasing such service may accelerate the cessation of their *Basic Member Contributions* (see the **Pension Enhancement Law** section on page 13). Purchasing service will not change their *Membership Date* in NYCERS.

Members may file a request to purchase *Previous Service* as long as they are in active payroll status. If the member separates from *City Service*, they are generally not allowed to initiate a new claim unless they have at least two years of *Membership Service* and are purchasing only enough service credit to reach their minimum *Vesting* requirement or to obtain 10 years of service to apply for Ordinary Disability Retirement.

**LR:** Chapter 414 of the Laws of 1983, as amended by Chapter 552 of the Laws of 2000
**SR:** RSSL §609 subdivision b(1)

### Application Process and Cost

Members may apply to purchase *Previous Service* in two ways:

1. Online via their secure MyNYCERS account; register for or log in to MyNYCERS at nycers.org and look for "Apply for Buy-Back" in the navigation menu.

2. Via paper form; complete and submit Application to Purchase Credit for Service Rendered Prior to Membership Date in NYCERS Form #241.

Once an application is filed, NYCERS must verify the member's *Previous Service* and *Wages* earned. In most cases, NYCERS has adequate pay records or is able to request them from the following employers:

▶ Mayoral Agencies – Starting from February 1986

▶ HHC – Starting from 1973 (1983 and 1986 are incomplete)

▶ Transit Authority – Starting from 1986 (1987 and 1988 are incomplete for certain titles)

▶ Triborough Bridge and Tunnel Authority (TBTA), Department of Education (DOE), CUNY four-year colleges – Most records can be obtained by NYCERS

If the requested *Previous Service* to be purchased is not listed, the member must also submit Departmental Certificate of Service Rendered by Member Claiming Service Prior to Membership Date in NYCERS Form #242 from their employer, along with copies of their W-2 or payroll earnings and roster card or employment history.

Verifying the *Wages* earned is essential to calculating the cost of *Previous Service*. The cost is determined by multiplying 3% by the *Wages* earned during such *Previous Service*, plus interest at a rate of 5%, compounded annually. The 3% represents the *Basic Member Contributions (BMCs)* that a member would have been required to make had they been a member of a retirement system at that time. Since those monies would have generated the interest at 5%, the cost also includes interest.

Once the cost is calculated, NYCERS will send the member a cost letter containing various payment options:

1. A lump-sum payment of the entire amount; OR

2. A partial lump-sum payment and the balance paid through payroll deductions; OR

3. Payment of the entire amount through payroll deductions; OR

4. A direct *Rollover* of funds from a Deferred Compensation Plan (DCP) or Individual Retirement Account (IRA), if allowed by a member administrator.

If the member chooses to *Rollover* their funds, they must send a copy of the cost letter they receive from NYCERS to the administrator of their DCP or IRA **at least 15 days** before the payment is due at NYCERS. Funds will be transferred directly to NYCERS as a payment for their *Previous Service*. NYCERS accepts a direct *Rollover* from the following:

▶ 457 Deferred Compensation Plan

▶ 403(b) Deferred Compensation Plan

▶ 401(a) or 401(k) Qualified Defined Benefit or Contribution Plan

New York City Employees' Retirement System                                                                www.nycers.org

▶ 408(a) or 408(b) Individual Retirement Account

▶ 403(a) Annuity Plan

Members must make sure that the banking institution that transmits their funds to NYCERS writes the correct DCP or IRA information on the check and any correspondence it sends. For members of the following specified agencies, the contact for their respective DCP or IRA is:

**City Employees**
Contact the New York City Deferred Compensation Plan at (212) 306-7760 or visit their website at nyc.gov/deferredcomp. City employees may roll over funds from a 457 plan, a 401(k) plan, or a NYCE IRA.

**CUNY Employees**
Those in the NYS 457 program should call (800) 422-8463. Those in the MetLife 403(b) program should call (800) 560-5001.

**NYC Health + Hospitals Employees (HHC)**
Contact Empower Retirement at (855) 444-2832 for more information.

**Metropolitan Transportation Authority Employees (MTA), including TBTA and TA**
Those in the Empower Retirement 457 plan and 401(k) plan should call (877) 756-4682 for more information. Employees with an Empower Retirement IRA should call (866) 317-6586 for more information.

**TIAA CREF Participants**
Contact TIAA CREF at (800) 842-2776 for more information.

Transfers from Inherited IRAs, Roth IRAs and Inherited Roth IRAs are not permitted.

If a member receives their cost letter and fails to send payment by the date referenced in the letter, NYCERS will automatically begin payroll deductions. If a member wishes to cancel their application, they must file Request to Cancel Application for the Purchase of Pre-Member or Military Service Form #238 prior to the date payroll deductions are scheduled to begin.

If payroll deductions have begun, the member may cancel such deductions by filing Request to Cancel Current Pre-Member or Military Service Payroll Deductions Form #239. The member will receive credit for service they purchased up to the effective cancellation date - no refunds can be made for portions already purchased.

If payroll deductions have begun and a member wishes to pay off the entire outstanding balance in a lump sum, they may file Request for a Lump-Sum Payoff Balance for the Purchase of Pre-Member or Military Service Form #240 and a payoff amount will be calculated and sent to the member. If the member is nearing retirement, they should notify NYCERS of their intent to retire prior to their effective *Retirement Date*.

## Time Spent Off Payroll
Generally, members are not permitted to purchase service for time spent off payroll. There are exceptions to this general rule which have been enacted by law. These include:

1. NYC Carpenters and Supervisory Carpenters who were laid off because of economy measures on or after June 1, 1991 and who returned to service prior to July 1, 1993 can purchase the period of time during which they were laid off by filing Application to Purchase Service Credit for Layoff Time - Carpenters and Supervisory Carpenters Form #249.

2. NYC Parks Department employees in the title of Climber and Pruner who were laid off because of economy measures on or after July 1, 1991 and who returned to service prior to July 1, 1995 can purchase the period of time during which they were laid off by filing Application to Purchase Service Credit for Layoff Time - NYC Parks Department Climbers and Pruners Form #250.

   The length of layoff service Carpenters and Climbers and Pruners may purchase cannot exceed 25 months.

3. Members employed with the School Construction Authority who were laid off due to economic measures on or after December 1, 2002 and who returned to service prior to January 8, 2008 can purchase the period of time during which they were laid off by filing Application to Purchase Service Credit for Layoff Time - School Construction Authority Form #252.

**Carpenters and Supervisory Carpenters**
**LR:** Chapter 697 of the Laws of 2006
**SR:** Civil Service Law §80 subdivision 7-c

**Climber & Pruner**
**LR:** Chapter 182 of the Laws of 2007
**SR:** Civil Service Law §80 subdivision 7-d

**School Construction Authority**
**LR:** Chapter 157 of the Laws of 2010
**SR:** Public Authorities Law §1738 subdivision 2

For other exceptions, members should refer to Buy-Back Brochure #901 for more information.

## MEMBERSHIP REINSTATEMENT

Current members who were previous members of a public employee retirement system in New York City or New York State may apply to restore their original *Membership Date*. In order to be eligible, the first membership **must** have been terminated. Unlike purchasing *Previous Service*, *Membership Reinstatement* requires that the member was previously a member of a public employee retirement system, not merely employed by a public entity that would have allowed the member to join a retirement system.

### Application Process and Cost

Members must file Membership/Tier Reinstatement Form #181 in order to obtain a statement of any costs associated with reinstatement. Once the form is received, NYCERS will verify their former *Membership Date* and former membership refund status, calculate their cost(s) and send them a cost letter. Plan documents will be enclosed with the cost letter to help them make an informed decision. They will have 30 days from the date on the cost letter to send NYCERS their full payment for reinstatement. If they

New York City Employees' Retirement System                        www.nycers.org

do not send their payment to NYCERS within the 30-day time period, their reinstatement option expires and they must file a new Form #181 if they decide to reapply for reinstatement.

Generally, if the member received a refund from their former NYCERS or other retirement system membership, the cost they will be required to pay to NYCERS will be the full refund amount in a lump-sum payment or direct *Rollover* from their Deferred Compensation Plan (DCP) or Individual Retirement Account (IRA), together with 5% interest compounded annually from the date of the refund to the date of repayment.

If the member's refund from their former membership was reduced by an outstanding loan at the time of withdrawal, the member must also pay the cost of the outstanding loan as of their last payment, plus 5% interest compounded annually from the date of the refund to the date of the reinstatement.

The member's former *Membership Date* and, if applicable, tier status (see the **Tier Reinstatement** section below) will be reinstated only when NYCERS receives their lump-sum payment. NYCERS will then certify their reinstatement and send them confirmation of their reinstated *Membership Date*, tier, plan, and deductions. The member's *Membership Reinstatement* will trigger a review of their account to determine whether all required contributions have been made, and if a *Deficit* or an overage exists. If a *Deficit* exists, a separate letter will be sent explaining the cause of the *Deficit* and the steps to resolve it.

### Cessation of Basic Member Contributions

As stated in the **Contributions** section on page 13, a member's *Basic Member Contributions (BMCs)* cease upon 10 years of *Credited Service* or upon their tenth anniversary of membership in NYCERS or another public employee retirement system if membership in such system is transferred to NYCERS. By reinstating a former membership which had been terminated, a member may be able to stop their *BMCs* sooner, as their tenth anniversary of membership would be an earlier date.

### Tier Reinstatement

Another key benefit to *Membership Reinstatement* is reinstating to an earlier tier. If the member's first *Membership Date* was prior to July 1, 1973, the member could reinstate to Tier 1. If the member's first *Membership Date* was on or after July 1, 1973 and prior to July 27, 1976, the member could reinstate to Tier 2. The benefits in Tiers 1 and 2 are generally better than those in Tier 4, so members who think they might be eligible should consider applying. In most cases, the benefits will outweigh any cost, but individual cases differ. Some situations will be beneficial and some not. If the member is reinstating to Tier 1 or Tier 2, they will need to submit Application for Membership for Tier 1 and Tier 2 Members Form #101 which will be enclosed with their cost letter. No new membership application is required for reinstating to any other tier.

To make an informed decision about their situation, members can contact NYCERS' Call Center at (347) 643-3000 and speak to a retirement counselor. For more information, please refer to Membership Reinstatement Brochure #905.

**LR:** Chapter 646 of the Laws of 1999
**SR:** RSSL §645

## MILITARY SERVICE

Federal and state laws allow members to purchase service credit for time spent on duty in one of the military branches of the Armed Forces of the U.S.A. Each law has different provisions granting service,

and members are entitled to receive credit for *Military Service* under whichever law provides them with the greatest benefit.

In all cases, *Military Service* must have been satisfactorily completed and a discharge under honorable circumstances must have been granted. If a member is eligible and wishes to purchase credit for their *Military Service*, they must complete and return Application to Purchase Credit for Military Service Form #244 with proof of satisfactory *Military Service* (see the **Required Documentation** section on page 24 for examples of required documentation).

NOTE: Chapter 427 of the Laws of 2014 provides that members who performed active military duty on or after September 11, 2001 and prior to January 1, 2006 are not required to make member contributions in order to be credited with the military time. This applies only to *Military Service* that was rendered during membership in a New York State or New York City public retirement system, and does not apply to pre-membership *Military Service*.

Chapter 41 of the Laws of 2016, effective May 31, 2016, removes the location requirement for applying to purchase *Military Service* credit. If members previously applied and were denied based on the location of their *Military Service*, they must reapply.

Upon receipt of the member's application and related materials, NYCERS will determine eligibility, calculate the cost for the *Military Service*, and send the member a cost letter advising the amount due to purchase the service claimed, if any. Payment can be made in a lump sum by the date indicated in the cost letter, or through deductions from the member's paychecks. Members may also roll over funds from a Deferred Compensation Plan or Individual Retirement Account to pay for their purchased *Military Service*. Complete instructions for rolling over these monies will be included in the cost letter.

If a member retires before completion of the required payments to secure credit for their *Military Service*, the balance must be paid in a lump sum before retirement or the member will only receive service credit for the amount already paid.

Some of the program specifics are outlined in this section. For complete details, please read Military Buy-Back Brochure #902.

### Federal Law (USERRA)
Under the Uniformed Services Employment and Reemployment Rights Act (USERRA), *Military Service* is defined as the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to any such duty, and a period for which a person is absent from employment for the purpose of performing funeral honors duty as authorized by section 12503 of title 10 or section 115 of title 32.

Members employed by the City of New York who are activated to *Military Service* may apply to receive service credit for the period of time spent on military duty, not to exceed five years for voluntary active duty (not including any time purchased under Article 20 of the RSSL, explained further in the **Article 20 of the New York State Retirement and Social Security Law (RSSL)** section on page 23). No cap on service is applied if the *Military Service* is mandatory, e.g. draft, redeployment.

Members/employees are required to apply to return to a City position within 14 days after termination of military duty if their *Military Service* lasted between 31 and 180 days. If their *Military Service* lasted

more than 180 days, such members are required to apply to return to a City position within 90 days after termination of military duty.

There is no time limit for purchasing *Military Service* under USERRA. The service may be purchased during any membership, and the right to obtain the service credit does not terminate when membership in the retirement system terminates. However, membership in NYCERS is required at the time the member applies for *Military Service* credit.

### Cost under Federal Law
In general, members purchasing *Military Service* under USERRA are entitled to the rights, benefits and privileges they would have been entitled to had they never left their City position for *Military Service*. Therefore, the cost to purchase *Military Service* under USERRA is the equivalent of the contributions required of the member had they never left for *Military Service*, based on their tier and retirement plan.

NYCERS computes the cost as the member's full contribution rate times the *Wages* they would have earned during the period of their *Military Service*.

Under the provisions of USERRA, a member did not need to be a member of the retirement system at the time they entered *Military Service*. However, they must have:

1. Been employed by a municipal employer within New York State immediately before entering *Military Service*; AND

2. Left such employment with the intention of entering *Military Service*; AND

3. Served in one of the military branches of the U.S. Armed Forces; AND

4. Applied to return to their City position within 14 or 90 days (depending on the length of their *Military Service*) after termination of military duty (or release from hospitalization continuing after discharge for a period of not more than one year).

**LR:** Chapter 161 of the Laws of 1984;
      Chapter 238 of the Laws of 2008
**SR:** New York State Military Law, §242 subdivision 5-a;
      New York State Military Law, §244;
      U.S. Code, Title 38 Veteran's Benefits, §4318;
      Code of Federal Regulations, Title 20 Employees' Benefits, §1002.191

## Article 20 of the New York State Retirement and Social Security Law (RSSL)
Under Article 20 of the Retirement and Social Security Law (RSSL), members (not retirees or vested members who are separated from *City Service*) are eligible to purchase active duty (not Reserves) *Military Service*, not to exceed three years of such service, if the member was honorably discharged from the military.

No military time will be purchasable unless the member has at least five years of *Credited Service* in NYCERS (not including any prior *Military Service*) at the time of applying for the purchase.

The maximum service credit allowed under this law is three years (including *Military Service* purchased while a member of another public retirement system in New York City or State, but not including any *Military Service* purchased under USERRA).

## Cost under Article 20

NYCERS computes the cost to purchase *Military Service* under Article 20 as the number of years of *Military Service* being purchased (up to a maximum of three years), times 3%, times the member's *Wages* earned during the 12-month period prior to the date of application for purchase of *Military Service*.

**LR:** Chapter 548 of the Laws of 2000
**SR:** RSSL §1000

## Operation Desert Storm

There is an additional benefit for those who served in Operation Desert Storm. Pursuant to Chapter 469 of the Laws of 1991, the cost for active duty *Military Service* rendered in Operation Desert Storm is paid for by the City of New York. The service must have been rendered on or after August 1, 1990 and prior to January 1, 1993. To be eligible, a member must have been a member of a New York City retirement system at the time of activation. If a member is eligible for this special provision, NYCERS will automatically process their Application to Purchase Credit for Military Service Form #244 for payment by the City of New York.

**LR:** Chapter 469 of the Laws of 1991
**SR:** NYS Military Law §243-b

## Required Documentation

A Certificate of Release or Discharge from Active Duty (Form DD214; see the following **DD214** section) is the most common proof of satisfactory service. Other acceptable documents of *Military Service* include a Public Health Service Certificate (PHS2893 or PH1867) or a military certificate issued pursuant to Presidential Executive Order 11519 during the United States Post Office work stoppage.

### DD214

If a member does not have their DD214, they can request a copy from the National Personnel Records Center, Military Personnel Records, 1 Archives Drive, St. Louis, MO 63138-1002, or online at archives.gov/veterans. The DD214 must have the official signature of the Commanding Officer. The date of induction and date of release must match the net active *Military Service*. The name, date of birth, and Social Security Number must match NYCERS' records.

## Refunds

In the event *Military Service* purchased does not increase a member's retirement allowance or *Death Benefit*, any payments made toward such purchase shall be refunded by NYCERS, with interest.

**LR:** Chapter 547 of the Laws of 2002
**SR:** RSSL §1000 subdivision 9

## Extended Military Benefits Program

The Extended Military Benefits Program (EMBP) is a voluntary program in which City employees can choose to continue all payroll deductions, benefits, etc., as if they had never entered into *Military Service*. Employees who elect this program receive *Wages* from the City equal to the difference between their City salary and their military pay while they are in *Military Service*. Members may initially receive a partial year of credit for these partial *Wages*. To receive full credit, such members must file Application to Purchase Credit for Military Service Form #244 when they return to *City Service* and pay the appropriate contributions required.

New York City Employees' Retirement System                                              www.nycers.org

## UNION LEAVE SERVICE

A member may be granted *Credited Service* for an authorized leave of absence without pay to conduct labor relations activity on behalf of a public employee union. The employer must adopt a resolution and file an election with NYCERS to offer this credit, and NYCERS must receive an annual certification that the member is indeed performing union leave activities. This service may be on either a part-time or full-time basis.

A member must pay their *Basic Member* Contributions *(BMCs)* for time spent on union leave. After NYCERS is notified of a member's union leave and completes a review of their accounts, a letter is sent to each member on union leave detailing the contributions required.

## DUAL EMPLOYMENT

*Dual Employment* refers to concurrent employment in two or more NYCERS-eligible positions in *City Service.* Such positions may be either full-time or part-time.

Members who concurrently hold two or more NYCERS-eligible positions are required to make member contributions based on *Wages* earned from such positions. In return, members who meet certain eligibility requirements may receive retirement benefits based on such *Dual Employment.*

A member may aggregate service credit from more than one position at a time, as long as all required contributions are made. However, a member may not earn a greater amount of service credit in any period of time than they could have earned during that same period from one full-time position (e.g., one year of service).

The earnings from two or more concurrently held positions may be combined for the purpose of calculating the compensation base to be used in computing benefits. Combining earnings is only possible where a member has held two or more positions concurrently for a total of at least nine months in each of 10 consecutive years and paid all required member contributions.

Under certain circumstances, a retiree may receive a post-retirement refund of member contributions attributable to a *Dual Employment* position. This occurs where the retiree did not receive service credit for that position, and the earnings from that position did not figure into the computation of their retirement benefit.

**LR:** Chapter 749 of the Laws of 1992
**SR:** NYC Administrative Code §13-638.4 subdivision f

# LOANS



New York City Employees' Retirement System                          www.nycers.org

# LOANS

The easiest way to access personalized information about a loan is to create a MyNYCERS account at nycers.org. With a registered MyNYCERS account, members can access their personal account information in a safe and secure manner, file forms online, and more. The Loan Information page in MyNYCERS will display any outstanding loan balance, indicate a member's eligibility to take a loan, and indicate how much the member may borrow. In addition, members can pay off an outstanding loan balance electronically with a credit/debit card or E-check. Simply click "Make a Payment" in the menu and follow the steps to process an electronic payment.

## ELIGIBILITY

Tier 4 62/5 members are qualified to take a loan if they:

1. Have completed one year of NYCERS membership; AND

2. Have a minimum of $1,334 in their *Member Contribution Accumulation Fund (MCAF)*; AND

3. Are in active payroll status; AND

4. Are not in default on a current loan from NYCERS; AND

5. Are not retired.

NYCERS must have a member's birth date on file before processing a loan.

## BORROWING

The amount a member can borrow is based on contributions in the member's account, including interest earned, minus any outstanding loan(s). Tier 4 62/5 members are required to contribute 3% of total *Wages*, including overtime, into their *Member Contribution Accumulation Fund (MCAF)* until the anniversary date of their tenth year of membership or the date they attain 10 years of *Credited Service* (whichever is earlier).

A loan cannot exceed 75% of the contributions, with interest, last posted to the member's *MCAF*. Members may not borrow less than $1,000, and can obtain only one loan in any 12-month period. The restriction to one loan in any 12-month period is by law and NYCERS is not permitted to make exceptions, even in the event of an emergency.

Once a loan has been properly issued by NYCERS, it may not be cancelled. The member's *MCAF* remains intact and continues to accrue interest on the full balance. The amount borrowed is from retirement system funds, not the member's *MCAF*.

**LR:** Chapter 920 of the Laws of 1990
**SR:** RSSL §613-b subdivision b

## APPLYING AND GETTING THE MONEY

There are three ways to apply for a loan: online, by mail, or in person.

### Online

Registered MyNYCERS accountholders can apply for a loan online at nycers.org. Members can explore different loan options before settling on a loan amount and choosing which repayment option best fits their needs. Members must sign a tax authorization letter before a taxable loan can be processed, which can be completed using an electronic signature at the end of the online application.

If a member applies online, they may elect to receive the funds by check (usually within 10 business days) or by Direct Deposit (also called *Electronic Funds Transfer or EFT*) to either a checking or savings account within 3 business days if an *EFT* is already on file. NYCERS strongly recommends *EFT* because:

- ▶ It is SAFE - eliminates the risk of the loan check being lost or stolen

- ▶ It is FAST - no waiting for the check to clear the bank – the funds are immediately available

- ▶ It is EASY - no more trips to the bank – no more waiting in line to deposit the check

If a member currently uses Direct Deposit with their employer and/or NYCERS, that banking information will be displayed as an option for depositing the loan funds. Members can also have their loan deposited into a new bank account. The new bank information will be verified by NYCERS' third-party verification service. *EFT* verification for new accounts can take up to 15 days.

NYCERS' third-party verification service cannot verify certain accounts, such as credit union accounts. If a member would like to have their check deposited into a credit union account, they must select "Mail" and then submit the paper form Request for Change to Recent Loan Application Form #310 with their direct deposit information. Members can upload this form and supporting documents online in their secure MyNYCERS account.

### By Mail

An original (i.e., not a copy or a fax) Loan Application Form #302 can be mailed to NYCERS at 30-30 47th Avenue, 10th Floor, Long Island City, NY 11101.

If a member applies by mail and the loan is taxable, a tax authorization letter will be mailed to the member. Members must sign and return the tax authorization letter in order to receive the funds. If the tax authorization letter is not signed and returned within 30 days from the date on the letter, the loan application will be canceled. If the loan application is canceled and the member is out of *City Service*, the member will not be eligible to apply for a new loan.

### In Person

Members may drop off their notarized Loan Application Form #302 in person at the drop box located outside of NYCERS' Offices at 340 Jay Street, Brooklyn, NY 11201.

## REPAYMENT

The current interest rate on a Tier 4 loan is 6.2% – 6% basic interest rate plus 0.2% mandatory loan insurance premium. All loans except *Non-Performing Loans* are fully insured 30 days after being issued. This means that if a member dies in *Active Service* 30 days after the issuance of a new loan, the beneficiary would receive the full amount of any benefit payable, not reduced by any outstanding balance of the loan unless the loan is in default.

**LR:** Chapter 920 of the Laws of 1990

New York City Employees' Retirement System                                    www.nycers.org

**SR:** RSSL §613-b subdivision f

As long as the member is in active payroll status, all loans must be repaid through payroll deductions. The entire loan can also be paid off in one lump sum, either by check or electronic payment through the member's MyNYCERS account. Partial lump-sum payments are acceptable by check or online, but the repayment amount per paycheck doesn't change; the loan is just repaid sooner. Members must pay at least 2% of their gross *Wages* per pay period, and the payments must be sufficient to repay the amount borrowed, plus interest, within five years. See the **Leaving City Service** section on page 31 for information on how to repay a loan if the member leaves *City Service* or goes off payroll for any length of time.

**LR:** Chapter 920 of the Laws of 1990
**SR:** RSSL §613-b subdivisions d and f

If a member wants to pay more than the minimum amount, they may choose on the loan application to deduct a specific dollar amount per pay period or enter a definite number of pay periods in which to repay the loan. The following table shows examples of bi-weekly repayment schedules where the loan amount equals the newly requested loan combined with any outstanding loan balances.

| Loan Amount | Number of Bi-Weekly Payments | | | | |
|---|---|---|---|---|---|
| | 130<br>For 5 years | 104<br>For 4 years | 78<br>For 3 years | 52<br>For 2 years | 26<br>For 1 year |
| $40,000 | $358 | $435 | $563 | $819 | N/A* |
| 16,000 | 143 | 174 | 225 | 328 | 635 |
| 8,000 | 72 | 87 | 113 | 164 | 318 |
| 2,000 | 18 | 22 | 28 | 41 | 79 |

* Payment plans cannot exceed $999.99 per paycheck.

Deductions for repayment of the loan should begin in the first or second pay period after the loan application has been processed. If loan payments are not deducted from the member's paycheck following the second pay period after the loan has been processed, the member must notify NYCERS immediately. If the member does not notify NYCERS, interest will continue to accrue on the outstanding balance.

**LR:** Chapter 920 of the Laws of 1990
**SR:** RSSL §613-b subdivision c

Members who wish to change the amount of the repayment have two options:

1. **Change of Repayment**
   Members may change the amount of their repayment only once in any 12-month period for a one-time service fee of $40.00 (money order only). The fee increase is effective July 1, 2020. To change the loan repayment, members must submit Application for Change in Loan Repayment Schedule Form #309 available at nycers.org. Members can also request forms by calling NYCERS' Call Center at (347) 643-3000.

2. **Renegotiated Loan**
   When a member is eligible for another loan, they may change their loan repayment schedule if they borrow additional amounts and obtain a new consolidated loan If the

member renegotiates a loan to be repaid beyond its original five-year repayment schedule, there will be tax consequences. Please refer to the **Taxes for New and Consolidated Loans** section on page 31 for more information.

If a member is called to active military duty, the obligation to repay the loan will be suspended and extended for the same amount of time that the member is on Military Duty (for up to the original five-year limitation specified by IRS regulations). However, interest continues to accrue at 6% plus the 0.2% mandatory loan insurance premium.

**LR:** Patriot Plan: Chapter 106 of the Laws of 2003;
    Patriot Plan: Chapter 127 of the Laws of 2004 (one-year extension);
    Patriot Plan: Chapter 150 of the Laws of 2005 (one-year extension);
    Patriot Plan: Chapter 56 of the Laws of 2006 (two-year extension);
    Patriot Plan: Chapter 133 of the Laws of 2008 (two-year extension)
**SR:** Unconsolidated Law: Section 42 of Chapter 106 of the Laws of 2003

## FEES

▶ There is a $40.00 service fee for each loan, which is automatically deducted from the loan check.

▶ There is a $40.00 service fee when filing an Application for Change in Loan Repayment Schedule Form #309 on or after July 1, 2020; this fee must be paid by money order.

▶ Members who are no longer on payroll may switch to direct payment; there is a $5.00 per payment fee for each direct payment.

▶ There is a $20.00 service fee for personal checks that are returned uncollected.

**LR:** Chapter 920 of the Laws of 1990
**SR:** RSSL §613-b subdivision e

## CONSEQUENCES OF NON-PAYMENT

If a member fails to make a payment on an outstanding loan for more than 90 days for any reason, the loan is in default - it is a *Non-Performing Loan*.

Once a loan goes into default status, possible penalties include:

▶ The *Non-Performing Loan* becomes taxable. NYCERS will report the taxable portion of the loan in default for Federal income tax purposes as a taxable distribution. There is an additional 10% tax penalty if the member is under age 59½ and has a *Non-Performing Loan*.

▶ The member will be ineligible to take out another loan until they have paid the outstanding loan balance in full.

▶ The *Non-Performing Loan* will no longer be insured against the member's death, and if a beneficiary is due to receive a benefit, the amount of that benefit will be reduced by the amount of the outstanding loan.

If the member is on an approved leave of absence and the loan is in default, the member must submit a letter from their employer stating that they were on an "approved leave of absence." This letter will cover the loan only for one year, after which the member is responsible for making monthly payments until they return to payroll. The letter must include the exact start and end dates of the member's approved leave of absence.

## LEAVING CITY SERVICE
If the member has vested and left *City Service* but is not yet eligible to collect their retirement benefit, they must continue to make loan payments. If they do not, not only will their loan go into default, but interest will continue to accrue on the outstanding loan balance, which will reduce any future retirement benefit the member is entitled to.

To repay a loan after the member goes off payroll, they may elect to:

▶ Pay off their entire loan at any time.

  • If the member has not been "finalized" for retirement, partial or full lump-sum repayment can be made by bank check, money order, or electronically through MyNYCERS. Otherwise, at any time after finalization, retirees are permitted to repay, in full only, the total outstanding loan balance at retirement.

▶ Make direct monthly repayments.

  • If the member has not been "finalized" for retirement, they can make monthly payments. There is a $5 per-payment fee charged for each direct payment made.

Members on union leave must repay their loan by direct payment, but the $5 per-payment fee is waived. Partial repayment once a member is off payroll is recommended in the following circumstances:

▶ If the member has filed for retirement, but has not yet selected a retirement benefit option, contact NYCERS to find out how the outstanding loan will affect the member's retirement benefit and its tax consequences. The member can also refer to Loan Reduction Factors for Retirements Fact Sheet #714 to estimate the reduction in the benefit.

▶ If the member transferred between City agencies and there have been no deductions in their paycheck for loan repayments since the transfer, contact NYCERS to arrange to make direct partial payments; otherwise, compound interest will continue to accrue on the loan.

## TAXES FOR NEW AND CONSOLIDATED LOANS
If subject to tax, a loan is counted as ordinary income for Federal income tax purposes. In addition, if the member is under the age of 59½, they will incur a 10% early distribution penalty tax assessed by the Internal Revenue Service.

Tier 4 loans are subject to taxation if the total outstanding loan is both:

1. Greater than $10,000; AND

2. More than 50% of the member's non-forfeitable *Accrued Vested Benefit (AVB)*.

The member's *AVB* is the current value of the reserves needed today to fund their future retirement benefit. This amount is based on their retirement plan, age, years of *Credited Service* and earnings history. NYCERS automatically calculates a member's *AVB* whenever they apply for a loan that, when added to the outstanding balance of their existing loan, will total more than $10,000.

When borrowing results in a consolidated loan amount greater than $50,000, at least the amount greater than $50,000 is subject to Federal income tax (even if the amount is less than 50% of their *AVB*).

Under IRS regulations effective January 1, 2004, newly consolidated loans may be subject to taxation. As always, the balance of an existing loan can be consolidated with a new loan, creating a revised five-year repayment schedule. After January 1, 2004, however, consolidated loans with a repayment schedule beyond the original five-year repayment date will most likely create a significant tax consequence. Under IRS regulations, a loan from NYCERS or a loan from the member's 457 or 403(b) Deferred Compensation Plan (DCP) account are considered to be loans from the "same employer" and are subject to all IRS rules concerning loans.

If all or any part of the member's next pension loan is subject to Federal taxes, NYCERS will offer the member three loan processing methods to help the member make an informed decision about the tax consequences:

1. **Refinance**
   The member has an outstanding loan that has not yet been paid in full. If the new loan is approved, NYCERS will consolidate the existing balance with the new amount, and a new repayment schedule (not to exceed five years) will be implemented. This method may result in the highest tax consequence.

2. **Original Terms**
   The member has an existing loan that has not yet been paid in full. If the new loan is approved, the amount of the new loan will be added to the existing balance; however, the consolidated amount will be paid within the original repayment schedule (not to exceed five years) that was associated with the existing loan amount.

3. **New Loan**
   The member is applying for a loan for the first time, or has paid off a prior loan in full. If the member has a loan that has not yet been paid in full, the member must pay the balance before applying for a new loan. No loan repayment schedule can be greater than five years.

When members apply for a loan, they will be provided with a tax authorization letter that will outline the three methods. The member must select how they want the loan to be distributed and return the tax authorization letter to NYCERS before the loan application can be processed. If members apply online and select a taxable loan option, they can fulfill this requirement by electronic signature at the end of the online application.

If the member receives the tax authorization letter in the mail and does not complete and return it within 30 days from the date on the letter, the loan application will be canceled. If the loan application is canceled and the member is out of *City Service*, they will not be eligible to apply for a new loan.

Active employees are not eligible to roll over the taxable portion of the loan into an IRA or any other tax-deferred plan.

New York City Employees' Retirement System                                    www.nycers.org

# TAKING A LOAN AT RETIREMENT

Internal Revenue Service regulations require NYCERS to treat pension loans as a retirement distribution if they are taken at, or near, the time of retirement. However, members may roll over the taxable portion of their loan to an IRA or Employer Plan. If they choose not to roll over the taxable amount, NYCERS is required to withhold 20% Federal tax before issuing the check. If the member has not yet reached the age of 55 and they choose not to roll over the taxable distribution, they will also be subject to an additional IRS 10% early distribution penalty tax when they file their taxes for that calendar year.

If a member elects to roll over the eligible distribution, it is their responsibility to ensure that the institution they name will be able to receive this direct *Rollover* from NYCERS.

The taxable portion of any prior loan balance is also available for *Rollover* at retirement. However, the member must accomplish this *Rollover* on their own because the distribution was previously given to them. The member will receive a post-retirement *Rollover* letter approximately 30 days after they have retired, explaining the exact amount that is eligible for *Rollover*. They will have until the due date of their tax return for the year in which they received the *Rollover* letter to roll over the taxable portion of the outstanding loan balance to an eligible retirement plan. If they do not roll over the taxable portion by the due date of their tax return for the year in which they received the letter, the taxable portion must be reported to the IRS as income.

Before members file for retirement, they should contact NYCERS to learn about the tax and retirement benefit consequences of an unpaid loan, and their repayment options.

# OUTSTANDING LOAN BALANCE AT RETIREMENT

Once a member files for retirement, their loan deductions will end after their last paycheck. However, they may repay all or part of their loan balance up until they file their final option election and their full benefit is finalized. After their benefit is finalized, retirees are permitted to repay at any time, in full only, the total amount of the outstanding loan.

Any payments made will decrease the member's loan balance at retirement. The outstanding loan balance at retirement will permanently reduce the member's retirement benefit only if they never pay back the loan (this permanent reduction is known as the *Actuarial Reduction*). The *Actuarial Reduction* is not a loan payment; therefore, the member's outstanding loan balance at retirement will not decrease. The *Actuarial Reduction* to the benefit is for the lifetime of the benefit unless the loan balance is paid off in full.

Under Chapter 511, retirees are permitted to repay the total amount of the outstanding loan at any time after retirement. By doing so, the member will increase future monthly pension checks as of the date NYCERS receives payment in full for the amount of the loan balance at retirement. Thus, a member's retirement benefit will revert to what it would have been had it never been reduced by the *Actuarial Reduction*. However, monthly pension benefits paid prior to the repayment of the loan will not be adjusted.

The amount of the reduction depends on the member's age at retirement and the size of the loan. For a table illustrating the benefit reduction, in dollars, for every $1,000 of an outstanding loan, please refer to Loan Reduction Factors for Retirements Fact Sheet #714.

**LR:** Chapter 511 of the Laws of 2005
**SR:** RSSL §613-b subdivision i

# LEAVING CITY SERVICE



New York City Employees' Retirement System                    www.nycers.org

# LEAVING CITY SERVICE

## REFUNDS

Tier 4 members in the 62/5 Plan who resign or separate from *City Service* with less than 10 years of *Credited Service* can voluntarily apply for a refund of the *Basic Member Contributions* held in their *Member Contribution Accumulation Fund (MCAF),* inclusive of interest accrued, by submitting Application for Refund of Member's Accumulated Salary Deductions Form #331. However, if a member has at least five, but less than 10, years of *Credited Service*, they must submit Waiver of Right to a Vested Retirement Benefit All Tiers Form #341 before a refund can be processed. This is necessary because any Tier 4 member who leaves *City Service* with at least five years of *Credited Service* has the right to a Vested Retirement Benefit. These forms can be completed online in a member's secure MyNYCERS account at nycers.org. Members must be off payroll for 30 days or more to qualify for a refund. Tier 4 members with 10 or more years of *Credited Service* are not eligible for a refund of their *Basic Member Contributions* and interest in the *MCAF*.

**LR:** Chapter 389 of the Laws of 1998
**SR:** RSSL §613 subdivision c

Tier 4 members in the 62/5 Plan who resign or separate from *City Service* with less than five years of *Credited Service* and do not return to *City Service* within a five-year period will have their membership terminated by operation of law. A membership terminated in such fashion is commonly referred to as a "five-year out." A five-year out can also occur if the time out of *City Service* aggregates more than five years in any 10 consecutive year period. Such members may apply to receive a refund of the *Basic Member Contributions* held in their *MCAF*, inclusive of interest earned up to the five years after resignation or termination of covered employment. Members who last joined NYCERS prior to July 1, 1990 may leave their *Basic Member Contributions* in the *MCAF* where such contributions will continue to accrue interest until their 62nd birthday. However, if such members apply for a refund before age 62, interest will accrue only until five years from separation if earlier than the date of the refund.

**Termination of Membership**
**LR:** Chapter 929 of the Laws of 1937;
     Chapter 550 of the Laws of 1938
**SR:** NYC Administrative Code §13-146

**Refund**
**LR:** Chapter 470 of the Laws of 1989
**SR:** RSSL §613 subdivision c

## VESTING

*Vesting* refers to a member's right to receive retirement benefits, even if the member terminates employment before they are eligible for payment of a Service Retirement Benefit. Members can think of it as freezing their retirement benefit and thawing it out when they reach age 62.

### Eligibility and Payability Date

Members can vest in the 62/5 Plan if they have at least five years of *Credited Service* before they have separated from *City Service*. Upon reaching age 62, members are able to collect a Vested Retirement Benefit. The date on which a member in the 62/5 Plan reaches age 62 is commonly referred to as their *Payability Date*.

**Five-Year Vesting**
**LR:** Chapter 389 of the Laws of 1998
**SR:** RSSL §612 subdivision a

Tier 4 members with Tier 3 rights (those who joined NYCERS after July 26, 1976 and prior to September 1, 1983) can collect a Vested Retirement Benefit before their *Payability Date*, but the benefit is subject to a reduction and is offset by 50% of the *Primary Social Security Benefit* at age 62. See the **Tier 4 Members with Tier 3 Rights** section on page 83 for additional details.

**LR:** Chapter 890 of the Laws of 1976, as amended by Chapter 389 of the Laws of 1998
**SR:** RSSL §516 subdivision b

## Filing Requirements
If a member in the 62/5 Plan has at least five years of *Credited Service*, their pension vests automatically and filing paperwork with NYCERS at the time of separation from *City Service* is not required. However, NYCERS encourages members who separate from *City Service* to file Notice of Intention to File for a Tier 3, Tier 4, Tier 6 or 22-Year Plan Vested Retirement Benefit Form #254 when they terminate employment.

NYCERS will send the vested members a notice of the approaching payability of their Vested Retirement Benefit and Application for Payment – Tier 3, Tier 4, Tier 6 or 22-Year Plan Vested Retirement Benefit Form #266 approximately 90 days before their *Payability Date*. A member must file an application before they will begin receiving payment of their Vested Retirement Benefit. A member may file the application any time within 90 days before their *Payability Date*.

## Purchasing Service Credit
Active members (on active payroll) are eligible to purchase service credit for previous public service rendered in New York City or New York State. Once a member separates from *City Service*, they may not initiate a new claim or submit an application to purchase *Previous Service* credit unless they have at least two years of *Membership Service* and they are purchasing only enough service credit to reach their minimum *Vesting* requirement or to obtain 10 years to apply for Ordinary Disability Retirement.

However, if the purchase of *Previous Service* was not completed at the time a member separated from *City Service*, they may pay off the balance in a lump sum and receive credit for the service as long as the member completes the purchase prior to making a final option election at retirement (which occurs after their *Payability Date* has passed).

If the member decides to wait until they are closer to their *Payability Date* to complete the purchase, the member should know that the payoff amount continues to grow as interest continues to accrue on the unpaid balance. Therefore, the longer a member waits, the higher the payoff amount. If a member chooses not to pay off the balance, the member will only receive credit for the time they purchased.

## Death Benefits for Vested Members
If a member dies after leaving *City Service* and prior to their *Payability Date*, and at a time and in a manner which did not result in payment of an *Ordinary Death Benefit* to the member's beneficiary/beneficiaries, a lump-sum *Death Benefit* will be paid to the beneficiary/beneficiaries the member last designated if the member has 10 or more years of *Credited Service*.

The *Death Benefit* amount is based on 50% of the *Death Benefit* that would have been payable if the member had died on their last day in *Active Service*, plus the return of the contributions in the member's *MCAF* plus interest.

If the member did not render 10 or more years of *Credited Service*, only the return of the contributions in the member's *MCAF* plus interest will be payable to the member's Estate.

**LR:** Chapter 388 of the Laws of 1998
**SR:** RSSL §606-a

If members wish to change their last *Designated Beneficiary/Beneficiaries* on file, they may do so at any time prior to making a final option election at retirement (which occurs after their *Payability Date* has passed) by filing a properly executed Designation of Beneficiary Form.

## Medical Benefits for Vested Members

NYCERS does not administer health benefits for employees of NYC mayoral agencies or for employees of any other *Participating Employer* of NYCERS. It is strongly recommended that members visit their agency's personnel office to find out how they can continue health benefit coverage into retirement. City employees whose employment ends after qualifying for a Vested Retirement Benefit will not be covered by City-paid health insurance until they begin receiving retirement benefit checks.

## Benefit Calculation

The calculation for the Vested Retirement Benefit on the member's *Payability Date* is the same as the calculation for the Service Retirement Benefit:

| Members with less than 20 years of *Credited Service* | 1 ⅔% for each year |
|---|---|
| Members with 20-30 years of *Credited Service* | 2% for each year |
| Members more than 30 years of *Credited Service* | 2% for each year up to 30 years, PLUS 1.5% for each year in excess of 30 |

At retirement, the member's number of years of *Credited Service* will be confirmed and the *Maximum Retirement Allowance* payable to the member will be calculated by multiplying:

**Years of *Credited Service*      X      Applicable percentage      X      *Final Average Salary (FAS)***

For more details on the benefit calculation and *Final Average Salary (FAS)*, refer to the **Calculating the Retirement Benefit** section on page 47.

# TRANSFERS

## To Another NYC or NYS Retirement System

There are eight public employee retirement systems in New York State; NYCERS is one of the eight. If a member accepts another position with the City or State of New York (or any of its political subdivisions) that entitles them to membership in another City or State retirement system, they may be eligible to transfer their NYCERS membership to that system. If they wish to transfer, they must do so before they withdraw their *Basic Member Contributions*, or before their membership is terminated by operation of law as mentioned in the **Refunds** section on page 35.

In order to transfer to another system, a member must file Application for Transfer of Member's Accumulated Salary Deductions to Another Retirement System Within New York State Form #321 with NYCERS. Registered MyNYCERS accountholders can fill out the form online at nycers.org. If they have less than five years of *Credited Service* at the time of separation, they must file the transfer form within five years from the date they separate from *City Service*.

## From Another NYC or NYS Retirement System

If prior to becoming a member of NYCERS, a person was a member of any other retirement system in New York City or New York State, and that membership has not been terminated, they may be eligible to transfer that membership to NYCERS. They should discuss this matter with a NYCERS' Customer Service Representative and a representative from their prior retirement system to determine their eligibility. If they are eligible to transfer a prior membership to NYCERS, they will have to start the process with their prior retirement system.

**LR:** Chapter 687 of the Laws of 1955
**SR:** RSSL §43

## Transferred Contributors

If a member resigns from all positions that entitle them to membership in NYCERS, and they accept another position in *City Service* that entitles them to membership in the New York City Board of Education Retirement System (BERS) or the New York City Teachers' Retirement System (TRS), but not NYCERS, they may elect to remain a member of NYCERS as a Transferred Contributor in lieu of transferring their membership, provided they:

1. Accept the other position within 60 days of resigning from their current NYCERS-eligible position; AND

2. Do not withdraw their *Basic Member Contributions*; AND

3. Do not become a member of the other retirement system; AND

4. File an affidavit with NYCERS; AND

5. Inform the other retirement system of their decision.

NYCERS members who are eligible for membership in BERS and elect to remain a member of NYCERS as a Transferred Contributor should file Transferred Contributor Affidavit Form #231. For those who are eligible for membership in TRS instead and elect to remain a Transferred Contributor of NYCERS, they should file Transferred Contributor Affidavit Form #232.

A member's Transferred Contributor status becomes effective as soon as they submit the proper forms to NYCERS, including a completed, irrevocable Transferred Contributor Affidavit. As a Transferred Contributor, they continue to contribute a percentage of their pay (if applicable) and to accrue benefits with NYCERS.

**LR:** Chapter 685 of the Laws of 1964 subdivision a;
      Chapter 570 of the Laws of 2005 subdivision b
**SR:** NYC Administrative Code §13-188

Before making a decision, a member should discuss their situation with representatives of both retirement systems. This is important since a member's rights and benefits with the new system may not be the same as those with NYCERS.

## TERMINATING MEMBERSHIP

A NYCERS membership can be terminated in one of the following ways:

► Members with less than 10 years of *Credited Service* may request a refund of their *Basic Member Contributions* after separating from *City Service*.

► A membership is automatically terminated if a member has less than five years of *Credited Service* and five years have passed since their separation from *City Service* – with or without the member formally requesting a refund.

A membership is also automatically terminated if a member totals five years of separation from *City Service* within 10 consecutive years while having less than five years of *Credited Service*. For example, if a member with two years of *Credited Service* separates from *City Service* for two years, returns to the City for one year, then separates from *City Service* again, their membership will automatically be terminated if they do not return within the next three years. This is because they would have only earned three years of *Credited Service* while being separated from *City Service* for five years within the past 10 years.

► The member retires and is assigned a pension number.

► The member transfers their membership to another NYC or NYS public employee retirement system.

► The member dies.

**LR:** Chapter 929 of the Laws of 1937;
    Chapter 550 of the Laws of 1938
**SR:** NYC Administrative Code §13-146

## REQUIRED MINIMUM DISTRIBUTION (RMD)

The Internal Revenue Code (IRC) requires that certain NYCERS benefits begin by a specific date to avoid Internal Revenue Service (IRS) imposed tax penalties. This is known as a *Required Minimum Distribution (RMD)*. *RMDs* are generally applicable if a member has left *City Service* without collecting a benefit and *RMD* rules generally affect the following NYCERS individuals:

► A vested member that is no longer in *City Service* who will be eligible to retire in the future.

► A vested member that is no longer in *City Service* who is presently eligible to retire, but has not yet applied for retirement.

► A member that left *City Service* with less than five years of *Credited Service* whose NYCERS membership has not yet terminated and who has not applied for a refund of their contributions.

▶ A member that left *City Service* whose NYCERS membership has terminated from five years of continuous City separation, but has not yet applied for a refund of their contributions.

▶ A beneficiary that is entitled to a lump sum or continuing benefit.

It is the member's responsibility to initiate the distribution of their *RMD* by the required date. If they fail to take the minimum required, the IRS may impose a tax penalty equal to 50% of the amount they should have taken. See the **Required Minimum Distribution (RMD)** section on page 92 for more information about the required *RMD* date of payment.

**LR:** H.R. 2617, 117th Congress
**SR:** Internal Revenue Code §401(a)(9);
    Treas. Reg. §1.401(a)(9)-1 through §1.401(a)(9)-9

# SERVICE RETIREMENT



# SERVICE RETIREMENT

## THE SERVICE RETIREMENT PROCESS

Retiring is an important step and the beginning of an exciting time in a member's life. On a practical note, it's a process that will take at least a few months to complete and can go more smoothly if the member fully understands what to do and what to expect.

The six steps to retirement with NYCERS, in order, are:

1. Establishing an effective date of retirement
2. Creating a MyNYCERS account
3. Filing a retirement application
4. Confirming the *Retirement Date* and beginning advance payments
5. Selecting a Retirement Option
6. Finalizing the Retirement Option and beginning full monthly payments

### Establish an Effective Date of Retirement

Between 90-180 days before the member's *Retirement Date*, the member's Benefits Coordinator should work with the member's payroll department to determine the member's leave balances and last day on payroll. The day after their last day on payroll will be their *Retirement Date* – that is the date they should put on their Application for Service Retirement Form #521.

The usage of leave balances can also affect their *Retirement Date*. Most non-managerial employees remain on payroll until they have exhausted all unused leave time. Therefore, it is important for a member to contact their employer's Benefits Coordinator to determine their correct *Retirement Date*. Managerial employees may receive unused leave in a lump sum, and if so, they can stop working and retire the next day if they wish.

Many agencies will give the member a letter with this information, which they should then provide to NYCERS when they file for retirement.

### Create a MYNYCERS Account

At any point after establishing membership with NYCERS, the member should create a MyNYCERS account to safely file forms online and securely manage their NYCERS account. Read How to Register for MyNYCERS Brochure #967 for help creating a MyNYCERS account.

### File a Retirement Application

Certain retirement plans require that the member submits their application at least 30 days before their desired *Retirement Date*. Other plans allow later submissions, even as late as the day of their *Retirement Date*.

New York City Employees' Retirement System                                    www.nycers.org

After the member consults with their Benefits Coordinator and establishes a "last day paid," it is suggested that they submit their Service Retirement application through MyNYCERS 30-90 days before their last day on payroll. If they prefer to meet with a NYCERS Representative in person, they must call the Call Center at (347) 643-3000 to schedule an appointment. Phone and video consultations are also available.

When the member visits, they should bring:

1. Application for Service Retirement Form #521; AND

2. Birth documentation, such as a passport or birth certificate, for themselves (and their beneficiary, if they have one). See Birthdate Evidence Alternatives Fact Sheet #709 for a list of alternative documentation that NYCERS will accept as evidence of birthdate; AND

3. Photo identification, such as a work identification or driver's license.

They should also be prepared to provide the address, date of birth, and Social Security number of their beneficiary for their temporary option election.

**Sign-up for Direct Deposit**
Around three weeks after their *Retirement Date*, members may log in to MyNYCERS at nycers.org and click "Update Pension Payment Method" in the menu to request direct deposit for all subsequent pension payments. Alternatively, members can submit Authorization for Electronic Fund Transfer (EFT) of Monthly Retirement Allowance Form #380.

*EFT* ensures that a member's payment won't get lost or stolen, and that members won't have to make a special trip to the bank for deposits or wait for checks to clear. Funds are available in their bank account on the last day of each month. If the last day of the month is on a weekend or a holiday, the bank will normally credit their payment on the next business day.

**Apply for Medical Benefits**
NYCERS does not administer health insurance benefits. Members with questions in this regard should contact their agency's personnel office. For most City employees, the Office of Labor Relations (OLR) administers health insurance for retirees. OLR no longer requires a retirement receipt from NYCERS.

Members may contact the follow entities with any retiree medical benefits questions:

NYC Office of Labor Relations: (212) 513-0470

NYC Transit Authority and MTA Bridges & Tunnels: (646) 376-0123

## Confirm Retirement Date and Begin Advance Payments
If all records are in order and the member meets the criteria for retirement, NYCERS confirms the *Retirement Date* and begins issuing the member their advance payments. Advance payments are a temporary partial pension payment. Once the member selects a retirement option, NYCERS will calculate and pay the member's full pension payment.

The date of the member's retirement will determine when they receive their first payment. If the member retires on the 1st or 2nd day of the month, their first advance payment will be at the end of the month they retire. If they retire on the 3rd day or later, their first advance payment will be at the end of the following month. See Advance Payments Brochure #892 for more information.

## Select a Retirement Option

The member may review their option letter online in their MyNYCERS account once it is ready. A hard copy will also be mailed to their address on file. The timeframe for the issuance of the option letter varies on a case-by-case basis.

After reviewing their option letter, the member should log in to their MyNYCERS account and click "Option Election" in the menu to file their Final Option Election or return the completed forms. Their election must be made within 60 days of the date on their option letter. The sooner they file their election, the sooner their final allowance can be calculated.

A member may not change their option election once their first full payment has been sent to them.

## Finalize Retirement Option and Begin Finalized Payments

The member's finalized pension payment is determined based on their Final Option Election. It includes any retroactive monies that might be payable, because the final option they elected may pay them more than the advance payments they've been receiving since their *Retirement Date*. This is the final step in the retirement process.

## Withdrawing an Application for Service Retirement

A member may withdraw their application for Service Retirement with NYCERS up to the day before their effective date of retirement through MyNYCERS, if they filed for retirement online, or by filing Withdrawal of Service Retirement Application Form #542.

## Changing a Retirement Date

If a member has filed for retirement and wants to change their *Retirement Date*, they may extend their *Retirement Date* up to 90 days from the original filing date. Any extension longer than 90 days will require the member to withdraw their original application. The member must file before their current effective *Retirement Date*.

If the member wants to retire before the *Retirement Date* already on file with NYCERS, they must file before the new effective *Retirement Date*.

A member may change their *Retirement Date* through MyNYCERS, if they filed for retirement online, or they may file Request to Change or Correct Retirement Date Form #543.

## Other Important Information

- ▶ Taxes will automatically be withheld from all checks members receive from NYCERS based on the Federal tax table for a person who is married claiming three exemptions, unless a member elects to have taxes withheld on a different basis, or for no taxes to be withheld. The member's retirement application has a Federal tax withholding section and Federal Tax Withholding Change – W4P Form #349 is available to indicate their preference.

- ▶ Pension checks are dated the last day of each month and are sent two business days before that date. If the last day of the month falls on a weekend, the check is mailed on the Wednesday before the last day of the month. If a member does not receive their check by the tenth day of the month, they should notify NYCERS Affidavit Concerning Lost Check(s) Form #399 will be sent to them.

▶ NYCERS cannot take a report of non-receipt of a pension check until the tenth of the month. However, if a member receives their pension check and it is subsequently lost or stolen, they need to advise NYCERS immediately and NYCERS will have a stop payment placed on the check.

## RETIREMENT OPTIONS

When a member prepares for retirement, there are several questions they will want to answer:

▶ Do they want to provide continuing retirement income to their spouse, partner or survivor after their death?

▶ What is the cost of continuing their retirement income to a beneficiary and the impact on their retirement allowance?

▶ Can they choose more than one person to receive retirement income and can they change the person or persons they chose after they've been retired for some time?

Members can choose to provide for continuing retirement income to a beneficiary by electing a retirement option. Electing a retirement option means the member will receive a reduced retirement allowance for their lifetime in exchange for providing some type of continuing income to their beneficiary.

If a member does not elect a retirement option by way of filing an Option Election form with NYCERS in a timely manner, the member will be awarded the *Maximum Retirement Allowance* with all payments ceasing upon their death, unless they elected an *Interim Option* on their retirement application, in which case their *Interim Option* will take effect.

The following Retirement Options apply to all Tier 4 Service Retirements, Vested Retirements, and Disability Retirements. For more details on options, see Options for Tier 4 and Tier 6 Basic and Special Plan Members Brochure #926.

### Maximum Retirement Allowance (No Option)

If a retiree does not want to leave a continuing benefit to any person, or the retiree needs to maximize their retirement income, they may decide not to elect an option. The *Maximum Retirement Allowance* provides the highest benefit and is payable to the retiree for as long as they live. However, no further payments will be made after the retiree's death.

### Option 1 (100% Joint-and-Survivor)

Option 1 is intended for retirees who wish to ensure that a *Designated Beneficiary* will continue to receive a fixed annual lifetime benefit after their death. Option 1 is a reduced benefit that is payable to the retiree for their lifetime. The same reduced benefit will continue to the retiree's surviving *Designated Beneficiary* for life. Payments cease upon the death of both the retiree and their *Designated Beneficiary*.

Because Option 1 guarantees two specific people an income for life, the life expectancies of the retiree as well as the *Designated Beneficiary* are taken into consideration. Once the retiree designates a beneficiary and this option is in force, the retiree cannot change their beneficiary designation. If the retiree's *Designated Beneficiary* dies before the retiree, the retiree will continue to receive the reduced benefit for their lifetime with all payments ceasing upon their death.

## Option 2 (75% - 50% - 25% Joint-and-Survivor)

Option 2 is a reduced benefit that is payable to the retiree for their lifetime. It guarantees that a percentage of the retiree's retirement allowance will be payable to their *Designated Beneficiary* for the beneficiary's lifetime. The surviving *Designated Beneficiary* will receive 75% or less (in 25% increments) of the reduced benefit paid to the retiree. The Option 2 reduction is not as great as the Option 1 reduction because the surviving *Designated Beneficiary* receives a lesser percentage of the retiree's pension benefit. All payments cease after the death of both the retiree and their *Designated Beneficiary*.

Because Option 2 guarantees two specific people an income for life, the life expectancies of the retiree as well as the *Designated Beneficiary* are taken into consideration. Once the retiree designates a beneficiary and this option is in force, the retiree cannot change their beneficiary designation. If the retiree's *Designated Beneficiary* dies before the retiree, the retiree will continue to receive the reduced benefit for their lifetime with all payments ceasing upon their death.

## Option 3 (Five-Year Certain)

Option 3 provides the retiree with a reduced benefit for their lifetime. If the retiree dies within five years from the date of retirement, the reduced benefit will continue to be paid to the designated *Primary Beneficiary* for the unexpired balance of the five-year period. If the designated *Primary Beneficiary* predeceases the retiree, the payments due for the remainder of the five-year period are paid in a lump sum to the retiree's *Contingent Beneficiary* or, if none exists, to the estate of the retiree. Should the designated *Primary Beneficiary* die after having started to receive payments, the balance will be paid in a lump sum to the retiree's designated *Contingent Beneficiary*. If none exists, the lump-sum balance is paid to the estate of the *Primary Beneficiary*.

Unlike Options 1 and 2, the retiree may change their beneficiary with this option, but only within five years from the date of retirement.

## Option 4 (Ten-Year Certain)

Option 4 provides the retiree with a reduced benefit for their lifetime. If the retiree dies within 10 years from the date of retirement, the reduced benefit will continue to be paid to the designated *Primary Beneficiary* for the unexpired balance of the 10-year period. If the designated *Primary Beneficiary* predeceases the retiree, the payments due for the remainder of the 10-year period are paid in a lump sum to the retiree's *Contingent Beneficiary* or, if none exists, to the estate of the retiree. Should the designated *Primary Beneficiary* die after having started to receive payments, the balance will be paid in a lump sum to the retiree's designated *Contingent Beneficiary*. If none exists, the lump-sum balance is paid to the estate of the *Primary Beneficiary*.

Just like Option 3, the retiree may change their beneficiary with this option, but only within 10 years from the date of retirement.

**Options 1-4**
**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §610 subdivision a

## Option 5 (50% or 100% "Pop-Up")

Option 5 is known as the "pop-up" option. Under this option, the retiree and retiree's *Designated Beneficiary* will receive a benefit similar to the 50% or 100% Joint-and-Survivor option (see Option 1 or Option 2 [50% only]). However, the Option 5 reduction is greater than the Option 1 or Option 2 reduction

because should the *Designated Beneficiary* predecease the retiree, the retirement allowance will "pop up" to the *Maximum Retirement Allowance* for the remainder of the retiree's life. All payments cease upon the retiree's death if the retirement allowance "pops up" to the *Maximum Retirement Allowance*.

Because Option 5 guarantees two specific people an income for life, the life expectancies of the retiree as well as the *Designated Beneficiary* are taken into consideration. Once the retiree designates a beneficiary and this option is in force, the retiree cannot change their beneficiary designation.

**Option 5**
**LR:** Chapter 592 of the Laws of 1992
**SR:** RSSL §610 subdivision a

### Required Minimum Distribution (RMD)
The Internal Revenue Code (IRC) requires certain NYCERS benefits to be paid by a specific date to avoid Internal Revenue Service (IRS) imposed tax penalties. This is known as a *Required Minimum Distribution (RMD)*. If the retiree dies and a beneficiary is entitled to a lump sum or continuing benefit, the benefit may be subject to *RMD* laws. See the **Required Minimum Distribution (RMD)** section on page 92 for more information.

## CALCULATING THE RETIREMENT BENEFIT
Members in the 62/5 Plan must be at least age 62 and have five or more years of *Credited Service*, of which two years are *Membership Service*, to be eligible to receive an unreduced Service Retirement Benefit. Each year of service is calculated at a certain percentage contingent upon the years of *Credited Service* the member has accumulated. The calculation is as follows:

| | |
|---|---|
| Members with less than 20 years of *Credited Service* | 1 ⅔% x *Final Average Salary (FAS)* x Years of *Credited Service* |
| Members with 20-30 years of *Credited Service* | 2% x *FAS* x Years of *Credited Service* |
| Members more than 30 years of *Credited Service* | 2% x *FAS* x 30 Years of *Credited Service* PLUS 1.5% for each year in excess of 30 |

**LR:** Chapter 266 of the Laws of 1998
**SR:** RSSL §604 subdivisions a, b and c

### Tier Equity
Under a law commonly referred to as "*Tier Equity*," members in the 62/5 Retirement Plan may retire earlier than age 62, but no earlier than age 55. However, taking advantage of early retirement under *Tier Equity* carries a penalty – a permanent reduction in the member's retirement benefit. The reduction is based on the member's age when they collect their retirement benefit (see the table on the next page).

Members must be at least age 55 and file for retirement while they are still in active payroll status to take advantage of *Tier Equity* with immediate payability. Members cannot separate from *City Service* and collect an early Vested Retirement Benefit with the penalty; they must wait until age 62 to collect a Vested Retirement Benefit, unless they are a Tier 4 Member with Tier 3 Rights (see the **Tier 4 Members with Tier 3 Rights** section on page 83).

| AGE PAYMENT BEGINS | PERCENT OF BENEFIT REDUCTION |
|:---:|:---:|
| 61 | 6% |
| 60 | 12% |
| 59 | 15% |
| 58 | 18% |
| 57 | 21% |
| 56 | 24% |
| 55 | 27% |

The percentage reduction is actually calculated per month. The percentages shown in the table assume retirement at exact ages. Retirement between ages will be calculated on a prorated basis per month.

**LR:** Chapter 553 of the Laws of 2000
**SR:** RSSL §603 subdivision i (2)

## Maximum Retirement Allowance

At retirement, the member's number of years of *Credited Service* will be confirmed and the *Maximum Retirement Allowance* payable to the member will be calculated accordingly.

The following table illustrates hypothetical *Maximum Retirement Allowances* for members in the 62/5 Plan with 16-25 years of *Credited Service*. The table assumes a range of *Final Average Salaries* (calculating *Final Average Salary* is discussed in the following **Final Average Salary (FAS)** section). Meeting the 20-year threshold allows members to attain a higher benefit calculation, since reaching 20 years of *Credited Service* increases the calculation to 2% for each of the first 20 to 30 years. Pay particular attention to the difference between the *Maximum Retirement Allowance* of a member with 19 years of *Credited Service* and a member with 20 years of *Credited Service*.

| Examples of *Maximum Retirement Allowances*, if *Final Average Salary (FAS)* is Between $60,000 - $90,000 | | | | | | | |
|:---:|:---:|:---:|:---:|:---:|:---:|:---:|:---:|
| **Years** | **Final Average Salary (FAS)** | | | | | | |
| | $60,000.00 | $65,000.00 | $70,000.00 | $75,000.00 | $80,000.00 | $85,000.00 | $90,000.00 |
| 16 | $16,000.00 | $17,333.33 | $18,666.67 | $20,000.00 | $21,333.33 | $22,666.67 | $24,000.00 |
| 17 | $17,000.00 | $18,416.67 | $19,833.33 | $21,250.00 | $22,666.67 | $24,083.33 | $25,500.00 |
| 18 | $18,000.00 | $19,500.00 | $21,000.00 | $22,500.00 | $24,000.00 | $25,500.00 | $27,000.00 |
| 19 | $19,000.00 | $20,583.33 | $22,166.67 | $23,750.00 | $25,333.33 | $26,916.67 | $28,500.00 |
| 20 | $24,000.00 | $26,000.00 | $28,000.00 | $30,000.00 | $32,000.00 | $34,000.00 | $36,000.00 |
| 21 | $25,200.00 | $27,300.00 | $29,400.00 | $31,500.00 | $33,600.00 | $35,700.00 | $37,800.00 |
| 22 | $26,400.00 | $28,600.00 | $30,800.00 | $33,000.00 | $35,200.00 | $37,400.00 | $39,600.00 |
| 23 | $27,600.00 | $29,900.00 | $32,200.00 | $34,500.00 | $36,800.00 | $39,100.00 | $41,400.00 |
| 24 | $28,800.00 | $31,200.00 | $33,600.00 | $36,000.00 | $38,400.00 | $40,800.00 | $43,200.00 |
| 25 | $30,000.00 | $32,500.00 | $35,000.00 | $37,500.00 | $40,000.00 | $42,500.00 | $45,000.00 |

New York City Employees' Retirement System                                    www.nycers.org

Please note that the figures in the table represent *Maximum Retirement Allowances* before any option reduction. A *Deficit* in any of the member's contribution accounts, or an outstanding loan at retirement, may also result in a reduction in the retirement benefit.

## Final Average Salary (FAS)

The compensation base that is used to calculate a member's pension benefit is referred to as the *Final Average Salary (FAS)*. The *FAS* is defined in law as the greater of:

1. The average of *Wages* earned in any three consecutive calendar years; OR

2. The average of *Wages* earned in the 36 months immediately preceding the member's *Retirement Date*.

### Kingston Limitation

The *FAS* is not determined by a mere average of the *Wages* in either 1 or 2 above. Due to a provision in law referred to as the *Kingston Limitation*, *Wages* earned in any one year used in the *FAS* computation cannot exceed the average of the previous two years by more than 10%. If the *Wages* earned in one year of the *FAS* exceeds the average of the previous two years by more than 10%, the amount in excess of 10% is excluded from the *FAS* computation.

The following example illustrates the *Kingston Limitation* and *FAS* based on hypothetical *Wages*.



| 2024 | | 2023 | | 2022 | |
|------|------|------|------|------|------|
| $50,000 | | $45,000 | | $40,000 | |

| 2023 | 2022 | 2022 | 2021 | 2021 | 2020 |
|------|------|------|------|------|------|
| $45,000 | $40,000 | $40,000 | $35,000 | $35,000 | $30,000 |

| Average $42,500 | Average $37,500 | Average $32,500 |
|-----------------|-----------------|-----------------|

| Final Average Salary after Kingston Limitation is Applied | | |
|---|---|---|
| 2024 | 2023 | 2022 |
| $46,750 | $41,250 | $35,750 |
| ($42,500 + 10%) | ($37,500 + 10%) | ($32,500 + 10%) |

= $123,750 / 3 = **$41,250** *(FAS)*

In this example, each year exceeds the average of the previous two years by more than 10%. Therefore, instead of the *FAS* being an average of the *Wages* actually earned ($45,000), it is reduced to $41,250.

### Miscellaneous FAS Issues

▶ To determine the *FAS* for *Part-Time Service*, NYCERS computes hours worked per year of service credited at no more than 70 hours in a 2-week pay period, the sum of which equals 1,827 hours (a full year of service). In other words, NYCERS may be required to use more than one year of service in a part-time position to attain 1,827 hours for each year of the *FAS*. In an alternative computation, the *Wages* earned in each of the six years immediately preceding the member's *Retirement Date* are added together and the

sum is then divided by the member's years of *Credited Service*. Whichever computation provides the higher *FAS* is the one NYCERS will use for the benefit calculation.

▶ If the member receives a lump-sum paycheck in one of the years used in the *FAS* calculation for retroactive *Wage* increases pursuant to a collective bargaining agreement, the member will not be penalized by the *Kingston Limitation*. In other words, the *Wage* increases will be applied to the years in which the money was earned, not the year in which the lump-sum paycheck for the retroactive increases was paid. If the member has already retired, their pension will be revised to reflect the increases in *Wages*.

▶ Whether or not increases in compensation due to longevity pay or shift differentials can be included in a member's *FAS* is an issue governed by union contract. To find out if such additional compensation is pensionable, the member should consult with their public employee union.

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §608 subdivision a

## Maximum Compensation Limitations under IRC Section 401(A)(17)

Each year or 12-month period used in the calculation of the *Final Average Salary (FAS)* is subject to the Maximum Compensation Limitations under IRC 401(a)(17). The Maximum Compensation Limitations under IRC 401(a)(17) are also applied to any required member contributions during each applicable calendar year so that the member is not charged contributions for any earnings in excess of the respective calendar year's Maximum Compensation Limit.

For detailed information and a table of the yearly limitations, refer to the Maximum Compensation Limit under IRC 401(a)(17) Fact Sheet #727.

## Maximum Benefit Limitations under IRC Section 415

Internal Revenue Code (IRC) §415 requires that a qualified *Defined Benefit Retirement Plan* (such as NYCERS) apply limits on annual employer-provided benefits paid or accrued on account of post October 14, 1987 plan amendments. Benefits provided under Early Retirement Incentives and Pension Enhancements are subject to these limitations.

The employer-provided benefit for a Tier 4 member is defined as the retirement allowance less the amount that would be provided by the member's accumulated non-IRC §414h *Contributions*, if any.

The limit on the annual employer-provided retirement benefit is $280,000 (effective January 1, 2025) for benefits commencing on or after age 62 and is actuarially reduced for retirement benefits commencing prior to age 62 as shown in the table next page. The limitations are adjusted annually by the IRS for *Cost-of-Living Adjustment (COLA)* increases (see the following **Cost-of-Living Adjustment (COLA)** section on page 52).

A member's benefit computed without an incentive and without any benefit improvements effective after October 14, 1987 may be paid without applying any limitation imposed by §415.

Most members who retire under an incentive will not be adversely affected by §415 because the amount of their employer-provided benefits will not exceed the §415 limits.

A member's retirement allowance that is reduced because of the §415 limits may be increased when the §415 limits are adjusted upwards by the IRS due to *COLA*.

The §415 limits shown in the following table are based on a retirement allowance that is paid as a maximum (i.e., the retirement allowance without optional modification). The §415 limits are adjusted actuarially for retirement benefit options other than the maximum.

| AGE | MAXIMUM EMPLOYER PROVIDED BENEFIT |
|-----|-----------------------------------|
| 55 | $172,404 |
| 56 | $184,125 |
| 57 | $196,850 |
| 58 | $210,687 |
| 59 | $225,765 |
| 60 | $242,228 |
| 61 | $260,243 |
| 62 | $280,000 |

Chapter 623 of the Laws of 2004 established an excess benefit plan. The result of this legislation is that NYCERS Members are generally no longer affected by the IRS Section 415 Limits because the excess benefit plan replaces any amounts limited by IRS Section 415.

Chapter 623 of the Laws of 2004 also made provisions for excess benefits to be paid retroactively to all retirees who retired on or after July 1, 2000. Excess benefits are incorporated automatically into a retiree's normal payment amount.

## SPECIAL AGE REDUCTION PROVISIONS (TBTA ONLY)

Bridge and Tunnel Officers, Sergeants, Lieutenants, Maintainers (all levels), and Laborers are able to retire earlier than age 62 without a benefit reduction. The age at which such members may retire without a benefit reduction depends on the number of years of "covered employment," which is service rendered in one of the aforementioned titles. For each year of covered employment prior to January 1, 2009, a four-month age reduction will apply. For example, a member with 12 years of covered employment before January 1, 2009 will be eligible to retire at age 58 without a benefit reduction (48 months or 4 years earlier than age 62). The member does not need to retire directly from a title within the TBTA Plan in order to receive this benefit. Any covered employment on or after January 1, 2009 will not be used to reduce the age of retirement.

The age reduction provisions are only applicable to those who retire for service, not to vested members awaiting payability of a Vested Retirement Benefit. Such vested members can only collect a Vested Retirement Benefit at age 62 (assuming they cannot collect sooner under the TBTA-20 *Vesting* provisions).

**LR:** Chapter 511 of the Laws of 1988
**SR:** RSSL §651

# COST-OF-LIVING ADJUSTMENT (COLA)

The *Cost-of-Living Adjustment (COLA)* is an annual adjustment to a retiree's retirement allowance that is based on the *Consumer Price Index (CPI)*. Certain retirees are eligible to receive a *COLA*, which increases the retiree's retirement allowance every September.

The following persons are eligible to receive *COLA*:

- ▶ Disability retirees, regardless of age, who have been retired for at least five years

- ▶ Service retirees who are at least age 62 and have been retired for at least five years

- ▶ Service retirees who are at least age 55 and have been retired for at least 10 years

- ▶ Beneficiaries receiving an *Accidental Death Benefit*, regardless of age, who have been receiving that benefit for at least five years

- ▶ Spouses receiving a Joint-and-Survivor benefit are eligible to receive 50% of the monthly *COLA* for which the retiree would have been eligible.

The following persons are not eligible for *COLA*:

- ▶ A surviving spouse who is a Designated Annuitant of a retiree who died on or after January 1, 1980

- ▶ Non–spouse beneficiaries

- ▶ Beneficiaries of retirees who chose the 5- or 10-Year Certain Option

The *COLA* calculation is based on 50% of the *CPI*. This figure is then multiplied by either $18,000 or the retiree's *Maximum Retirement Allowance* (including any prior years' *COLA*), whichever is less. The result is then added to any previous permanent *COLA* amounts. The sum of these *COLA* figures equals the current year's *COLA* payment. The *COLA* amount may not be less than 1% or more than 3% in any year.

**LR:** Chapter 125 of the Laws of 2000
**SR:** NYC Administrative Code §13-696

# DOMESTIC RELATIONS ORDERS AND CHILD SUPPORT CLAIMS

Under the equitable distribution laws of the State of New York and other states, pension benefits are considered a marital asset. As a result, the Supreme Court of the State of New York may assign a portion of a member's current and/or future pension benefits to an ex-spouse under a *Domestic Relations Order (DRO)*. Beneficiary designations made in connection with joint-and-survivor retirement options, or designations that are required under a *Domestic Relations Order* on file with NYCERS, are irrevocable by law.

An ex-spouse cannot assign their portion of the member's pension during their lifetime to another person. In addition, an ex-spouse cannot designate a beneficiary for their portion of the member's pension to continue after the ex-spouse's death. Unless there is an option election naming the ex-spouse as a beneficiary, the ex-spouse's portion will cease upon the death of the retiree.

A portion of the member's current and/or future pension benefits may be assigned by Court Order to satisfy child support payments.

By law, NYCERS is bound to execute the order of the court.

# POST-RETIREMENT EARNINGS LIMITATIONS FOR SERVICE RETIREES

Service retirees who are returning to public service within New York City or New York State may be subject to earnings limitations. In general, Sections 211 and 212 of the New York State Retirement and Social Security Law (RSSL) govern re-employment by service retirees and earnings limitations based on various factors such as the source of income (public, private, or public benefit corporation), a retiree's age, and the issuance of a waiver (RSSL §211 only).

## New York State Retirement and Social Security Law (RSSL) §211

This section covers service retirees hired for "hard-to-fill" positions. To be covered under RSSL §211, the retiree's prospective employer must obtain a waiver known as a 211 Waiver from an authorized agency. The Department of Citywide Administrative Services issues 211 Waivers for most City agencies. Service retirees must submit a copy of the 211 Waiver to NYCERS. The amount the retiree may earn while employed by their former employer without loss, suspension or reduction of their retirement allowance is the difference between:

1. The maximum pension portion of their retirement allowance (plus *Cost-of-Living Adjustments*); AND

2. The salary on which their retirement allowance was based or the maximum salary they currently would be receiving in the position from which they last retired if they had not retired, whichever is greater.

Under Section 211, there are no earnings limitations for retirees who are hired by a different employer. The City of New York is considered a single employer. Therefore, if a member retired from one City agency and is considering working for a different City agency, it is generally considered the same employer under RSSL Section 211.

If members have questions about whether their new employer is a public employer, they can contact NYCERS' Call Center at (347) 643-3000.

## New York State Retirement and Social Security Law (RSSL) §212

Under RSSL §212, if a retiree is under age 65 and returns to public service or is elected or appointed to any public office within New York City or New York State, they are subject to earnings limitations.

In the year 2020 and thereafter, the amount that may be earned without loss, suspension or reduction of their retirement allowance is $35,000 (subject to change by an act of the NYS Legislature). If their earnings exceed $35,000 in a calendar year, their pension will be suspended for the remainder of that calendar year.

There are no earnings limitations if the retiree is at least age 65 within that year or if they work for:

▶ The private sector

▶ The Federal government

▶ A public agency in another state or municipality outside of New York State

▶ A public agency in New York City or New York State, but only if they retired from the NYC Transit Authority

▶ A public school in New York City or New York State**

**Chapter 56 of the Laws of 2022 (Budget Bill: Part HH) amends the RSSL to waive §§ 211 & 212 approval and *Income Limitations* on retirees as a result of earnings from employment in public schools in the state. This will remain in effect from April 9, 2022 to June 30, 2025.

There are no earnings limitations if they return to work at a public benefit corporation (such as the NYC Health & Hospitals Corporation, the NYC Transit Authority, the NYC Off-Track Betting Corporation, etc.). However, each agency has its own policy about re-employing service retirees so the retiree should contact the agency directly for more information. For a full list of public benefit corporations, visit NYCERS' website at nycers.org/glossary#pbc.

The retiree must file Certificate of Employment Under §212 of the Retirement and Social Security Law (RSSL) Form #353 with NYCERS electing to have the provisions of RSSL §212 apply. If the retiree does not file Form #353, they are subject to an earnings limitation of no more than $1,800 per year, including any pension earned. They only need to file Form #353 once to be covered by the provisions of RSSL §212. If they are returning to public service within New York City or New York State and are over age 65, they must file Form #353 even though they are not subject to earnings limitations.

Pursuant to Civil Service Law §150, if an elected official retires and accepts appointment, is re-elected, or takes a new oath of office to the same elective public office from which they retired, they are subject to the earnings limitations in RSSL §212 – even if they are over age 65 or have filed Form #353.

## Membership in a New York City or New York State Public Retirement System

If a retiree returns to *City Service* in a NYCERS-eligible position, they have 90 days from the date of appointment to rejoin NYCERS if they wish to become a member again. If they do not rejoin NYCERS within the 90-day period, they will not be eligible to rejoin for the entire period of their post-retirement employment, and they will not receive credit for any service rendered after returning.

If they are covered by RSSL §211 or §212 and join a New York State or New York City public retirement system other than NYCERS, the pension portion of their retirement allowance is suspended for the entire period of their membership.

Various laws and NYCERS' rules govern post-retirement earnings limitations for disability retirees. Please see Earnings Limitations for Retirees Brochure #958 for earnings limitations applicable to disability retirees.

**LR:** Chapter 729 of the Laws of 1996;
       Chapter 474 of the Laws of 2002;
       Chapter 74 of the Laws of 2006;
       Chapter 589 of the Laws of 2019
**SR:** RSSL §211 and §212

## RETURNING TO PUBLIC SERVICE AFTER RETIREMENT

If a retiree returns to public service in a title covered by NYCERS, they are eligible to rejoin NYCERS as a *Restored Retiree* within 90 days of their reemployment date. A *Restored Retiree's* pension will be suspended during their reemployment and they will receive a new *Membership Number*. Their

*Membership Date* will be the clock-in date of their application to rejoin NYCERS and they will be placed back into the Tier they retired from and into the plan applicable to their new title.

Registered MyNYCERS accountholders can apply to rejoin NYCERS online at nycers.org. Retirees can also file Election by a Retiree Reentering City Service to Rejoin NYCERS Form #352 by mail or in person. Form #352 must be filed within 90 days of the retiree's reemployment date or they will not be eligible to rejoin NYCERS for the entire period of their post-retirement employment, and they will not receive credit for any service rendered after returning.

If a retiree returns to public service and joins another New York State or New York City public retirement system due to their title, they must notify NYCERS so their pension will be suspended during their reemployment. They will be eligible to join the other retirement system in the same Tier that they retired from with NYCERS. When they retire from the other retirement system, their NYCERS pension will be reinstated.

If a retiree returns to public service and does not rejoin NYCERS or joins another retirement system, they may be subject to certain earnings limitations. See the **Post-Retirement Earnings Limitations for Service Retirees** section on page 53 for more details.

For more information about contributions and loans upon returning to public service after retirement, see Returning to Public Service after Retirement Brochure #984.

## Retirement Benefit

If a *Restored Retiree* accrues at least three years of service during their second membership, they may choose to have their service from both memberships be combined. If they retire from their second membership due to disability, the three years rule will not apply. Their retirement benefits will be recalculated using their highest *Final Average Salary*. In addition, they will be able to choose a new retirement option on the previous service when in combination with the new service.

In order for benefits to be combined, the *Restored Retiree* may either:

1. Repay all benefits received under the initial retirement with interest; OR

2. Take an *Actuarial Reduction* due to the unpaid original pension which will apply to their new retirement benefit.

If the *Restored Retiree* chooses not to have their service combined, then they would not pay back their original pension, and their final retirement benefit would be their original retirement benefit (resumed) plus a small additional benefit due to service rendered during their second membership.

If the *Restored Retiree* retires with less than three years of service after restoration, they will not be allowed to re-choose an option under their previous benefit. Their original benefit will resume and they will be entitled to a new additional pension (with a choice of a new option on the additional benefit) based on the restored period of service.

## Option Insurance

A retiree may have elected an option that pays a continuing benefit after their death at retirement. That option will no longer be in effect once they become a *Restored Retiree* and their pension is suspended. If they die while their pension is suspended, their beneficiary will not be entitled to receive a monthly allowance.

A *Restored Retiree* may choose to protect the benefit payable under such option during periods of suspension by electing *Option Insurance*. Whether or not they rejoin NYCERS or join another retirement system after returning to public service in New York City or New York State, if they chose an option at retirement, they will receive a letter giving them the opportunity to purchase *Option Insurance*. The letter will provide the monthly cost and the necessary form. The retiree will have 60 days from the date of the letter to elect the insurance.

# DISABILITY RETIREMENT



# DISABILITY RETIREMENT

No one likes to think of becoming disabled. Though it may be unpleasant to think about, it is prudent to learn about NYCERS' disability benefits.

In the event a member becomes physically or mentally incapacitated and cannot continue to perform the duties of their job title, they may be eligible to collect a Disability Retirement Benefit, provided they meet the eligibility requirements specified in the following **Eligibility** section. In addition to meeting the eligibility requirements, the application filing process must be adhered to, so it is imperative that members review all requirements set forth in this section. If a member is in a title covered by a special disability benefit, their eligibility and filing requirements may differ. Please refer to the **Special Disability Provisions** section on page 65 for more details.

## ELIGIBILITY

Provided that a member meets the filing requirements for their title, they are eligible to receive a Disability Retirement Benefit at any age, if:

1. They have 10 or more years of *Credited Service*; AND

2. NYCERS' Medical Board determines that:

   - They are physically or mentally incapacitated to perform the duties of their job title; AND

   - They were so incapacitated at the time they ceased performance of their duties.

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §605 subdivisions b(1) and c

Provided that a member meets the filing requirements for their title, they are also eligible to receive a Disability Retirement Benefit at any age, if:

1. They have less than 10 years of *Credited Service*; AND

2. NYCERS' Medical Board determines that:

   - They are physically or mentally incapacitated to perform the duties of their job title; AND

   - They were so incapacitated at the time they ceased the performance of their duties; AND

   - Their disability is the result of an accidental injury sustained while a NYCERS member in *City Service*, in the performance of their duties, and not caused by their own willful negligence.

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §605 subdivision b(3)

### Definition of an Accident

A stringent standard is used when determining which disabling injuries qualify as an *Accident*. The term *"Accident"* has been defined by the courts as "a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact." An injury sustained while performing a routine duty, not resulting from an unexpected event, is not an *Accident*. An injury sustained by a sudden, unexpected event that is not a risk of the work performed, is usually considered to be an *Accident*. For example, a disabling injury sustained by a member while in the performance of duty due to an incident which involves routine lifting or bending would not qualify as an *Accident*.

## THE MEDICAL BOARD

NYCERS' Medical Board functions as an independent entity. The Medical Board consists of three medical doctors who may be appointed by one or more of the following: the Board of Trustees; the Department of Health and Mental Hygiene; and the Department of Citywide Administrative Services.

**LR:** Chapter 929 of the Laws of 1937
**SR:** NYC Administrative Code §13-123

The Medical Board is charged with conducting all medical examinations resulting from disability applications and reporting its findings to the Board of Trustees. The standards used by the Medical Board in determining initial entitlement for a disability benefit focus on the physical or mental incapacitation of the applicant. In determining whether such incapacity exists, the Medical Board follows guidelines set forth in NYCERS' Rules. Here is an excerpt of such Rules:

> "In determining whether such incapacity exists, the Medical Board must determine that the member is unable to perform the critical or essential elements of their job title in a customary and usual manner. The mental or physical incapacity must be such that the Medical Board concludes that the end of disability cannot be foreseen for at least one year. In addition, a physical or mental incapacity shall not be considered to be disabling if the member may alleviate or control the condition by availing their self of reasonable and safe medical treatment. In determining whether the member was incapacitated at the time they ceased performance of their duties, there shall be a rebuttable presumption that a member who is disabled at the time of the Medical Board's determination was also disabled at the time they ceased performance of their duties."

## THE DISABILITY RETIREMENT PROCESS

The steps to Disability Retirement with NYCERS are, in order:

1. Filing a Disability Retirement application and submitting medical evidence

2. Appearing before NYCERS' Medical Board

3. Confirming the *Retirement Date* and beginning advance payments, if approved

4. Submitting an appeal to NYCERS' Board of Trustees, if denied

5. Submitting additional information or appearing before a medical specialist, if deferred

## File an Application for Disability Retirement and Submit Medical Evidence

Members must file an application for a Disability Retirement Benefit:

1. Within three months from the last date they were being paid on the payroll, OR

2. While they are on a leave of absence without pay for medical reasons, either voluntarily or involuntarily, OR

3. No later than 12 months after the date they receive notice that their employment has been terminated, provided that they were on an approved leave of absence without pay for medical reasons, which was in effect immediately prior to such termination.

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §605 subdivision b(2)

The application must be filed:

▶ By the member; OR

▶ By a person with legal authority to act on the member's behalf; OR

▶ By the head of the agency where the member is employed.

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §605 subdivisions a(1) and a(2)

See the **Special Disability Provisions** section on page 65 for filing requirements if the member is an Emergency Medical Technician (EMT), Deputy Sheriff or Uniformed Sanitation Force member applying for a three-quarters disability benefit.

Members with a registered MyNYCERS account can apply online for Disability Retirement instead of submitting a paper application. Register for or log on to MyNYCERS at nycers.org.

Alternatively, the application for Disability Retirement must be on a form furnished by NYCERS, and must be accompanied by proof to substantiate the application, including Physician's Report of Disability Form #606.

**Forms Needed to File for Disability Retirement:**

▶ Application for Disability Retirement Form #604

▶ Physician's Report of Disability Form #606

▶ General Authorization for Medical Information Form #608

▶ Questionnaire for Disability Retirement Applicants Form #609

▶ Authorization for Release of Information Form #615

▶ Instructions for Members Filing for Disability Retirement Form #801

Medical privacy laws require that members must authorize NYCERS to request information from their treating physician/medical facility. Please be advised that upon authorization, it is NYCERS' practice

to contact public hospitals and/or H.I.P. Centers. If a member has a private physician or their medical provider practices in another healthcare facility, it is the member's responsibility to submit any and all medical evidence to support their claim for disability.

If a member is claiming that their disability was the result of an on-the-job *Accident*, NYCERS will send Agency Report on Accident Form #607 to their agency to verify the *Accident*/incident. When the agency returns the Agency Report on Accident, it will also submit documentation, such as an incident report prepared by the member, their manager or supervisor, or a witness, which describes all of the injuries and the events surrounding them. This report is most valuable if it is written at the time of the *Accident*/incident.

NYCERS will not process a member's Disability Retirement application until the Medical Unit receives all of the appropriate forms/reports, etc., and determines the member's eligibility. Members are also encouraged to submit their birth certificate or other valid proof of birthdate as early as possible, as it will help facilitate the process if they are ultimately approved.

**Most Common Reasons for Rejection of an Application**
► The member did not submit their application for Disability Retirement on a timely basis.

► The member is no longer active on City payroll or received a refund of their contributions, which terminated their membership in NYCERS.

► The member does not have 10 years of *Credited Service* and did not claim to have an on-the-job *Accident*.

► The member's agency cannot verify their *Accident*/incident or it occurred prior to the member's NYCERS *Membership Date*.

## Appear Before NYCERS' Medical Board for Examination
Once NYCERS receives a member's properly completed Disability Retirement application, NYCERS will:

1. Verify their eligibility to apply, which may entail contacting their employing agency to verify their employment status and obtain the Agency Report on Accident (where applicable).

2. If eligible, and if the member has completed General Authorization for Medical Information Form #608, ask public hospitals and/or H.I.P. Centers to provide a medical history. Remember, if the member has a private physician or their medical provider practices in another healthcare facility, the member must provide the medical history.

3. Verify that the member's case file, including medical records, is complete. The processing of a member's case may be suspended or closed if the Medical Board determines that the medical evidence is insufficient to schedule the member for an examination.

4. Schedule the member to appear before NYCERS' Medical Board for a medical interview and/ or examination. The member must confirm their appointment at least five days in advance by calling (347) 643-3000.

Members must appear before NYCERS' Medical Board when scheduled for an interview and/or examination, or provide proof that they are medically unable to do so. If they fail to appear or provide

proof of why they are medically unable to, their Disability Retirement application will be suspended or closed. Depending on the member's employment status, they may not be eligible to reapply.

Members will have to be examined by the Medical Board before a decision can be made on their application for Disability Retirement. No decision rendered in a proceeding under the Workers' Compensation Law or Social Security Law shall be binding on the Medical Board.

Tier 4 members with Tier 3 rights should refer to the **Tier 4 Members with Tier 3 Rights** section on page 83 for special provisions relating to Social Security determinations.

### Actions by the Medical Board

1. NYCERS' Medical Board will review the member's medical file and conduct an interview and/or examination.

2. The Medical Board may defer its decision pending receipt of additional medical evidence from the member or it may refer the member to an independent consultant for examination at NYCERS' expense.

3. The Medical Board will then make its recommendation to the Board of Trustees either approving or denying the application.

4. The application could be approved on the condition that the member returns one year later for reexamination to determine their continued eligibility to receive a Disability Retirement Benefit.

5. The Medical Board reserves the right to reexamine a disability retiree once a year until normal Service Retirement age or service year. If upon re-examination the Medical Board determines that the member is no longer disabled, the Department of Citywide Administrative Services will place the member's name on a list of preferred eligible candidates for appointment to a position in a salary grade not exceeding that from which the member retired. The member's Disability Retirement Benefit will be paid to the member until such time as they are offered a position in public service. If the member returns to work, or if they fail to return to work when offered a position in public service, NYCERS will discontinue payment of their Disability Retirement Benefit.

6. Members retired by reason of disability for more than one year may request a reexamination by NYCERS' Medical Board to establish their ability to return to work. The member must contact NYCERS immediately upon their return to work so that they can be restored to active membership. Failure to do so may jeopardize the member's rights to future benefits from this system.

## Confirm the Retirement Date and Begin Advance Payments, if Approved

If the Medical Board recommends approval of the member's disability application, NYCERS will establish a *Retirement Date*, process the member's advance payment, and send them a letter advising the amount. An advance payment is a temporary partial payment until such time as the member's Disability Retirement Benefit is finalized. NYCERS will process the member's case for an advance payment when it receives necessary payroll information from the member's employer. Approximately 90-180 days after the member receives their first advance payment, they will be sent a letter advising them of the amount payable to them under various options.

## Submit an Appeal to NYCERS' Board of Trustees, if Denied

If the Medical Board finds that the member is not physically or mentally incapacitated for the performance of their duties, it will recommend denial of the member's application to the Board of Trustees.

If the member does not meet the *Credited Service* requirement and their application is being considered because of an on-the-job incident, even though they are disabled, their application may still be denied. The reason for denial may be either the fact that the incident is not an *Accident* or that the disability is not causally related to the *Accident*.

### Appeal Process

If a member's application is denied for reasons other than a finding by the Medical Board that the member is not disabled, they may appeal the Medical Board's denial recommendation to the Board of Trustees. The member will be offered an opportunity to appear before the Board of Trustees to appeal the denial when NYCERS sends out a copy of the Medical Board report. Their request to appeal must be in writing and submitted to NYCERS by the date noted on their denial letter. The member will then be scheduled to appear before the Board of Trustees to present their appeal.

NYCERS' Board of Trustees does not have the authority to make medical decisions or to overrule medical decisions of the Medical Board. Therefore, an appeal brought before the Board of Trustees will involve issues relevant to the cause of the disability, rather than a medical determination on physical or mental incapacitation.

If the Board of Trustees accepts the recommendation of the Medical Board to deny the member's application, the member may:

1. Reapply for Disability Retirement if they are otherwise eligible; OR

2. Submit a written request for renewal (allowed twice) with current medical evidence not previously reviewed by the Medical Board within 60 days of the Board of Trustees' determination if the member is not otherwise eligible to reapply for Disability Retirement; OR

3. Challenge the decision in court (Article 78 relief); OR

4. Contest the Medical Board's recommendation by electing the *Final Medical Review* process, whereby the member's current application with supporting documentation and all Medical Board reports is evaluated by a Special Medical Review Committee made up of three independent doctors (See the following **Final Medical Review** section).

### Final Medical Review

Tier 4 members have the opportunity to contest the findings and recommendation of NYCERS' Medical Board through a process called *Final Medical Review*.

In order to elect *Final Medical Review*, a request must be made on the member's behalf by either their bargaining representative or the head of the agency in which the member is employed. In addition, the member must waive their right to challenge the decision in court. The request and the completed waiver must be received by NYCERS within 45 working days from the member's receipt of the Board of Trustees' letter indicating denial of their Disability Retirement application. However, if the member is appealing the decision of an Accidental Disability Retirement for Uniformed Sanitation, the request and completed waiver must be received by NYCERS within 15 calendar days instead. Information on

*Final Medical Review* is sent after the Board of Trustees ratifies the Medical Board's recommendation of denial.

Once the member chooses to proceed with *Final Medical Review*, NYCERS will forward their current application, supporting documentation, and all Medical Board reports to a Special Medical Review Committee of three independent doctors selected by a *Final Medical Review* Coordinator. Members cannot submit any additional medical evidence to these doctors. The member's union and the City will pay the fee for each examination conducted by the committee.

The Board of Trustees must accept the findings and recommendation of the Special Medical Review Committee, resulting in a final and conclusive administrative determination. Members waive their right to challenge this determination in court when they elect *Final Medical Review.*

**LR:** Chapter 607 of the Laws of 1998
**SR:** RSSL §605 subdivision e;
     NYC Administrative Code §13-169 (cross-reference)

### Submit Additional Information or Appear Before a Medical Specialist, if Deferred
If the Medical Board defers its decision, NYCERS will send the member a letter notifying them of the deferral. The member may be asked to provide additional information or appear for an evaluation before a medical specialist. If the member does not comply with the instructions in the letter, the application will be suspended or closed.

### Withdrawing an Application for Disability Retirement
Members may withdraw their application for a Disability Retirement Benefit provided that NYCERS' Medical Board has not yet finalized its findings.

Members must complete Withdrawal of Disability Retirement Application Form #619 in order to officially withdraw their application.

## CALCULATING THE DISABILITY RETIREMENT BENEFIT
If a member's application for Disability Retirement is approved by NYCERS' Medical Board, the Disability Retirement Benefit is equal to the greater of:

▶ 1 ⅔% times *Final Average Salary (FAS)* times years of *Credited Service*; OR

▶ ⅓ of the member's *FAS*; EXCEPT

▶ Where a member is eligible to receive a Service Retirement Benefit, and that benefit is greater than either of the above calculations, then the member will receive a Disability Retirement Benefit equal to the Service Retirement Benefit.

As is the case with Service Retirement, a Disability Retirement Benefit is payable as a *Maximum Retirement Allowance* or in an optional form elected by the member at retirement. A *Deficit* in any of the member's contribution accounts, or an outstanding loan at retirement, will result in a reduction in the retirement benefit.

62/5 Plan members who are in EMT titles or who are NYC Deputy Sheriffs or Uniformed Sanitation Force Members and qualify for a Performance of Duty or *Accidental Disability Benefit* should refer to the **Special Disability Provisions** section on page 65.

New York City Employees' Retirement System                                    www.nycers.org

**LR:** Chapter 601 of the Laws of 1997
**SR:** RSSL §605 subdivision d (3)

# SPECIAL DISABILITY PROVISIONS

## World Trade Center Law

This law provides for presumptive eligibility for an *Accidental Disability Benefit* in connection with the World Trade Center (WTC) tragedy of September 11, 2001. This law does not grant a new disability benefit. Rather, it allows members, vested members, and retirees who meet pre-qualifying criteria and develop a WTC-related Qualifying Condition or Impairment of Health to benefit from the presumption that such illness was sustained in the performance of duties as the natural and proximate result of an *Accident*.

Members approved for disability under this law receive a Disability Retirement Benefit equal to the amount payable under the section of law applicable to their tier and title. To meet the pre-qualifying criteria in the law, members, vested members, and retirees must have:

1. Filed Notice of Participation in WTC Rescue, Recovery or Clean-Up Operations Form #622 by paper or online through their MyNYCERS account prior to September 11, 2022, indicating the dates and locations of participation in rescue, recovery or clean-up operations. Members who joined NYCERS after the qualifying period defined below are eligible to file Form #622 if they purchased pre-*Membership Service* that includes some or all of the qualifying period, or if they were members of another New York public retirement system during the qualifying period. *Eligible Beneficiaries* of members who participated and subsequently died without having filed a Form #622 may also file; AND

2. Passed a physical examination upon entry into public service or, for those who were not required to take such examination upon entry into public service, authorize the release of all relevant medical records. In the event a WTC disability application is filed, the relevant medical records must not show evidence of the Qualifying Condition or Impairment of Health prior to 09/11/01; AND

3. Participated in rescue, recovery or clean-up operations at the WTC site, worked at the Fresh Kills Landfill, the NYC Morgue or temporary morgue on pier locations on the west side of Manhattan, or manned the barges between the west side of Manhattan and the Fresh Kills Landfill for any period of time within the first 48 hours after the first airplane hit the towers or for a minimum of 40 hours between 09/11/01 and 09/12/02; OR

4. Repaired, cleaned or rehabilitated vehicles or equipment, including emergency vehicle radio equipment, owned by NYC that were contaminated by debris at the WTC site, regardless of where the work was performed, for any period of time within the first 48 hours after the first airplane hit the towers or for a minimum of 40 hours between 09/11/01 and 09/12/02; OR

5. Worked at the following locations in the following titles (see the table on the next page) for any period of time within the first 24 hours after the first airplane hit the towers:

| COMMUNICATION/DISPATCHER LOCATIONS AND TITLES | |
|---|---|
| **DEPARTMENT AND LOCATION** | **TITLES** |
| New York City Police Department<br>11 MetroTech Center (Brooklyn)<br>1 Police Plaza (Manhattan) | Police Communication Technician (PCT)<br>Supervisor Police Communication Technician (SPCT)<br>Principal Police Communication Technician I<br>Principal Police Communication Technician II<br>Principal Police Communication Technician III<br>Administrative Manager – Communications<br>Police Administrative Aide title series |
| New York City Fire Department –<br>Dispatcher titles<br>35 Empire Boulevard (Brooklyn)<br>79th Street Transverse (Manhattan)<br>83-98 Woodhaven Boulevard (Queens)<br>1129 East 180 Street (Bronx)<br>65 Slosson Avenue (S.I.)<br>9 MetroTech Center (Brooklyn)<br>25 Rockaway Avenue (Brooklyn) | Fire Alarm Dispatchers (FAD)<br>Supervising Fire Alarm Dispatchers I (SFAD)<br>Supervising Fire Alarm Dispatchers II (Borough Supervisor)<br>Deputy Director and Director of Fire Dispatch Operations<br>Assistant Commissioner for Communications |
| New York City Fire Department –<br>EMS titles<br>1 MetroTech Center (Brooklyn)<br>9 MetroTech Center (Brooklyn)<br>55-30 58th Street (Queens) | Emergency Medical Specialist – Level I (EMT)<br>Emergency Medical Specialist – Level II (Paramedic)<br>Supervising Emergency Medical Specialist – Level I (Lieutenant)<br>Supervising Emergency Medical Specialist – Level II (Captain)<br>Deputy Chief EMS Communications<br>Division Commander EMS Communications |

The filing requirements for disability under this law are the same as the requirements for the member's title. However, vested members who are separated from *City Service* and awaiting payability of a Vested Retirement Benefit may file for disability with immediate payability if approved.

Emergency Medical Technicians (EMTs) and NYC Deputy Sheriffs who are vested and awaiting payability of a Vested Retirement Benefit must wait until their *Payability Date* to file for WTC-related disability under the sections providing a "three-quarters benefit" (RSSL §§607-b and 605-c, respectively). However, such members may file under the disability provisions of the *Basic Tier 4 Plan* with immediate payability.

### Updated Legislation, Effective as of September 13, 2021

- ▶ Chapter 424 of the Laws of 2021 – Expands eligibility of certain public service employees for participation in the World Trade Center Rescue, Recovery or Clean-up Operations.

  - This Act amends the Retirement and Social Security Law (RSSL) to include employees who became NYCERS members after the qualifying period under the World Trade Center (WTC) law, but were employees of a public employer during the covered time period and purchased some or all of that pre-membership period.

- ▶ Chapter 425 of the Laws of 2021 – Electronic submission for Notice of Participation in WTC Rescue, Recovery or Clean-Up Operations Form #622.

New York City Employees' Retirement System                                    www.nycers.org

- This Act amends the Retirement and Social Security Law (RSSL) and the New York City Administrative Code to allow for the electronic submission of a notice that a member participated in World Trade Center Rescue, Recovery or Clean-up Operations for a qualifying period.

Please see World Trade Center (WTC) Disability Law Fact Sheet #703 for more information.

**Reclassification**

Members who have met the pre-qualifying criteria and subsequently retired under Service Retirement, Ordinary Disability Retirement or Performance of Duty Disability Retirement (EMTs only) may reclassify their retirement to a WTC Accidental Disability Retirement.

Upon application by the retiree, the Medical Board will evaluate the retiree based on the Qualifying Condition or Impairment of Health claimed. The Medical Board must determine whether the retiree would have been incapacitated for the performance of duties had the condition been known and fully developed at the time of retirement.

All approved *Reclassification* cases will have a prospective, not retroactive, effect. Any option election made upon retirement cannot be changed upon *Reclassification*. Should a case be denied by the Board of Trustees based on a finding by the Medical Board that the retiree is not disabled pursuant to the WTC Law, the retiree may refile an application for *Reclassification* no earlier than 12 months after the date of the Medical Board's denial. However, such retirees may refile sooner if diagnosed with a terminal illness that is a Qualifying Condition or Impairment of Health.

WTC *Reclassification* cases are not eligible for *Final Medical Review*.

**LR:** Chapter 104 of the Laws of 2005 as amended by Chapter 93 of the Laws of 2005;
    Chapter 495 of the Laws of 2007;
    Chapter 489 of the Laws of 2008;
    Chapters 424 and 425 of the Laws of 2021
**SR:** RSSL §605 subdivision h;
    RSSL §605-c subdivision b (Deputy Sheriffs);
    RSSL §607-b subdivision c (EMT);
    RSSL §2 (36)

## Emergency Medical Technicians

**Three-Quarters Performance of Duty Disability Retirement**

Emergency Medical Technicians (EMTs) or Advanced EMTs who become mentally or physically incapacitated as a natural and proximate result of an injury sustained in the performance and discharge of duty on or after March 17, 1996 shall be entitled to a disability benefit equal to three-quarters of *Final Average Salary* minus 100% of the annual payment from the Workers' Compensation Board associated with the injury. In order to file an application for this type of Disability Retirement, members must be employed in the title of EMT or Advanced EMT at the time they file.

**LR:** Chapter 587 of the Laws of 1998
**SR:** RSSL §607-b

**Heart Law**

The Heart Law provides a presumption that a disease of the heart was incurred in the performance of duty. Emergency Medical Technicians and Paramedics employed by the Fire Department of New York who are approved for disability under the Heart Law are entitled to a disability benefit equal to three-quarters of *Final Average Salary* minus 100% of the annual payment from the Workers' Compensation Board associated with the disease of the heart. The presumption may be rebutted by competent medical evidence.

**LR:** Chapter 697 of the Laws of 2002
**SR:** General Municipal Law §207-q

**Hepatitis, AIDS and Tuberculosis (HAT) Law**

The HAT Law provides that an EMT or Advanced EMT who contracts HIV (where they may have been exposed to bodily fluids of a person under their care or treatment, or while the member examined, transported or had contact with such person in the performance of duties), tuberculosis or hepatitis, will be presumed to have contracted such disease in the performance and discharge of duty. Members approved for disability under this law are entitled to a disability benefit equal to three-quarters of *Final Average Salary* minus 100% of the annual payment from the Workers' Compensation Board associated with the disabling condition. The presumption may be rebutted by competent medical evidence.

**LR:** Chapter 587 of the Laws of 1998
**SR:** General Municipal Law §207-o; RSSL §607-b

## New York City Deputy Sheriffs

**Three-Quarters Accidental Disability Retirement**

NYC Deputy Sheriffs who become physically or mentally incapacitated for the performance of duties as the natural and proximate result of an *Accident*, not caused by their willful negligence, are entitled to a disability benefit equal to three-quarters of Final Compensation. Final Compensation is defined as *Wages* earned during any five consecutive years (subject to certain limitations), minus 100% of the annual payment from the Workers' Compensation Board associated with the injury. In order to file an application for this type of disability benefit, members must be employed in a Deputy Sheriff title specified in the law at the time they file.

**LR:** Chapter 516 of the Laws of 2003
**SR:** RSSL §605-c

## Uniformed Sanitation Force Members

**Three-Quarters Accidental Disability Retirement**

Uniformed Sanitation Force Members who become physically or mentally incapacitated for the performance of duties as the natural and proximate result of an *Accident*, not caused by their willful negligence, are entitled to a disability benefit equal to three-quarters of *Final Average Salary*. Uniformed Sanitation Force Members do not receive Workers' Compensation and therefore are not subject to Workers' Compensation offsets. An application must be filed within two years after the occurrence of the *Accident*.

**LR:** Chapter 504 of the Laws of 2002
**SR:** RSSL §605-b

New York City Employees' Retirement System                           www.nycers.org

**Heart Law**
The Heart Law provides a presumption that a disease of the heart was incurred in the performance of duty. Uniformed Sanitation Force Members who are approved for disability under the Heart Law are entitled to a disability benefit equal to three-quarters of *Final Average Salary*. Uniformed Sanitation Force Members do not receive Workers' Compensation and therefore are not subject to Workers' Compensation offsets. The presumption may be rebutted by competent medical evidence.

**LR:** Chapter 697 of the Laws of 2004
**SR:** General Municipal Law §207-r

# POST-RETIREMENT EARNINGS LIMITATIONS FOR DISABILITY RETIREES

Tier 4 disability retirees of NYCERS are required to report any additional earnings received after the effective date of retirement. This requirement is in effect each year for as long as the retiree receives a disability pension and entails the reporting of such additional earnings received in the prior calendar year. Disability retirees are required to complete Affidavit of Personal Service Income Form #351 on an annual basis, specifying earnings from the public and/or private sectors for the preceding calendar year. Failure to comply with this requirement will result in the suspension of future monthly pension payments until Form #351 is completed and submitted to NYCERS, along with any pertinent documentation.

*Personal Service Income* is defined as any income earned from the public and/or private sectors excluding the Disability Retirement Benefit received from NYCERS, Social Security benefits, Workers' Compensation payments, or any income earned from rental property, stocks, bonds, IRAs and interest earned on deposits in bank accounts.

Depending on which disability provision a retiree retired under, *Personal Service Income* may be subject to a yearly cap, referred to as the *Income Limitation*.

The *Income Limitation* for an *Ordinary* or *Accidental Disability Benefit* under Section 605 is a fixed dollar amount established by adding (or subtracting) the *Consumer Price Index (CPI)* percentage increase (or decrease) to (or from) the *Income Limitation* for the prior year. Please see Earnings Limitations for Retirees Brochure #958 for the current earnings limitations under Section 605.

Once a disability retiree exceeds the *Income Limitation* in any given year, their pension will be suspended for 12 months if it is an Ordinary Disability Retirement, or for the remaining of the calendar year if it is an Accidental Disability Retirement; the penalty is not dollar for dollar.

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §605 subdivision c

**New York City Deputy Sheriffs**
NYC Deputy Sheriffs receiving an *Accidental Disability Benefit* are not subject to any limitations on income earned from the private sector, but are limited to $1,800 in earnings derived from public employment in New York City, New York State or a locality within New York State, including pension earned. NYC Deputy Sheriffs must still file Form #351 with NYCERS on an annual basis.

**LR:** Chapter 516 of the Laws of 2003
**SR:** RSSL §605-c

**Emergency Medical Technicians**

Emergency Medical Technicians receiving a Performance Of Duty Disability Benefit under Retirement and Social Security Law (RSSL) §607-b are not subject to any limitations on income earned from the private sector, but are limited to $1,800 in annual earnings derived from public employment in New York City, New York State or a locality within New York State, including pension earned. Emergency Medical Technicians must still file Form #351 with NYCERS on an annual basis.

**LR:** Chapter 461 of the Laws of 2009
**SR:** RSSL §607-b subdivision a

# SURVIVOR BENEFITS



# SURVIVOR BENEFITS

In the event of a member's death prior to retirement, their membership in NYCERS entitles their beneficiary/beneficiaries to a *Death Benefit*. There are two primary types of *Death Benefits* – *Ordinary Death Benefit* and *Accidental Death Benefit*. This section explains the characteristics of each type.

In the event of a retiree's death after retirement, their pension from NYCERS may entitle a beneficiary to a continuing lifetime benefit or a lump-sum payment. Please refer to the **Retirement Options** section on page 45 for more information regarding Tier 4 Retirement Options. In addition to their pension, members may also designate one or more beneficiaries to receive a *Post-Retirement Death Benefit (PRDB)* after retirement. See the **Post-Retirement Death Benefit** section on page 73 for more information.

## DESIGNATING BENEFICIARIES

### Ordinary Death Benefit

When a member filed their membership application, they were able to designate one or more beneficiaries to receive an *Ordinary Death Benefit (ODB)* in the event of their death before retirement. The member was able to designate whomever they wished – family members, partners, friends, etc., – or their estate. If there is no beneficiary designation on file, the *ODB* is payable to the member's estate.

If the member designated a minor (under age 21), they should have also completed Designation of Guardian Form #137 indicating guardian information. By designating a guardian under the Uniform Transfer to Minor's Act for a minor beneficiary on this form, the member eliminates the need for formal guardianship proceedings upon their death. In addition, the member may indicate on Form #137 that they request for the guardian designation to expire at age 18 as opposed to 21 so that the beneficiary can sign the claim form and collect their benefit at age 18 without needing a guardian. Members can manage their beneficiaries or their designated guardians by logging in to their MyNYCERS account at mynycers.org.

The beneficiary designation remains on file at NYCERS and will govern eligibility to receive the *ODB*. At any time prior to the member's retirement, they may change the beneficiary/beneficiaries by filing Designation of Primary and Contingent Beneficiary Form #134 or by logging in to their MyNYCERS account. If the member designates a minor, they should also complete Form #137 indicating guardian information. The latest properly executed beneficiary and/or guardianship forms filed by the member will supersede all previously filed forms.

Members may choose to designate two categories of beneficiaries – *Primary Beneficiaries* and *Contingent Beneficiaries*. *Primary Beneficiaries* are entitled to an *ODB* in the event of the member's death before retirement. *Contingent Beneficiaries* are entitled to an *ODB* only if they have survived all designated *Primary Beneficiaries* at the time of the member's death.

Members must indicate the percentages of the *ODB* they wish to allocate for each category, and the sum of each category must total 100%. If the member does not indicate percentages, the *ODB* will be divided equally.

Example:

John Smith designates his wife and three daughters as his *Primary Beneficiaries* and his two brothers as his *Contingent Beneficiaries*. John does not allocate percentages among his designees. The default percentages for his *Primary Beneficiaries* are 25% each. The default percentages for his *Contingent Beneficiaries* are 50% each (only payable if no *Primary Beneficiaries* are eligible).

When a member has designated multiple *Primary Beneficiaries* and one or more predeceases the member and the member does not file a revised beneficiary form, the member's *ODB* will be divided among the remaining designees according to the percentages the member allotted to each.

A member's *Annual Disclosure Statement (ADS)* indicates the beneficiaries on file with NYCERS. Members are encouraged to review their *ADS* carefully as they may need, or want, to change the beneficiaries on file.

If a member designates their spouse as a beneficiary for an *ODB*, their designation will be revoked upon divorce, annulment of marriage or judicial separation. However, the revocation will not take effect if the member redesignates such person as a beneficiary after the divorce, annulment or separation. Designations that are required under a *Domestic Relations Order* on file with NYCERS are irrevocable by law. NYCERS should receive a copy of the judgment of divorce, annulment or judicial separation before the payment of an *ODB* is issued. See the **Domestic Relations Orders and Child Support Claims** section on page 52 for more information on *Domestic Relations Orders*.

**LR:** Chapter 173 of the Laws of 2008
**SR:** Estates, Powers and Trusts Law §5-1.4

**Right of Election**
NY State Estate Powers of Trust Law (EPTL) provides that if a member is married and they change their beneficiary after 1992 to someone other than their spouse, and the member dies while married, their spouse retains a right to assert an election of a portion of certain funds, which may include their *Death Benefit*.

## Accidental Death Benefit
Should the member's death be the result of an on-the-job *Accident*, an *Accidental Death Benefit* is payable to the member's *Eligible Beneficiaries*. Such *Eligible Beneficiaries* are defined by statute. Please refer to the **Accidental Death Benefit** section on page 76 for more information.

## Post-Retirement Death Benefit
At retirement, Tier 4 62/5 Plan members may be eligible to designate one or more beneficiaries to receive a *Post-Retirement Death Benefit (PRDB)* by submitting Designation of Beneficiary/Beneficiaries - Post-Retirement Lump-Sum Death Benefit Form #501 or by logging in to their MyNYCERS account at mynycers.org. If the member designates a minor, they should also complete Form #137 indicating guardian information. Please refer to the **Death Benefit Plans** section on the following page for more information.

## ORDINARY DEATH BENEFIT
A member's beneficiary/beneficiaries will be entitled to an *ODB* if the member dies before retirement, whether or not death occurs as the result of an *Accident* sustained on the job.

An *ODB* will be paid only if:

A)  The member was being paid on payroll at the time of their death;

OR

B) The member was off payroll or was on an authorized leave without pay at the time of their death; AND

▶ The member was on payroll, in service and paid within the last 12 months before death; AND

▶ The member was not gainfully employed since last on the payroll; AND

▶ The member had credit for one or more years of continuous service since they last entered the service of their employer.

**LR:** Chapter 617 of the Laws of 1986
**SR:** RSSL §606 subdivision e(1)

OR

C) Effective October 1, 2000, the member was on an authorized leave of absence without pay for medical reasons which has continuously been in effect since the member was last paid on the payroll, provided the member was in service and last paid on the payroll within the four-year period prior to the member's death.

**LR:** Chapter 290 of the Laws of 2001
**SR:** RSSL §606 subdivision e(1)

## Death Benefit Plans

Two distinct *Death Benefit* plans exist within the *Ordinary Death Benefit* structure – Death Benefit Plan 1 and Death Benefit Plan 2. Each type pays a different benefit and laws dictate who belongs to which plan.

Members who joined NYCERS prior to January 1, 2001 were required to irrevocably choose between Death Benefit Plan 1 and Death Benefit Plan 2. However, legislation enacted in 2000 allows beneficiaries to receive the greater of Death Benefit Plan 1 or Death Benefit Plan 2, if the member had selected Death Benefit Plan 1. If, however, the deceased member had selected Death Benefit Plan 2 and Death Benefit Plan 1 would provide a greater benefit, Death Benefit Plan 2 is still payable. Additionally, the law provides that any person who becomes a member of NYCERS on or after January 1, 2001 will automatically be covered by Death Benefit Plan 2.

**LR:** Chapter 554 of the Laws of 2000
**SR:** RSSL §606 subdivision a(4)

### Death Benefit Plan 1

The *ODB* payable under Death Benefit Plan 1 is a refund of the *Basic Member Contributions*, plus interest, in the member's *Member Contribution Accumulation Fund (MCAF)*, plus the greater of:

▶ One month's salary for each full year of service (up to a maximum of 3 years' salary after 36 years of service); OR

▶ If eligible for a Service Retirement Benefit without benefit reduction, the *Actuarial Reserve* for the Service Retirement Benefit which would have been payable had the member retired on the day before their death.

New York City Employees' Retirement System                                    www.nycers.org

**LR:** Chapter 617 of the Laws of 1986
**SR:** RSSL §606 subdivision a(1)

**Death Benefit Plan 2**
The *ODB* payable under Death Benefit Plan 2 is a refund of the *Basic Member Contributions*, plus interest, in the member's *MCAF* plus a multiplication of the member's salary as indicated in the following table:

| YEARS OF SERVICE | A LUMP-SUM BENEFIT EQUAL TO |
|---|---|
| At least one year, but less than two years | One year's *Current Salary*\* |
| At least two years, but less than three years | Two times *Current Salary*\* |
| At least three years | Three times *Current Salary*\* |

\* *Current Salary*: The regular compensation earned during a member's last 12 months of service, plus overtime, night differentials, longevity payments and any other type of pensionable earnings where applicable

Prior to July 1, 2021, the lump-sum benefit is reduced to 95% upon attainment of age 61 if a member remains in *Active Service* beyond age 60. This benefit reduction is decreased annually at a rate of 5% up to 50% if the member continues to remain in *Active Service* until age 70.

Effective on or after July 1, 2021, the lump-sum benefit is reduced to 97% upon attainment of age 61 if the member remains in *Active Service* beyond age 60. This benefit reduction is decreased annually at a rate of 3% up to 70% if the member continues to remain in *Active Service* until age 70

| REDUCTIONS IN BENEFITS AFTER AGE 60 AND STILL IN SERVICE | |
|---|---|
| AGE AT DEATH | AMOUNT OF BENEFIT |
| 61 | 97% of benefit in force |
| 62 | 94% of benefit in force |
| 63 | 91% of benefit in force |
| 64 | 88% of benefit in force |
| 65 | 85% of benefit in force |
| 66 | 82% of benefit in force |
| 67 | 79% of benefit in force |
| 68 | 76% of benefit in force |
| 69 | 73% of benefit in force |
| 70 or over | 70% of benefit in force |

**Post-Retirement Death Benefit**
Death Benefit Plan 2 also contains a *Post-Retirement Death Benefit (PRDB)*. The *PRDB* is less than the *ODB*; the amount is dependent upon the member's date of death after retirement (see table on the next page). At retirement, members can designate the beneficiary/beneficiaries to receive this benefit by submitting Designation of Beneficiary/Beneficiaries - Post-Retirement Lump-Sum Death Benefit Form #501.

If there is no valid *PRDB* designation on file, the benefit shall be payable based on the last valid Designation of Primary and Contingent Beneficiary Form #134 on file. If the retiree survives all duly nominated beneficiary/beneficiaries, the *Post-Retirement Death Benefit* shall be payable to the retiree's estate.

| POST-RETIREMENT DEATH BENEFITS PAID | |
| --- | --- |
| **IF DEATH OCCURS** | **AMOUNT OF BENEFIT** |
| In the first year of retirement | 50% of the benefit in force* |
| In the second year of retirement | 25% of the benefit in force* |
| In the third year of retirement or thereafter | 10% of the benefit in force* |

\* The benefit in force is defined as the *Ordinary Death Benefit (ODB)* which would have been payable if the member died the day before their *Retirement Date*, if any.

Members of the Uniformed Sanitation Force participating in a special occupational plan are not eligible for a *PRDB*.

**LR:** Chapter 617 of the Laws of 1986
Chapter 716 of the Laws of 2023
**SR:** RSSL §606 subdivision a(2)(f)

### Alternative Death Benefit for Members who joined NYCERS before July 26, 1986

In the event of the death of a member in *Active Service* who joined NYCERS before July 26, 1986, a lump-sum *Death Benefit* or an annuity based on such benefit may be paid to the member's *Designated Beneficiary* or estate. The benefit is equal to the member's *Wages* earned during the last 12 months of *Active Service*, multiplied by the member's number of years of *Credited Service*. The years of *Credited Service* may not exceed 36. This benefit may be paid if greater than the *Ordinary Death Benefit* payable under Plans 1 or 2.

## DEATH BENEFITS FOR VESTED MEMBERS

If a member dies prior to their *Payability Date*, and at a time and in a manner which did not result in payment of an *Ordinary Death Benefit* to their beneficiary/beneficiaries, a lump-sum *Death Benefit* will be paid to the beneficiary/beneficiaries the member last designated if the member has 10 or more years of *Credited Service*.

The *Death Benefit* amount awarded is based on 50% of the *Death Benefit* that would have been payable if the member had died on their last day in *Active Service* plus the return of the *Basic Member Contributions in the Member Contribution Accumulation Fund (MCAF)*, plus interest.

If the member did not render 10 or more years of *Credited Service*, only the return of the contributions in the member's *MCAF*, plus interest, will be payable to their Estate.

**LR:** Chapter 388 of the Laws of 1998
**SR:** RSSL §606-a

## ACCIDENTAL DEATH BENEFIT

If NYCERS' Medical Board determines that a member's death was the natural and proximate result of an *Accident* sustained in the performance and discharge of duty, not caused by their own willful negligence, the member's *Eligible Beneficiary/Beneficiaries* is entitled to an *Accidental Death Benefit*.

The annual benefit equals 50% of the *Wages* the member earned during their last year of service, or their annual wage rate if they had less than one year of service. Unlike the *Ordinary Death Benefit*, the deceased member's *Basic Member Contributions* are not refunded to the beneficiary/beneficiaries.

New York City Employees' Retirement System                                    www.nycers.org

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §607 subdivision a

The *Eligible Beneficiaries* of the *Accidental Death Benefit* are defined by statute in priority order. The benefit is paid in the following priority order:

▶ The member's spouse, until remarriage, unless the spouse has renounced survivorship rights; OR

▶ Each of the member's children until they reach age 25; OR

▶ The member's parents who depend on the member for support; OR

▶ Any person who qualified as a dependent on the member's final Federal income tax return, until age 21; OR

▶ Anyone the member designated as their beneficiary/beneficiaries for their *Ordinary Death Benefit*.

**LR:** Chapter 414 of the Laws of 1983, as amended by Chapter 408 of the Laws of 2000
**SR:** RSSL §601 subdivision d

If one of the persons in the priority order ceases to be an *Eligible Beneficiary*, then the benefit continues to the next person or persons on the list. For example, if no spouse exists and the children are receiving the *Accidental Death Benefit*, when they reach 25 the benefit will continue to the next on the list – dependent parents, etc.

Where there are two or more children as the *Eligible Beneficiaries*, the benefit will be divided equally between them. Likewise, where there are two dependent parents, the benefit will divided equally between them. Where there are two or more *Designated Beneficiaries* for the *Ordinary Death Benefit* entitled to receive the *Accidental Death Benefit*, the benefit will be divided in accordance with the percentage allotted to such *Designated Beneficiaries*.

## FILING FOR ORDINARY OR ACCIDENTAL DEATH BENEFITS

Once a member is deceased, NYCERS must be notified and provided with an original death certificate. Notification can be given to NYCERS by the decedent's beneficiary, relative, friend or union representative.

Upon receipt of the death certificate, NYCERS will:

▶ Calculate any benefits due

▶ Mail a Claimant's Statement form(s) and instructions to the beneficiary/beneficiaries

▶ Outline payment choices

For an *Accidental Death Benefit*, the Claimant's Statement form(s) must be filed by the member's beneficiary/beneficiaries and received by NYCERS within two (2) years after the member's death.

**LR:** Chapter 414 of the Laws of 1983
**SR:** RSSL §607 subdivision a

When an application for an *Accidental Death Benefit* is filed, the case will be referred to the Medical Board. Once the Medical Board reviews all necessary documentation, it will render an opinion on the cause of death and report its findings to the Board of Trustees.

If the Medical Board recommends denial of the claim, the claimant will be notified of the opportunity to appeal the denial before a Special Trial Committee. The Special Trial Committee is made up of members of the Board of Trustees, who will hear the argument, take evidence, and report their recommendations to the full Board of Trustees. The Board of Trustees will then make the final determination.

*Accidental Death Benefit* cases will require the completion of Agency Report on Accident Form #607 to be submitted by the deceased member's employing Agency.

## SPECIAL ACCIDENTAL DEATH BENEFITS (EMT/EMS, TBTA, DEPUTY SHERIFF AND UNIFORMED SANITATION)

A state-funded *Special Accidental Death Benefit* is payable to the widow/widower, or if there is no widow/widower, the children of the deceased (under 18 years of age or under the age of 23 if a student), or, if there are no eligible children, the parents of the deceased in the following titles who have died of injuries sustained in the line of duty as the natural and proximate result of an *Accident* before the effective date of retirement, not caused by the member's own willful negligence:

- ▶ An Emergency Medical Technician (EMT) or Uniformed Emergency Medical Service (EMS) member

- ▶ A uniformed member of the Triborough Bridge and Tunnel Authority (TBTA)

- ▶ A Deputy Sheriff of the New York City Sheriff's Department

- ▶ A member of the Uniformed Sanitation Force of the NYC Department of Sanitation

The widow/widower must be ineligible to receive benefits pursuant to RSSL §361-a, as amended by Chapter 733 of the Laws of 1990.

The *Special Accidental Death Benefit* is a monthly payment separate from the *Accidental Death Benefit*. This benefit is in addition to the *Accidental Death Benefit* and brings the total *Accidental Death Benefit* to a pension equal to 100% of the decedent's salary.

The *Special Accidental Death Benefit* is increased annually by a percentage determined on the basis of the *Consumer Price Index (CPI)*. The maximum potential benefit for an EMT/EMS, TBTA and Deputy Sheriff member will be reduced by the basic amount of the Social Security survivor's benefit and the Workers' Compensation award. The maximum potential benefit for Uniformed Sanitation will be reduced by the basic amount of the Social Security survivor's benefit only since Uniformed Sanitation does not receive any Workers' Compensation.

### EMT/EMS
**LR:** Chapter 583 of the Laws of 2004 (original chapter; 3% increase of salary computation enacted annually)
**SR:** General Municipal Law §208-f

**TBTA**
**LR:** Chapter 742 of the Laws of 2004 (original chapter; 3% increase of salary computation enacted annually)
**SR:** General Municipal Law §208-f

**Deputy Sheriff**
**LR:** Chapter 720 of the Laws of 2023
**SR:** General Municipal Law §208-f

**Uniformed Sanitation Force**
**LR:** Chapter 457 of the Laws of 2017 (original chapter; 3% increase of salary computation enacted annually)
**SR:** General Municipal Law §208-f

## PRESUMPTIVE ACCIDENTAL DEATH BENEFITS UNDER THE HEART LAW (EMT AND UNIFORMED SANITATION)

FDNY Emergency Medical Technicians and Uniformed Sanitation Force members who die from a disease of the heart will be entitled to a presumption that such disease of the heart was incurred in the performance and discharge of duty. The *Eligible Beneficiary/Beneficiaries* of such members may be entitled to an *Accidental Death Benefit and Special Accidental Death Benefit* which are paid in accordance with the relevant statute(s) governing such *Death Benefits*.

**EMT**
**LR:** Chapter 697 of the Laws of 2002
**SR:** General Municipal Law §207-q

**Uniformed Sanitation**
**LR:** Chapter 457 of the Laws of 2017
**SR:** General Municipal Law §207-r, as extended by RSSL §480

## WORLD TRADE CENTER DEATH BENEFITS

The WTC Law provides line-of-duty *Death Benefits* to the statutory beneficiary/beneficiaries of eligible members, vested members, and retirees who die from a Qualifying Condition or Impairment of Health contracted as a result of participation in WTC rescue, recovery or cleanup operations.

The following summarizes the law's provisions:

▶ The *Eligible Beneficiary/Beneficiaries* of active members, vested members, and retirees who have met the pre-qualifying criteria of the WTC Law (see the **World Trade Center Law** section on page 65 for pre-qualifying criteria) may apply for an *Accidental Death Benefit* upon the death of such a member, vested member, or retiree.

▶ The *Eligible Beneficiary/Beneficiaries* of retirees who have been retired for more than 25 years are not eligible for the WTC *Death Benefit*.

▶ Retirees who did not file Notice of Participation in WTC Rescue, Recovery or Clean-Up Operations Form #622 because they had retired on a non-WTC Accidental Disability Retirement may nevertheless be deemed pre-qualified if it is shown that they would have met such criteria.

▶ Awards the *Eligible Beneficiary/Beneficiaries* an *Accidental Death Benefit* (and *Special Accidental Death Benefits* for covered titles) and requires that they relinquish their rights to prospective non-WTC benefits paid or payable under a Service or Disability Retirement Benefit, including any *Post-Retirement Death Benefits*, since the retiree's death.

▶ If the *Eligible Beneficiary* is not the only beneficiary receiving or entitled to receive a non-WTC benefit under the Service or Disability Retirement Benefit (including, but not limited to, *Post-Retirement Death Benefits* or benefits paid or payable pursuant to the retiree's option election), the *Accidental Death Benefit* payments to the *Eligible Beneficiary* will be reduced by any amounts paid or payable to any other beneficiary. This also applies to any *Special Accidental Death Benefit* payment.

**LR:** Chapter 445 of the Laws of 2006, as amended by Chapter 5 of the Laws of 2007; Chapter 489 of the Laws of 2008

**SR:** General Municipal Law §208-f (for *Special Accidental Death Benefit*); RSSL §2(36); RSSL §607

## DEATH BENEFITS FOR MILITARY PERSONNEL

The beneficiaries of members who die while on military duty may be entitled to receive either an *Ordinary Death Benefit* or an *Accidental Death Benefit*. Depending on the deceased member's title, a *Special Accidental Death Benefit* might also be paid.

To be eligible for coverage, a member must have died while performing "service in the uniformed services" as defined by the Uniformed Services Employment and Reemployment Rights Act (USERRA). Under USERRA, the term "service in the uniformed services" means the performance of duty on a voluntary or involuntary basis and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, a period for which a person is absent from a position of employment for the purpose of an examination to determine the fitness of the person to any such duty, and a period for which a person is absent from employment for the purpose of performing funeral honors duty as authorized by section 12503 of title 10 or section 115 of title 32.

### Ordinary Death Benefit

For the purposes of paying the *Ordinary Death Benefit*, such members are considered to be in service provided they:

(a) Were on payroll (in any status) at the time they were called to perform service in the uniformed services and died on or after June 14, 2005; AND

(b) Had not been otherwise employed while off payroll performing service in the uniformed services.

If such members die prior to rendering the minimum amount of service for the *Ordinary Death Benefit*, they are considered to have met the requirement. The *Ordinary Death Benefit* is paid to the *Designated Beneficiaries* of such members.

### Accidental Death Benefit

For the purposes of paying the *Accidental Death Benefit*, such members are deemed to have died as a natural and proximate result of an *Accident* provided that:

(a) They were on payroll (in any status) at the time they were called to perform service in the uniformed services and died on or after June 14, 2005; AND

(b) No *Ordinary Death Benefit* had been previously paid.

Such members' *Eligible Beneficiaries* will be entitled to an *Accidental Death Benefit.* The beneficiaries of Emergency Medical Technicians, Triborough Bridge and Tunnel Authority members, and Uniformed Sanitation Force members will also be entitled to a *Special Accidental Death Benefit.*

### Ordinary and Accidental Death Benefit
**LR:** Chapter 105 of the Laws of 2005, as amended by Chapter 582 of the Laws of 2011
**SR:** RSSL §606 subdivision e;
   RSSL §607 subdivision a

### Special Accidental Death Benefit (EMT)
**LR:** Chapter 583 of the Laws of 2004 (original chapter; 3% increase of salary computation enacted annually)
**SR:** General Municipal Law §208-f

### Special Accidental Death Benefit (TBTA)
**LR:** Chapter 742 of the Laws of 2004 (original chapter; 3% increase of salary computation enacted annually)
**SR:** General Municipal Law §208-f

### Special Accidental Death Benefit (Uniformed Sanitation Force)
**LR:** Chapter 457 of the Laws of 2017 (original chapter; 3% increase of salary computation enacted annually)
**SR:** General Municipal Law §208-f

# TIER 4 MEMBERS
# WITH TIER 3 RIGHTS



# TIER 4 MEMBERS WITH TIER 3 RIGHTS

## ELIGIBILITY

If a member last joined a public employee retirement system of the City or State of New York after July 26, 1976 and prior to September 1, 1983, they are eligible to elect Tier 3 benefits. Tier 3 benefits may be more advantageous to the member than Tier 4 benefits. However, Tier 4 benefits are generally better than the benefits under Tier 3. While many features of Tier 3 are either similar or identical to Tier 4, some areas are significantly different. This section will highlight those areas where there are significant differences between Tier 3 and Tier 4 benefits.

If a member last joined a public employee retirement system of the City or State of New York after August 31, 1983, they are covered only by Tier 4 benefits and do not have the option of electing Tier 3 benefits. Members may not mix the provisions of Tiers 3 and 4 to change the eligibility requirements for a benefit under either tier.

## SERVICE RETIREMENT

The Service Retirement Benefit for those with Tier 3 rights, which is payable at age 62, is calculated as follows:

▶ If the member has less than 20 years of *Credited Service*:

    1 ⅔% times *Final Average Salary (FAS)* times the years of *Credited Service*;

    MINUS

    50% of the member's *Primary Social Security Benefit*.

▶ If the member has 20 or more years of *Credited Service*:

    2% times *FAS* times the years of *Credited Service* (up to a maximum of 30 years of *Credited Service*),

    MINUS

    50% of the member's *Primary Social Security Benefit*.

For offset purposes, the *Primary Social Security Benefit* is calculated only on the basis of the member's earnings in covered employment for which the member also received *Credited Service* in NYCERS.

A *Deficit* in a member's *Member Contribution Accumulation Fund* will result in a reduction in the Tier 3 Service Retirement Benefit (as is the case with a Tier 4 Service Retirement Benefit).

**LR:** Chapter 890 of the Laws of 1976
**SR:** RSSL §504, subdivisions a and b;
    RSSL §511 (Social Security Offset)

Although the percentages for each year are the same as Tier 4, there are two significant differences:

1. The Tier 3 Service Retirement Benefit is offset by 50% of the member's *Primary Social Security Benefit*, whereas the Tier 4 benefit has no such offset; AND

2. The Tier 3 Service Retirement Benefit is capped at a maximum of 30 years, whereas the Tier 4 benefit has no such cap.

## Vesting and Early Service Retirement

Both Tier 3 and Tier 4 members are vested upon attaining five years of *Credited Service*. Unlike Tier 4 however, Tier 3 permits the member to elect to receive a reduced Early Service Retirement Benefit between ages 55 and 62 even if the member is off payroll at the time they file their retirement application. To be eligible, the member must have a minimum of five years of *Credited Service* and have reached at least age 55.

The Early Service Retirement Benefit (between ages 55 and 62) is calculated the same as the Service Retirement Benefit with the following additional reductions at retirement:

| AGE PAYMENT BEGINS | PERCENT OF BENEFIT REDUCTION |
|---|---|
| 61 | 6.7% |
| 60 | 13.3% |
| 59 | 16.7% |
| 58 | 20.0% |
| 57 | 23.3% |
| 56 | 26.7% |
| 55 | 30.0% |

**LR:** Chapter 890 of the Laws of 1976
**SR:** RSSL §504, subdivision c;
       RSSL §516

In summary, the following differences should be noted between Tiers 3 and 4 regarding *Vesting* and Early Service Retirement:

1. The maximum reduction in Tier 3 (30% at age 55) is greater than the reduction in Tier 4 (27% at age 55).

2. Tier 3 members applying for Early Service Retirement do not need to be on active payroll; Tier 4 members MUST be on active payroll.

3. The Tier 3 Early Service Retirement Benefit is offset by 50% of the *Primary Social Security Benefit* upon reaching age 62; Tier 4 contains no such offset.

4. The Tier 3 Service Retirement Benefit is capped at a maximum of 30 years; Tier 4 benefit has no such cap.

5. Tier 3 members may postpone receipt of their Early Service Retirement until their 62nd birthday in order to be eligible for partial post-retirement escalation or until age 65 for full post-retirement escalation (see the **Escalation: Post-Retirement Increases for Service Retirement** section on page 85); Tier 4 has no escalation.

## Escalation: Post-Retirement Increases for Service Retirement

If the member retires on or after age 65, their Service Retirement Benefit increases by up to 3% per year if the *Consumer Price Index (CPI)* increases by 3% or more the preceding year. If the *CPI* decreases in the preceding year, the increased benefit will be reduced by a corresponding percentage, but never by more than 3% in any year. In no event will the member's benefit be reduced below the amount of their initial benefit at retirement.

If a member retires between ages 62 and 65, their Escalation will be reduced by $^1/_{36}$ for each month their retirement precedes age 65. In order to qualify for full post-retirement increases, members may postpone receipt of their Service Retirement Benefit until their 65th birthday.

Post-retirement increases are generally greater than the *COLA* otherwise payable to a Tier 4 member.

**LR:** Chapter 890 of the Laws of 1976
**SR:** RSSL §510

### Retirement Options

Tier 3 retirement options vary slightly from those offered in Tier 4.

#### Option 2 (Joint-and-Survivor)

Option 2 is the same as Option 2 in Tier 4 but with different percentages. The member receives a reduced monthly lifetime benefit. After the member's death, their *Designated Beneficiary* receives 90% or less (the member decides on the amount in increments of 10%) of the reduced benefit.

Members can name only one beneficiary and cannot change the beneficiary they name. If a member's beneficiary predeceases the member, the reduced benefit remains unchanged and ceases upon the member's death.

**LR:** Chapter 890 of the Laws of 1976
**SR:** RSSL §514, subdivisions a & b

## DISABILITY RETIREMENT

Tier 3 Disability Retirement Benefits are dependent upon the receipt of *Primary Social Security Disability Benefits*. Tier 4 Disability Retirement Benefits, which are not reduced by *Primary Social Security Disability Benefits*, often provide a higher benefit than Tier 3. However, a Tier 3 Disability Retirement Benefit may be the only benefit available to a member whose disability is not the result of a service-connected *Accident*, and who does not have enough years of service credit to qualify for a Tier 4 Disability Retirement Benefit.

If a member applies for disability benefits under Tier 3, and has not applied for *Primary Social Security Disability Benefits*, the member will be required, within 60 days, to submit proof to NYCERS that they have applied for *Primary Social Security Disability Benefits*. NYCERS will hold the member's application open for a maximum of two years pending a Social Security disability award (extended by any time necessary to complete any and all appeals to the Federal courts). If the member receives a *Primary Social Security Disability Benefits* award, they must notify NYCERS within the earlier of:

▶ 60 days after the date of the award; OR

▶ The two-year period described above, as extended by any appeals.

If the member does not follow these procedures, they will not be eligible to receive disability benefits under Tier 3.

Members with Tier 3 rights who do not qualify for Tier 4 Disability Retirement Benefits are entitled to apply for the *Ordinary* and *Accidental Disability Benefit* under Tier 3 simultaneously. If a member applies for and is awarded both benefits, one benefit must be selected. The following is a summary of each type of benefit.

## Ordinary Disability Retirement

A member qualifies for an Ordinary Disability Retirement if they meet all of the following eligibility requirements:

- ▶ The member files their application for Ordinary Disability Retirement while they are in *Active Service*, as defined below; AND

- ▶ The member submits proof of filing for *Primary Social Security Disability Benefits* within 60 days from the date of filing the application; AND

- ▶ The member has at least five years of *Credited Service*; AND

- ▶ The member has been found disabled and eligible for *Primary Social Security Disability Benefits* by the Social Security Administration.

A member will be considered to be in *Active Service* for the purpose of filing an application for Tier 3 Ordinary Disability Retirement, if:

- ▶ The member is on an authorized leave of absence without pay; AND

- ▶ The member's leave was granted for medical reasons; AND

- ▶ The member's leave has been in effect continuously since the member was last paid on the payroll; AND

- ▶ Two years have not elapsed from the date the member was being paid on the payroll.

### Benefit Formula

If a member's application for Ordinary Disability Retirement is granted, the member will receive an annual benefit equal to the greater of:

- A)  33 ⅓% times *Final Average Salary (FAS)*; OR

- B)  2% times *FAS* times years of *Credited Service* up to 30 years

Both A and B are reduced by:

- ▶ 50% of the member's *Primary Social Security Disability Benefits*; AND

- ▶ 100% of any Workers' Compensation payments.

If a member is eligible for Service Retirement, their benefit may be greater than the benefit described above. Members should consult with NYCERS for more information.

**LR:** Chapter 890 of the Laws of 1976
**SR:** RSSL §506

## Accidental Disability Retirement

There is no minimum service requirement for Accidental Disability Retirement. A member qualifies provided they meet all of the following requirements:

▶ The member's application for Accidental Disability Retirement is filed while they are in *Active Service*, as defined below; AND

▶ The member submits proof of filing for *Primary Social Security Disability Benefits* within 60 days from the date of filing the application; AND

▶ The member has been found disabled and eligible for *Primary Social Security Disability Benefits* by the Social Security Administration; AND

▶ NYCERS' Medical Board determines that the member's disability, as established by the Social Security Administration, is a result of an accidental injury sustained while in *City Service* and while a member of NYCERS, and not due to the member's own willful negligence. NYCERS' Medical Board makes a recommendation to the Board of Trustees that the member be retired under accidental disability provisions.

A member will be considered to be in *Active Service* for the purpose of filing an application for Tier 3 Accidental Disability Retirement, if:

▶ The member is on an authorized leave of absence without pay; AND

▶ The member's leave was granted for medical reasons; AND

▶ The member's leave has been in effect continuously since the member was last paid on the payroll; AND

▶ Two years have not elapsed from the date the member was being paid on the payroll.

### Benefit Formula
If a member's application for Accidental Disability Retirement is approved, the member will receive an annual benefit equal to:

▶ 60% times *Final Average Salary (FAS)* LESS

▶ 50% of *Primary Social Security Disability Benefits* LESS

▶ 100% of any Workers' Compensation payments

**LR:** Chapter 890 of the Laws of 1976
**SR:** RSSL §507

## Disability Retirement Effective Date

The effective date of a member's Tier 3 Ordinary or Accidental Disability Retirement is the effective date set by the Social Security Administration for the member's *Primary Social Security Disability Benefits*.

Tier 3 Disability Retirement Benefits increase up to 3% per year if the *Consumer Price Index (CPI)* increases 3% or more each year. If the *CPI* decreases in the preceding year, the member's increased Disability Retirement Benefit will be reduced by a corresponding percentage, but never by more than 3% per year. In no event will the member's Disability Retirement Benefit be reduced below the amount of their initial benefit at retirement. Escalation begins on the first of the month after the effective date of the member's Disability Retirement.

## Suspension of Tier 3 Disability Retirement Benefits

In the event a member is no longer eligible for *Primary Social Security Disability Benefits*, or if NYCERS' Medical Board approves the member's Disability Retirement application and subsequently determines the member is no longer disabled, the member's name will be forwarded to the Department of Citywide Administrative Services for placement on a list of preferred eligible candidates for appointment to a position in a salary grade not exceeding that from which the member retired. Disability benefits will be paid until the member is offered a position in public service.

# TAXATION



# TAXATION

This section outlines the tax implications associated with benefit disbursements from NYCERS.

## LOANS

IRS regulations require that pension loans taken at, or near, the time of retirement be treated as a retirement distribution. However, members may roll over the taxable portion of the loan to an Individual Retirement Account (IRA) or Employer Plan. The taxable distribution is outlined on the Election of Payment Notice sent to members by NYCERS.

If a member chooses not to roll over the taxable amount, NYCERS is required to deduct a 20% withholding tax before issuing the check. In addition, if the member is under the age of 55 and chooses not to roll over the taxable distribution, they will also be subject to an IRS 10% early distribution penalty. If there is a tax-free distribution, the member may also roll it over to a Roth IRA.

If a member has both a tax-free and taxable distribution and wishes to roll over a portion of these funds, the taxable amount will be deemed to be rolled over first. Therefore, in order to roll over any portion of the tax-free distribution into a Roth IRA, the member must also roll over their entire taxable distribution to a Traditional IRA, Roth IRA, or an Employer Plan. Any amounts not rolled over will be directly distributed to the member.

If a member has a prior outstanding loan at retirement, the balance may also be taxable and eligible for the member to roll over on their own. Two to three months after their effective date of retirement, they will receive a letter from NYCERS advising them of the taxable amount of the prior outstanding loan. This letter will remind the member that they may defer their Federal tax liability by rolling over the taxable amount to an IRA or Employer Plan. The member will have until the due date of their tax return for the year in which they received the *Rollover* Letter to roll over the taxable portion of their prior outstanding loan; otherwise, they will have to report it as income on their Federal return.

## REFUNDS

Refunds may result in Federal income tax liability. The taxable portion of a member's refund, if any, is outlined on an Election of Payment Notice, which is sent to the member after the refund has been calculated. This notice explains the Federal income tax consequences and how the member may temporarily avoid such consequences by rolling over the taxable portion of their refund into a Traditional IRA, Roth IRA or Employer Plan such as the NYC Deferred Compensation Plan, to the extent such *Rollovers* are permissible. If the member does not elect to roll over the taxable portion of their refund, NYCERS is required (by the Internal Revenue Code) to withhold at least 20% of the taxable portion of the refund.

It is important to review the Election of Payment Notice carefully, particularly the deadlines by which the member must make a decision on the disbursement of these funds. The Election of Payment Notice contains three options, under which the member can elect to receive or roll over the taxable portion of their refund:

▶ Direct refund, including the taxable portion, subject to at least 20% Federal income tax withholding (the refund will be processed under this option if the member fails to respond by the deadline stated in the notice).

▶ *Rollover* of the entire taxable portion of the refund into an IRA account or Employer Plan.

▶ *Rollover* of a portion of the taxable distribution, designated by the member, into an IRA account or Employer Plan.

The refund check may be less than the total taxable portion if the member has an outstanding loan at the time of the refund.

If the member is receiving a refund due to a separation from service (retirement or termination of membership) and has not reached age 55, they will also incur a 10% IRS early distribution tax penalty in addition to the normal tax rate. If the refund is for any reason other than a separation from service, then the member will incur the additional 10% IRS tax penalty if they are under the age of 59 ½.

## PENSIONS

Contributions made to NYCERS prior to retirement through payroll deductions are subject to current Social Security and Medicare deductions and to New York State and local income taxes, but they are deferred for Federal income taxes. Accordingly, a member's pension is subject to Federal income taxes, but not New York State and New York City taxes if the member resides anywhere in New York State. If the member retires and moves to another state, they should inquire about the tax laws of that particular state and/or locality, as state and local taxes may be assessed on their pension.

Internal Revenue Code §414h (IRC 414h) provides for favorable Federal tax treatment for the contributions the member made to NYCERS. Federal taxes were deferred while the member was making regular pension contributions via payroll deductions. Non-IRC *414h Contributions* were deducted from the member's paychecks after tax and, therefore, are not subject to taxation a second time (for example, pre-1989 contributions and any non-*Rollover* payments made for the purchase of *Previous Service*). The IRS considers the non-IRC *414h Contributions* to be the member's "Investment in Contract" for the purpose of determining the excludable part of the pension. Members may consult a tax preparer for more information.

The IRS requires taxpayers to remit tax payments on a "pay-as-you-go" basis. In order to avoid a penalty at year-end for non-prepayment of the tax on the pension, members must either make payments of estimated taxes quarterly, or have income tax withheld from their monthly pension check or electronic payment. Members may request income tax withholding when they file their retirement application.

Once a member is retired, if they choose to change the amount of their withholdings, they may file IRS Form W4P. Registered MyNYCERS members can change their W4P online by logging into MyNYCERS at nycers.org and looking for "Federal Tax Withholding (W4P)."

## DEATH BENEFITS

The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) requires NYCERS to withhold taxes on *Death Benefits* that are subject to Federal taxation, unless the beneficiary files an election to be exempted from such withholding. NYCERS cannot pay any taxable *Death Benefit* to a beneficiary, until the beneficiary returns their election regarding tax withholding.

### Ordinary Death Benefits

The first $50,000 of an *Ordinary Death Benefit (ODB)* is considered to come from the New York City Public Employees' Group Life Insurance Plan and is tax-free. *Death Benefits* paid from other sources

count toward the $50,000 tax-free amount. For example, if the member's union pays a *Death Benefit* of $10,000, then the first $40,000 of the member's *ODB* is considered tax-free.

For the balance of the *Ordinary Death Benefit* that is taxable, NYCERS will withhold Federal taxes unless the beneficiary files an election to be exempted from such withholding. NYCERS cannot pay any taxable *Death Benefit* to a beneficiary until the beneficiary returns an election regarding tax withholding.

Beneficiaries of deceased members of NYCERS may choose from three options under which they can elect to receive or roll over the taxable portion of their lump-sum *Death Benefit*. The Federal Pension Protection Act of 2006 permits non-spouse beneficiaries to roll over the taxable portion of their lump-sum *Death Benefit*. The three options include:

▶ Direct payment of the taxable portion, subject to at least 20% Federal income tax withholding. (*The Death Benefit* will be processed under this option if the member's beneficiary/beneficiaries fail to respond by the deadline stated in the Election of Payment Notice).

▶ *Rollover* of the entire taxable portion into a Traditional or Roth IRA account.

▶ *Rollover* of a portion of the taxable distribution, designated by the beneficiary/beneficiaries, into a Traditional or Roth IRA account.

### Accidental Death Benefits
*Accidental Death Benefits* are paid in the form of a pension to an *Eligible Beneficiary/Beneficiaries* and are tax-free.

## REQUIRED MINIMUM DISTRIBUTION (RMD)
The Internal Revenue Code (IRC) requires that certain NYCERS benefits begin by a specific date to avoid Internal Revenue Service (IRS) imposed tax penalties. This is known as a *Required Minimum Distribution (RMD)*. *RMDs* are generally applicable if a member has left *City Service* without collecting a benefit and *RMD* rules generally affect the following NYCERS individuals:

▶ A vested member that is no longer in *City Service* who will be eligible to retire in the future.

▶ A vested member that is no longer in *City Service* who is presently eligible to retire, but has not yet applied for retirement.

▶ A member that left *City Service* with less than five years of *Credited Service* whose NYCERS membership has not yet terminated and who has not applied for a refund of their contributions.

▶ A member that left *City Service* whose NYCERS membership has terminated from five years of continuous City separation, but has not yet applied for a refund of their contributions.

▶ A beneficiary that is entitled to a lump sum or continuing benefit.

*RMD* rules do not apply to:

▶ Active members on City payroll.

▶ Retirees receiving pension benefits.

▶ *Ordinary Death Benefits (ODB).*

▶ *Post Retirement Lump Sum Death Benefit (PRDB).*

▶ *Accidental Death Benefit.*

It is the member's responsibility to initiate the distribution of their *RMD* by the required date. If they fail to take the minimum required, the IRS may impose a tax penalty equal to 50% of the amount they should have taken.

## Required RMD Date for Members

Members who left *City Service* and are eligible for a retirement benefit or refund of their contributions are required to begin receiving their *RMD* according to the following:

▶ If they were born before July 1, 1949, their first *RMD* is required by the April 1 following the end of the calendar year in which they turn age 70½ or April 1 following the end of the calendar year in which they separated from service, whichever date is later.

▶ If they were born after June 30, 1949 and before January 1, 1951, their first *RMD* is required by April 1 following the end of the calendar year in which they turn age 72 or April 1 following the end of the calendar year in which they separated from service, whichever date is later.

▶ If they were born after January 1, 1951, their first *RMD* is required by April 1 following the end of the calendar year in which they turn 73 or April 1 following the end of the calendar year in which they separated from service, whichever date is later.

### Domestic Relations Order (DRO)

Unless the terms and conditions of the *DRO* state otherwise, the required start date for an *RMD* for the Alternate Payee is the same as the member's.

## Required RMD Date for Beneficiaries

If the member dies and a beneficiary is entitled to a lump sum or continuing benefit, the date the benefit must be paid depends on:

1. Who the beneficiary is; AND

2. What type of benefit is owed; AND

3. When the member died.

### Lump Sum Refund

If the member dies and no retirement benefit is payable, NYCERS will return the member's full contributions to the applicable named beneficiary, their Estate or, if the payment may be settled under Section 1310 of the Surrogate's Court Procedure Act, the claimant with the highest qualifying relationship determined by law.

If the member's spouse (or former spouse) claims the return of their contributions and the member dies before the date they would have been required to start receiving their *RMD*, then the return of

their contributions must be paid by the end of the 5th calendar year following the calendar year of their death. If the return of their contributions is claimed by their Estate or a claimant other than their spouse (or former spouse), then the return of their contributions must be paid by December 31 of the calendar year containing the 5th anniversary of their death.

If the member dies on or after the date they would have been required to start receiving their *RMD*, the return of their contributions must be paid by the end of the calendar year following the calendar year of their death, regardless if their beneficiary is their spouse (or former spouse) or not.

**Monthly Retirement Benefit**
If the member dies and a monthly pension allowance is payable, NYCERS will pay the continuing benefit to the named beneficiary.

If the member's spouse (or former spouse) claims the monthly pension allowance and the member dies before the date they would have been required to start receiving their *RMD*, then:

▶ If the member was born before July 1, 1949, the spouse's (or former spouse's) first *RMD* is required by December 31 of the calendar year after the calendar year of the member's death or December 31 of the calendar year the member would have turned age 70½, whichever date is later.

▶ If the member was born after June 30, 1949 and before January 1, 1951, the spouse's (or former spouse's) first *RMD* is required by December 31 of the calendar year after the calendar year of the member's death or December 31 of the calendar year the member would have turned age 72, whichever date is later.

▶ If the member was born after January 1, 1951, the spouse's (or former spouse's) first *RMD* is required by December 31 of the calendar year after the calendar year of the member's death or December 31 of the calendar year the member would have turned age 73, whichever date is later.

If the member dies on or after the date they would have been required to start receiving their *RMD*, then the first *RMD* is required by the end of the calendar year following the calendar year of the member's death, regardless if their beneficiary is their spouse (or former spouse) or not.

New York City Employees' Retirement System                                 www.nycers.org

# GLOSSARY OF TERMS

The following terms appear in *italics* throughout this Summary Plan Description (SPD):

## 414h Contributions
A provision in the Internal Revenue Code which authorizes the deferral of Federal taxes on member contributions. This provision does not apply to New York State and local taxes.

## Accident
In the realm of disability pensions, the term "*Accident*" has been defined by the courts as "a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact."

## Accidental Death Benefit
A benefit paid in the form of a pension to the *Eligible Beneficiary/Beneficiaries*, as defined by law, of a member who dies as a result of an on-the-job *Accident* not caused by willful negligence on their part.

## Accidental Disability Benefit
A disability pension paid to a member who has been found to be disabled due to the natural and proximate result of an *Accident* sustained in the performance of their duties.

## Accrued Vested Benefit (AVB)
The current value of the reserves needed today to fund a member's future retirement benefit. This amount is based on their retirement plan, age, years of *Credited Service* and earnings.

## Active Service
Service rendered while the employee is on the payroll and being paid by the City of New York or any other *Participating Employer*.

## Actuarial
Relating to the mathematical science of life expectancy and risk probabilities. In this science, risks are carefully evaluated, proper costs are assessed and adequate provisions are made for future financial obligations.

## Actuarial Reduction
The permanent reduction to a retiree's retirement benefit if they never pay back their outstanding loan balance at retirement. The *Actuarial Reduction* to the retiree's retirement benefit is not a repayment of their loan and does not decrease their outstanding loan balance at retirement.

As established by Chapter 511 of the Laws of 2011, retirees are permitted to repay, in full, the total amount of the outstanding loan at any time after retirement. This would revert the retiree's retirement benefit to what it would have been had it never been reduced by the *Actuarial Reduction*, starting from the date NYCERS receives payment for the full outstanding loan balance at retirement. Please refer to the **Outstanding Loan Balance at Retirement** section on page 33 for more details.

## Actuarial Reserve
The *Actuarial* present value of pension benefits at the time of retirement that is necessary to pay the member's future benefits during the period of retirement.

## Annual Disclosure Statement (ADS)

A comprehensive annual statement prepared for NYCERS members detailing: Membership Information, Loan Activity, Beneficiary Designation, *Service Summary* and all Account Activity for the calendar year. The *ADS* is available each spring in the members' MyNYCERS account.

## Basic Member Contributions (BMCs)

The contributions required of all Tier 4 members (except Transit 25/55 Plan members) equal to 3% of gross *Wages*. These contributions cease upon the accumulation of 10 years of *Credited Service* or upon reaching the tenth anniversary of membership, whichever is earlier, but no earlier than October 1, 2000.

## Basic Tier 4 Plan

This refers to the 62/5 Plan, the original plan created when Tier 4 was enacted.

## Buy-Back

This term generally relates to the purchase of previous *Full-Time* or *Part-Time Service* rendered in New York City or State in a position that would have been eligible for membership in a New York City or State public retirement system, or in a position that otherwise would have been creditable in such system(s).

## City Service

Service rendered as a paid employee of the City of New York or any other *Participating Employer* which entitles the employee to NYCERS membership.

## Consumer Price Index (CPI)

A leading economic indicator that measures changes in the cost of goods and services in the United States. Certain benefits, such as the *Cost-of-Living Adjustment (COLA)*, are based on the *CPI*.

## Contingent Beneficiary/Beneficiaries

In the context of an *Ordinary Death Benefit* or a *Post-Retirement Death Benefit*, a person or persons designated by a member or retiree to receive the benefit should all *Primary Beneficiaries* be deceased at the time of the member's or retiree's death.

In the context of a pension finalized under Options 3 or 4, a person nominated by a retiree to receive the unexpired balance of the retiree's reduced pension benefit if the retiree dies within five or 10 years from the date of retirement and the *Primary Beneficiary* is already deceased or dies before the benefit period has expired. Please refer to the **Retirement Options** section on page 45 for more details.

## Cost-of-Living Adjustment (COLA)

An annual increase in pension payments based on changes in the *Consumer Price Index*. Retirees are eligible for this annual increase if they have met certain criteria.

## Credited Service

The total amount of service accumulated by a member which may count toward their pension calculation. Types of *Credited Service* include:

- ▶ *Membership Service*

- ▶ *Transferred Service*

- ▶ *Purchased Service (Buy-Back)*

- ▶ *Membership Reinstatement*

- ▶ *Military Service*

- ▶ *Union Leave Service*

Please refer to the **Credited Service** section on page 16 for more details about each type of service.

## Current Salary
The regular compensation earned during a member's last 12 months of service, plus overtime, night differentials, and any other type of pensionable earnings, where applicable.

## Death Benefit
A benefit payable to a beneficiary/beneficiaries or estate when a member or retiree dies.

There are two primary types of *Death Benefits* for members who die prior to retirement – *Ordinary Death Benefit* and *Accidental Death Benefit*. Please refer to the **Survivor Benefits** section on page 72 for more details.

In the event of a retiree's death after retirement, their pension from NYCERS may entitle a beneficiary to a continuing lifetime benefit or a lump-sum payment. Please refer to the **Retirement Options** section on page 45 for more details.

## Deficit
A shortage of contributions in a member's account.

## Defined Benefit Retirement Plan
A type of retirement plan that specifies the type of benefit to be paid. The benefit payable is typically calculated using a predetermined formula based on years of service and compensation base.

## Defined Contribution Plan
A type of retirement plan that allows an employee to decide how much to contribute toward their retirement plan. The future benefit is not specified and is dependent on the amount of contributions and the return on investments.

## Designated Beneficiary/Beneficiaries
In the context of an *Ordinary Death Benefit* or *Post-Retirement Death Benefit*, a person or persons nominated by a member or retiree to receive the benefit upon the member's or retiree's death. A *Designated Beneficiary/Beneficiaries* in this context could be a *Primary Beneficiary/Beneficiaries* or a *Contingent Beneficiary/Beneficiaries*.

In the context of a pension finalized under Option 1, Option 2, or Option 5, a person nominated by a retiree to receive a percentage of the retiree's reduced pension benefit after the retiree's death. The *Designated Beneficiary* cannot be changed once finalized and payments cease upon the death of both the retiree and the *Designated Beneficiary*.

In the context of a pension finalized under Options 3 or 4, a person nominated by a retiree to receive the unexpired balance of the retiree's reduced pension benefit if the retiree dies within five or 10 years from the date of retirement. Please refer to the **Retirement Options** section on page 45 for more details.

## Domestic Relations Order (DRO)
A court order derived from a divorce decree or legal separation agreement that directs NYCERS to divide a pension between a member and their former spouse, outlining the circumstances and amounts payable under such circumstances. The former spouse, known as the alternate payee, must be recognized by the *DRO* as having a right to receive all, or a portion of, the benefits payable under the pension plan.

## Dual Employment
Concurrent employment in two or more NYCERS-eligible positions in *City Service*.

## Electronic Funds Transfer (EFT)
A mechanism for distributions from NYCERS, such as loans and monthly pension payments, to be electronically deposited into a member's or retiree's bank account without issuing a paper check. Also known as "direct deposit."

## Eligible Beneficiary/Beneficiaries
In the context of an *Accidental Death Benefit,* a person or persons entitled to receive the benefit payable based upon the following priority order specified in law:

- ▶ The member's spouse, until remarriage, unless the spouse has renounced survivorship rights in a separation agreement

- ▶ Each of the member's children until they reach age 25

- ▶ The member's parents who depend on the member for support

- ▶ Any person under age 21 who qualified as a dependent on the member's Federal income tax return in the year immediately preceding the death

- ▶ Anyone the member designated as their beneficiary/beneficiaries for their *Ordinary Death Benefit*

An *Eligible Beneficiary* must apply for an *Accidental Death Benefit*, and NYCERS' Medical Board and Board of Trustees must approve the application.

In the event that a class of *Eligible Beneficiaries* consists of more than one person (for example, two or more children under the age of 25), benefits will be divided equally among such persons.

## Final Average Salary (FAS)
A compensation base used to calculate a pension benefit. *FAS* is the greater of the average annual *Wages* earned during any three consecutive calendar-year periods, or the average of the *Wages* earned during the 36 months immediately preceding the member's *Retirement Date*, subject to the *Kingston Limitation*.

## Final Medical Review
A process by which a member can contest the findings of NYCERS' Medical Board denying the member their disability claim.

## Full-Time Service
Public service rendered in the employ of a public entity in which an employee is regularly scheduled to work 1,827 hours or more in a calendar year.

New York City Employees' Retirement System                                    www.nycers.org

## Income Limitation

The dollar amount of *Personal Service Income* a service or disability retiree can earn after retirement without suspension or diminution of their retirement allowance.

## Interim Option

A temporary option election chosen by a member on their retirement application. If the member dies before electing a final retirement option, the *Interim Option* chosen by the member is payable.

## Kingston Limitation

A limitation on the *Wages* earned in any year used in the *Final Average Salary (FAS)* computation. Under this limitation, the earnings in any year used in such computation cannot exceed the average *Wages* of the previous two years by more than 10%.

If the *Wages* earned during any year included in the calculation of a member's *FAS* exceed the average of the previous two years by more than 10%, the amount in excess of 10% is excluded from the computation. For members who did not work full time, or who had absences without pay in the 36 months immediately preceding retirement, the *FAS* will be computed by using more than three years of *Wages* in the calculation.

## Maximum Retirement Allowance

This is the highest pension payable to a NYCERS member while retired; which stops upon the member's death.

## Member Contribution Accumulation Fund (MCAF)

The account in which Tier 4 *Basic Member Contributions* are deposited. Funds in this account earn 5% interest, compounded annually.

## Membership Date

Generally, the date a member application is "clocked in" at NYCERS. For members mandated into NYCERS membership (did not voluntarily join), the *Membership Date* is six months from their civil service appointment date.

## Membership Reinstatement

The restoration of a membership in a public retirement system in New York State which had been terminated.

## Membership Service

*Full-Time* or *Part-Time* Service rendered after joining NYCERS. *Transferred Service* and *Military Service* can also be considered *Membership Service*.

## Military Service

Service credited to a member for active duty in the United States Military. *Military Service* can be purchased under Federal or New York State law.

## Non-Performing Loan

A loan on which no payments have been made for 90 days, or a loan which goes into default.

### Notice of Participation

A sworn statement filed by a member, vested member, or retiree indicating the dates and locations they participated in World Trade Center Rescue, Recovery or Clean-Up Operations.

### Option Insurance

A protection for a retirement option that pays a continuing benefit after a retiree's death to remain in effect when a retiree rejoins NYCERS or another retirement system after returning to public service and their pension is suspended. See the **Returning to Public Service after Retirement** section on page 54 for more information.

### Ordinary Death Benefit (ODB)

A lump-sum benefit payable to the *Designated Beneficiary/Beneficiaries* of a member who dies while in service for reasons other than an on-the-job *Accident*.

### Ordinary Disability Benefit

A disability pension paid to a member who was found disabled but not due to an on-the-job *Accident*.

### Part-Time Service

Public service rendered in the employ of a public entity in which an employee is regularly scheduled to work less than 1,827 hours in a calendar year.

### Participant

A member of NYCERS who elects or is required to contribute to one of the retirement plans described in this SPD.

### Participating Employers

Employers, including agencies of the City of New York, whose employees may join NYCERS.

*Participating Employers* include:

- ▶ City of New York
- ▶ City University of New York
- ▶ MTA Bridges and Tunnels
- ▶ NYC Housing Authority
- ▶ NYC Health + Hospitals
- ▶ NYC Housing Development Corporation
- ▶ NYC Municipal Water Authority
- ▶ NYC Off-Track Betting Corporation
- ▶ NYC School Construction Authority
- ▶ NYC Transit Authority

> ▶ Departments of the State of New York which had formerly been departments of the City of New York, where members of NYCERS are still employed.

## Payability Date

The date by which a member reaches the minimum age required to receive a Vested Retirement Benefit.

## Personal Service Income

For the purposes of post-retirement earnings limitations for disability retirees, any income, including income earned from both the public and private sectors, a disability retiree received for the reporting calendar year excluding the following:

> ▶ NYCERS pension

> ▶ Social Security

> ▶ Workers' Compensation

> ▶ Income earned from rental property, stocks, bonds, IRAs and interest earned on deposits in bank accounts

## Post-Retirement Death Benefit (PRDB)

A lump-sum *Death Benefit* payable to a person or persons designated by a member at retirement which can be changed during retirement. The amount of the benefit is dependent upon the date of the member's death after retirement. This benefit is in addition to any benefit payable under a retirement option.

## Previous Service

Public service rendered in the employ of a public entity in New York State or New York City, or a *Participating Employer*, before becoming a NYCERS member.

## Primary Beneficiary/Beneficiaries

In the context of an *Ordinary Death Benefit* or a *Post-Retirement Death Benefit*, a person or persons designated by a member or retiree to receive the benefit upon the time of the member's or retiree's death.

In the context of a pension finalized under Options 3 or 4, a person nominated by a retiree to receive the unexpired balance of the retiree's reduced pension benefit if the retiree dies within five or 10 years from the date of retirement. Please refer to the **Retirement Options** section on page 45 for more details.

## Primary Social Security Benefit

The benefit payable at age 62 or later, under the Federal Social Security Program, exclusive of any family benefits.

## Primary Social Security Disability Benefit

The benefit payable to a disabled covered employee under the Federal Social Security Program, exclusive of any family benefits.

## Purchased Service

See *Buy-Back*.

## Reclassification

A provision in the WTC law allowing a retiree to apply to have their pension changed to an accidental disability pension.

## Required Minimum Distribution (RMD)

An Internal Revenue Service (IRS) requirement that applies to certain retirement accounts such as Individual Retirement Accounts (IRAs) and 401k accounts when a member reaches a certain age. NYCERS retirement benefits and *Death Benefits* are subject to *RMD* laws that require the benefit to begin by a specific date to avoid IRS imposed tax penalties.

## Restored Retiree

A retiree who returns to public service in a title covered by NYCERS and rejoins NYCERS. *A Restored Retiree's* pension will be suspended during their reemployment and they will receive a new *Membership Number*. When they retire from their second membership, they may have the option of combining their service from both memberships and choosing a new retirement option. See **the Returning to Public Service after Retirement** section on page 54 for more information.

## Retirement Date

In the context of Service Retirement, the date a member indicates on their retirement application, which should be the day after their last day paid. If a member is otherwise eligible to retire and files a properly executed retirement application, they are officially retired as of their *Retirement Date*.

## Rollover

Transferring a pre-tax retirement account from one institution to another.

## Service Summary

A history of *Credited Service* belonging to a member. This information can be found in the member's MyNYCERS account or *Annual Disclosure Statement*.

## Special Accidental Death Benefit

A supplemental monthly payment to the *Accidental Death Benefit*, which effectively continues paying the decedent's last year *Wages* (EMT, TBTA, and Uniformed Sanitation only).

## Special Occupational Titles

Titles eligible for special retirement plans which allow early retirement (e.g., Transit 25/55 Plan, Sanitation 20-Year Plan).

## Tier Equity

A law enacted in 2000 which gives 62/5 Plan members the ability to retire as early as age 55, but with a pension reduction.

## Transferred Service

Where an active membership in a public employee retirement system in New York State is transferred to (and combined with) another membership in a different public employee retirement system in New York State.

## Union Leave Service

Service granted to a member who is on an authorized leave of absence without pay to conduct labor relations activity on behalf of a public employee union.

## Vesting

Refers to a member's right to receive future plan benefits after completion of minimum service requirements, even if the member discontinues employment prior to reaching the age for Service Retirement.

## Wages

Any earnings paid for services rendered to a public employer in New York City or New York State, including earned overtime, night differential, and holiday pay.



NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM

30-30 47th AVENUE, SUITE 1010
LONG ISLAND CITY, NY 11101-3420

Clerk of the Court, United States Courthouse

500 Pearl Street

New York, NY 10007

Attn: Arraignment Unit, Rm 520

